UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. |
| ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, | 3:18-cv-252-CWR-FKB |
| Defendants, | |

**MEMORADUM OF LAW IN SUPPORT OF
EXPEDITED MOTION TO APPOINT TEMPORARY RECEIVER**

In this securities fraud action, Plaintiff Securities and Exchange Commission ("Commission") respectfully moves the Court to appoint a temporary receiver over Defendants' assets to preserve them for the benefit of investors. Due to the continued risk of dissipation of those assets, the Commission asks that the motion be heard as expeditiously as the Court's schedule permits.

**I.    Introduction and Background**

In its Complaint, the Commission claims that, beginning in approximately 2004, Defendant Arthur Lamar Adams ("Adams"), through his wholly-owned

company, Madison Timber Properties, LLC ("MT Properties"), committed securities fraud by operating a Ponzi scheme. [Dkt. 3, Compl., ¶ 1]. The Commission alleges that Adams and MT Properties have raised at least $85 million from over 150 investors in multiple states. [Dkt. 3, Compl., ¶ 2].

Defendant Adams does not contest that he used MT Properties to conduct a Ponzi scheme. At Adams' change of plea hearing on May 9, 2018 in *United States v. Adams*, No. 3:18-CR-88-CWR-LRA (S.D. Miss.), Adams pled guilty to the Bill of Information filed against him for bank and wire fraud based on the same conduct.

Defendants and their agents still have control and possession of investor funds as well as certain assets purchased with investor funds. Counsel for Defendant Adams has identified interests owned by Adams in at least four real estate ventures. *See* Exhibit A (May 8, 2018, Letter from John M. Colette). Upon information and belief, Adams acquired at least some of these interests while the scheme alleged in the Complaint was on-going. It is, thus, highly likely that such interests were acquired, in whole or in part, with investor funds. Counsel for Adams has also advised that several payments are coming due this month to maintain Adams' ownership interests in these ventures. *Id.*

In addition, individual investors recently have filed lawsuits against Adams and Madison Timber related to this scheme. *See, e.g.,* Exhibit B. Absent a receiver and the associated stay of third party litigation that would accompany his or her

appointment, there will be a "race to the courthouse" and the attendant possibility for certain investors to obtain preferential treatment with respect to Defendants' assets.

The Commission's ability to seek receivership serves as a critical tool in enforcing the federal securities laws. In light of the estimated size of the fraud – nearly $100 million – and the number of investors, a receiver is necessary in this case to preserve and analyze Defendants' and third parties' documents and financial records to determine the full extent of investor losses, to discover if there are viable claims against third parties, and to establish a claims process to facilitate a fair and orderly distribution of remaining assets to investors. Moreover, in order to marshal and preserve Defendants' assets and identify other possible assets for the benefit of the defrauded investors, the Commission asks the Court to use its equitable powers to appoint a receiver to take control of those assets.

The Commission therefore seeks the appointment of a temporary receiver who will, within 60 days, file a report that includes a preliminary plan for the administration of the receivership estate, including recommendations as to the most efficient means for marshalling, liquidating and distributing assets within that estate. The Court, with input from the Commission, can then better determine whether the receivership should be continued.

## II. Equitable Power of District Courts to Order a Receivership

The Fifth Circuit and other courts have repeatedly emphasized the broad equitable powers of district courts to shape remedies necessary to effectuate the purposes of the federal securities laws, to preserve a defendant's assets, and to ensure that wrongdoers do not profit from their unlawful conduct. *SEC v. Wencke*, 622 F.2d 1393, 1371 (9th Cir. 1980); *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir.1982) ("the district court has broad powers and wide discretion to determine . . . relief in an equity receivership"); *SEC v. Blatt,* 583 F.2d 1325, 1335-1336 (5th Cir. 1978).

Based on long-standing principles of equity, a receiver serves as a disinterested court officer who collects and possesses all property subject to the receivership, known as the receivership "estate." *See, e.g., Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 370-71 (1908). The court holds custody of the receivership estate and administers it through the receiver. *Id.*; *see also Chicago Deposit Vault Co. v. McNulta*, 153 U.S. 554 (1894). The receiver's possession, therefore, is the court's possession. *Id.* When a district court creates a receivership, the receiver's focus is "to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).

The decision to create a receivership rests in the Court's discretion. *Bookout v. First Nat. Mortg. & Discount Co., Inc.*, 514 F.2d 757, 758 (5th Cir. 1975).

### III. Appointment of an SEC Receiver is Well-Established in the Fifth Circuit

The Fifth Circuit has recognized that "[t]he appointment of a receiver is a well-established equitable remedy available to the SEC in its civil enforcement proceedings for injunctive relief." *SEC v. First Fin. Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981); *see also Netsphere, Inc. v. Baron,* 703 F.3d 296, 306 (5th Cir. 2012) ("Thus, in cases of non-compliance with SEC regulations, a receiver may be appointed to prevent the corporation from dissipating corporate assets and to pay defrauded investors."). This discretion derives from the inherent powers of an equity court to fashion relief. *Id.*

The Fifth Circuit has also recognized that an evidentiary hearing is not required on the Commission's request to appoint a receiver where the record discloses sufficient facts to warrant such an appointment. *Bookout v. Atlas Fin. Corp.*, 395 F. Supp. 1338, 1342 (N.D. Ga. 1974), *aff'd*, 514 F.2d 757 (5th Cir. 1975). The Court may appoint a receiver on a prima facie showing of fraud and mismanagement. *See First Fin. Group*, 645 F.2d at 438. Factors courts have considered that indicate the need for a receivership include the following: "a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will

be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 242 (5th Cir. 1997), *quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993).

**IV.    This Court Should Create a Receivership in this Case**

Defendants do not dispute that they operated a Ponzi scheme that involved hundreds of investors and close to a $100 million dollars. Indeed, Defendant Adams has pled guilty to criminal charges of wire fraud and bank fraud based on the same conduct. Thus, there is no dispute that fraudulent conduct occurred. It is in the interest of justice, and to the benefit to the investors, to have a court-appointed receiver to oversee the process of returning the remaining funds in as fair and economical manner as possible. The appointment of a receiver will also prevent investors from obtaining preferential treatment to Defendants assets by filing individual lawsuits.

Moreover, in addition to the funds frozen in various accounts, there are a number of illiquid assets at stake. Mr. Adams has invested in various real estate projects. *See* Exhibit A (Letter from John M. Colette). These investments will likely be included in the receivership estate because, among other things, Adams presumably purchased or maintained some or all of those real estate projects with

6

investor funds. Indeed, Adams' counsel has advised that almost $200,000 in payments to various real estate investments are coming due, and that such payments must be made to preserve Adams' interest in those investments. *Id.* A receiver is needed to determine whether maintaining those investments is in the best interest of defrauded investors, particularly because the potential estate has minimal liquid assets at the moment.

Accordingly, the Court should appoint a receiver over Defendants' assets to marshal Defendants' assets, and preserve and maximize their value for the benefit of the defrauded investors.

## V. The SEC's Receiver Recommendation

Generally, courts rely on the SEC to recommend a receiver to the court. Anticipating that the Court may ask the Commission to recommend a potential receiver here, the Commission sought three proposals from individuals who have served as receivers in other SEC cases. If the Court prefers to rely on the Commission's recommendation rather than select its own receiver, the Commission respectfully recommends that the Court appoint Kenneth D. Murena, Esq., of Damian & Valori, LLP, in Miami, Florida, as the receiver in this matter. *See* Exhibit C (Murena's résumé and list of receivership cases). Mr. Murena has extensive experience serving as a receiver, both in SEC matters and other civil contexts, and in particular he is very familiar with this sort of fraud and the types of assets that the

7

Commission believes will compose the estate. While Mr. Murena is located in Miami, he has committed that, if appointed, he will not bill the estate for expenses incurred while traveling between Miami and Mississippi.

The Commission respectfully requests that this Court enter the proposed order appointing Kenneth D. Murena as a temporary receiver over the Defendants' assets.

## VI. Conclusion

Based on the foregoing, the Commission respectfully requests that the Court grant its motion and enter the proposed order appointing Kenneth D. Murena, Esq., of Damian & Valori LLP, as a temporary receiver over Defendants' assets.

Dated this 10th day of May, 2018.

Respectfully submitted,

s/ *W. Shawn Murnahan*
W. Shawn Murnahan
Senior Trial Counsel
Georgia Bar No. 529940
Tel: (404) 842-7669
Email: murnahanw@sec.gov

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Tel: (404) 842-7622
Email: loomism@sec.gov

Justin Delfino
Senior Counsel
Georgia Bar No. 570206
Tel: (404) 942-0698

Email: delfinoj@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
Atlanta Regional Office
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, GA  30326-1382
Tel (main): (404) 842-7600
Fax: (703) 813-9364

OF COUNSEL

D. Michael Hurst, Jr.
United States Attorney

*s/Kristi H. Johnson*
Kristi H. Johnson
Assistant United States Attorney
MS Bar No. 102891

Marc Perez
Assistant United States Attorney
WA Bar No. 33907

Civil Division
United States Attorney's Office
Southern District of Mississippi
501 East Court Street, Suite 4-430
Jackson, MS 39201
Tel: (601) 973-2887
Fax: (601) 965-4409

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,<br><br>Defendants, | Case No. 3:18-CV-252-CWR-FKB |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served a true and correct copy of the Plaintiff's Memorandum of Law in Support of its Expedited Motion to Appoint Receiver on John M. Colette, Esq., as counsel for Defendants, via email and by United Parcel Service.

Dated this 10th day of May, 2018.

              Respectfully submitted,

              *s/Kristi H. Johnson*
              Kristi H. Johnson