UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

           v.

ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES,
LLC

           Defendants,

Civil Action No.
3:18 –cv-252-CWR-FKB

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY
MOTION RECOMMENDING A TEMPORARY RECEIVER**

**I. INTRODUCTION**

The Mississippi Secretary of State ("Secretary") intervened in this matter for the sole purpose of objecting to the SEC's proferred candidate for receiver, Kenneth Dante Murena, and to recommend instead the Court appoint Derek Henderson as the receiver for the estate. Derek Henderson is a Mississippi attorney with nearly thirty (30) years of experience handling insolvency matters. Nevertheless, in response to the Secretary's Motion [Doc. 18], the Securities and Exchange Commission ("SEC") takes the position that its sole candidate, Mr. Murena—an attorney who lives and works in Miami, Florida and who is currently serving as a federal receiver for the first time in only one (1) case—would be better suited to serve as receiver. The Secretary respectfully disagrees.

1

## II.  ARGUMENT

### A.  Derek Henderson Would be the Most Effective and Efficient Receiver

Generally, a federal equity receiver is an "officer of the court." *In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992).  The Court's authority to appoint a receiver does not derive from the SEC's police/enforcement power nor from any statute relating in any way to federal securities laws.  Rather, the power to appoint a receiver in this case derives from the Court's power in equity.  As such, "[a] receiver is an indifferent person between parties . . . He is appointed in behalf of all parties, and not of the complainant or the defendant only." *Booth v. Clark,* 58 U.S. 322, 331 (1854).  Federal equity receivers have many duties, including: "(1) preserving receivership assets, (2) administering receivership property suitably, and (3) assisting in any equitable distribution of those assets if appropriate." *S.E.C. v. Schooler*, 3:12-CV-2164-GPC-JMA, 2015 WL 1510949, at *3 (S.D. Cal. Mar. 4, 2015)(citing *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)).  Ordinarily, logic dictates that a receiver should be appointed from the locale of center of the parties' activities.  *See Wolf v. Ackerman*, 308 F. Supp. 1057, 1062 (S.D. N.Y. 1969).  The receiver in this matter should be the person who is best suited to carry out these duties on behalf of the estate under the supervision of the Court most effectively, efficiently and without bias to any of the parties herein, including the plaintiff or any of the defendants.  Derek A. Henderson is that person.

While the Court may give Mr. Murena due consideration, the SEC's choice is not presumptive.  Side by side, the comparison between Derek Henderson and Mr. Murena leaves no doubt that Derek Henderson is the better choice for this particular case.[1]

---

[1] The Secretary interviewed multiple other candidates but Derek Henderson is the only qualified candidate so far that did not have a conflict.

1.     **Derek Henderson's Qualifications**

Unfamiliar with Derek Henderson's qualifications and expertise, the SEC suggests that Derek Henderson lacks relevant experience. The SEC could not be more off the mark. Derek Henderson has over thirty (30) years of experience serving as a fiduciary and officer of the Court in similar matters, primarily in his capacity as a Chapter 7 bankruptcy trustee in the Southern District of Mississippi. Derek Henderson's professional career has largely consisted of serving as a neutral fiduciary in insolvency matters, including as a receiver, charged with the obligation to marshal assets of an insolvent party for the ultimate purpose of satisfying claimants.

Indeed, Derek Henderson has served as a fiduciary in the largest fraud scandals ever litigated in this state. Some of these matters, with which the Court is likely familiar, are listed below:

- Chapter 7 Trustee in the Andrew Jackson Life Insurance scandal – the largest insurance fraud scandal in the history of the State of Mississippi. That matter arose from the insolvency of the Mississippi-based Andrew Jackson Life Insurance Company and related entities and its principals. Administration of those cases required assertion of malpractice and related claims against major professional firms and multiple business transactions in several states and in Mexico. The total claims asserted by the Trustee in those cases exceeded $340 million.

- Chapter 7 Trustee in 13 cases related to John Christopher Evans – cases resulted from the collapsing of a large, multi-state fraudulent real estate transactions, bank fraud and title insurance fraud. Claims against the various estates exceeded $88 million, and criminal convictions resulted.

- Chapter 7 Trustee in 4 cases related to Steadivest, LLC – cases involved the collapsing of a real estate-based Ponzi scheme that defrauded investors through fraudulent intercompany transfers. These cases involved claims and properties in multiple states. Total claims in cases exceeded $32 million, and criminal convictions resulted.

- Chapter 7 Trustee in 3 cases related to Frazier Development, LLC - insolvency of construction company and its principals resulted from fraudulent transactions in connection with their various projects and defrauding of financial institutions providing financing. Total claims in cases exceeded $18 million, and criminal convictions resulted.

- <u>Chapter 7 Trustee of Stinson Petroleum Company, Inc.</u> - total claims of approximately $16 million after the collapse of a petroleum company engaged in financial fraud and a large check kiting scheme. The estate litigated a $3.5 million preference case against a local regional financial institution based on collection of kited checks through Fifth Circuit Court of Appeals.

- <u>Chapter 7 Trustee of Todd Phillips Investments, Inc. -</u> total claims exceeded $23 million in this fraud scheme involving fraudulent financial and legal documentation associated with real estate transactions and various related title insurance claims.  Criminal convictions resulted.

*See* Henderson Background Memorandum, attached hereto as Exhibit A.

Derek Henderson has also served as a receiver for numerous Mississippi entities in state court proceedings.  The following is a list of cases in which Derek Henderson has recently served or is currently serving as receiver:

- <u>Receiver for KiOR Columbus, LLC</u>, Chancery Court of Lowndes County, Mississippi Cause No. 2015-0022-B.  Selected to serve as receiver for a failed green technology biofuel refinery designed and constructed to process wood fiber into fuel, with claims exceeding $200 million.  The parent company filed a parallel Chapter 11 proceeding in Delaware.  The refinery was managed in its idle state while a sale process was undertaken, ultimately resulting in liquidation of the refinery components and distribution to claimants of the proceeds.

- <u>Receiver for The Grove Plantation, LLC,</u> in Cynthia Jones Cooper v. Claudia Jones Stephens, Chancery Court of Adams County, Mississippi, Case No. 2015-308.  Served as receiver in liquidation of a limited liability company. Paid all creditors 100% and made distribution of remaining assets to LLC members.

- <u>Receiver in parallel dissolution proceedings of Ware Milling, Inc., Chickasaw Farm Services, Inc., Chickasaw Grain Transportation, Inc., Ware Construction, Inc.</u>, Chancery Court of Chickasaw County, Mississippi, Case No. 2017-1108-KMB.  Currently serving as receiver in these four (4) cases. Three (3) of the cases involve supervision and management of ongoing business operations. The companies are being marketed for liquidation and have an estimated value of $20-$25 million.

- <u>Receiver for Aldridge Operating Co., L.L.C.</u> in Thomas O. Kimbrell and T. O. Kimbrell, LLC vs. Aldridge Operating Co., L.L.C. and Courtney G. Aldridge, Chancery Court of Adams County, Mississippi, Case No. 2017-616-W.  Currently serve as receiver for operator of oil and gas wells with ownership and working interests in other wells. The company assets are believed to be worth $2-$3 million.

*Id.*

Notwithstanding his background, the SEC asserts that Derek Henderson's lack of "federal receiver" experience disqualifies him for the instant receiver role.  But there is no substantive difference between a Chapter 7 bankruptcy trustee and an "equity receiver."  "The trustee in bankruptcy is a statutory successor to the equity receiver, and . . . [j]ust like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code."  *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000).  *See also In re 245 Associates, LLC*, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995), corrected (Nov. 9, 1995) ("[T]he receiver becomes  the functional equivalent of  a trustee . . ."); *1185 Ave. of Americas Associates v. ADR Tr. Corp.*, 22 F.3d 494, 497–98 (2d Cir. 1994); ("[A] Chapter 7 trustee . . . is analogous to a receiver."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("Like a trustee in bankruptcy or for that matter the plaintiff in a derivative suit, an equity receiver may sue only to redress injuries to the entity in receivership, corresponding to the debtor in bankruptcy and the corporation of which the plaintiffs are shareholders in the derivative suit.").

Thus, in all functional aspects, a Chapter 7 bankruptcy trustee *is* a *federal* receiver.  Both are officers of the Court appointed to serve as independent fiduciaries for the purpose of marshaling and distributing assets and both are charged with asserting claims for purposes of seeking recovery against third parties.  Derek Henderson's impressive experience as a Chapter 7 Trustee, in which capacity he has administered and litigated well over $500 million in claims, qualifies him over Mr. Murena's experience.

The SEC's assertion that Derek Henderson's experience as a state court receiver should be ignored or discounted is also without merit.[2] The receivership powers and duties under federal statutes are no different than those conveyed under similar Mississippi statutes. *Compare* 28 U.S.C.A. § 754; 28 U.S.C.A. § 959 *with* Miss. Code. Ann. § 79-4-7.48; Miss. Code. Ann. § 79-4-14.32; Miss. Code. Ann. § 79-29-815; Miss. Code. Ann. § 81-9-27; Miss. Code. Ann. § 81-14-211. As a receiver, Derek Henderson has administered and litigated over $250 million in claims, and this is in addition to the matters involving over $500 million in claims that he has administered in U.S. Bankruptcy Court as an appointed Chapter 7 trustee.

### 2. Mr. Murena's Qualifications

As to Mr. Murena, it appears that the SEC has overstated his personal experience and qualifications. In its Motion to Appoint, the SEC cited Mr. Murena's attorney profile in support of the proposition that he has significant receiver experience. While Mr. Murena's profile lists 14 federal cases and 9 state court cases as "notable receiverships," research reveals that he has only been appointed as a receiver on one occasion. That case, styled *U.S. Commodity Futures Trading Commission v. Jason B. Scharf, et al.*, Case No. 17-cv-774-J-32MCR (M.D. Fla.), concerned the unlawful solicitation of $16 million in illegal binary options contracts. To be clear, Mr. Murena has only been appointed once as a federal receiver, and he has never completed an appointment as a federal receiver. And though his profile identifies nine "notable" state court receiverships, Mr. Murena was never actually appointed (and did not serve) as the receiver in any of them. In sum, while Derek Henderson has served as a trustee / receiver for

---

[2] Indeed, Mr. Murena himself does not distinguish the two roles, as his profile lists nine state court cases for which he credits experience in "notable receiverships," along with the 14 federal receiverships in which he claims experience.

over 30 years, Mr. Murena has only been appointed once, and has never completed his administration of a receivership estate.

Realizing Derek Henderson would be the better candidate, attorneys for two of the victims, including the attorney for Highway 22, LLC, the plaintiff in the lawsuit cited by the SEC [Doc. 11-2] in support of its Motion to Appoint Temporary Receiver [Doc. 11], have submitted correspondence to the Secretary in support of Derek Henderson serving as receiver. *See* victim attorney correspondence, attached as Exhibits B and C hereto.

### 3. The Alleged Scheme at Issue Does Not Involve Complex Securities

It is important to note what the alleged scheme at issue is *not.* In an effort to bolster its candidate's bona fides, the SEC points to Murena's (or more aptly, his firm's) experience in handling cases involving publicly traded securities. To the extent that Mr. Murena has such expertise, it does not appear applicable. This is not a scam based on the manipulation of complex investments. This proceeding concerns a scheme perpetrated by personal solicitation and promotion of bogus loan agreements, by which the Defendants promised to pay guaranteed rates of return and used new investment money to pay off earlier obligations. No special securities experience is required to follow these transactions.

### 4. A Local Receiver is Preferable for Expediency and Cost

Even if Mr. Murena's experience was even remotely comparable to that of Derek Henderson's, the Court should question why an out of state receiver should be appointed in this matter. It is, and should be, rare that an out of state receiver is appointed to marshal assets in a case like this. Mr. Murena's one case receivership experience was in Florida. And though other members of his firm have been appointed to serve as a receiver in three cases outside of Florida,

7

those appointments were made because the property to be seized was physically located in Florida, or for other reasons that have no applicability here.[3] No such special circumstances exist here which would make it desirable for an out of state receiver to be appointed here to litigate and recover predominantly Mississippi property under claims to be asserted under Mississippi property law. *See* 28 U.S.C. § 959 (b) (". . . [A] trustee [or] receiver . . . appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as such trustee [or] receiver according to the requirements of the valid laws of the State in which such property is situated . . .").

The SEC suggests that its Miami-based receiver is preferable because the scheme at issue reached outside of the borders of Mississippi. However, it is undeniable that this scheme was, and the majority of the litigation stemming from it will be, overwhelmingly local in nature. As stated in the complaint, both defendants are Mississippi residents, with the Mississippi LLC defendant being solely owned by the Madison, Mississippi individual defendant. Indeed, the reason that the SEC filed this action here is because "a substantial part of the events or omissions giving rise to the claims made herein occurred" in this district. *See* Complaint [Doc. 3] ¶ 8. Mississippi's connection is not merely "substantial"; it overwhelmingly dominates. Though the alleged scheme involved representations "that [the Defendants] would use the funds to secure and harvest timber from specific tracts . . . located in Alabama, Florida or Mississippi," a primary reason that this was a *fraudulent* scheme was that the Defendants "never obtained the harvesting rights to the land claimed." *See* Complaint [Doc. 3]. Thus, there is no timber land in

---

[3] *See Aubrey Lee Price*, Cause No. 1:12-cv-2296, U.S. Dist. Ct. N.D. Ga., at *Brief in Support of Motion to Appoint Receiver*, pg. 3 [Dkt. No. 16-4] (most real property was located in Florida); *SEC v. Marc Roup*, Cause No. 09-CV-01685, U.S. Dist. Ct. W.D. Pa., at *Brief in Support of Motion to Appoint Receiver*, pg. 6 [Dkt. No. 3-1] (real property was in Mexico and Murena's partner had lived in Mexico and spoke Spanish); *SEC v. Sean Nathan Healy*, Cause No. 09-CV-1330, U.S. Dist. Ct. M.D. Pa., at *Brief in Support of Motion for TRO*, pg. 28 [Dkt. No. 91] (all property was in Florida).

Alabama or Florida which might be better pursued by receivers located there. To be clear, there is no interstate connection to any underlying security for the promissory note. As alleged, these notes were, in reality, *unsecured* promises by Mississippi residents which induced all investors to make payments to Mississippi residents. And according to the SEC, the defendants used their ill-gotten gains to invest in Mississippi real estate deals.

Recognizing that a Miami-based receiver seeking to litigate hundreds of claims in Mississippi would be wasteful, the SEC promotes the solution that Mr. Murena has generously agreed to waive his travel *expenses*. Logic dictates that a party agreeing to waive airfare, hotel, meals and other incidental expenses that are necessary with long-distance travel from Miami to Jackson could be disincentivized to come to Jackson from Miami as many times and as quickly as necessary to properly fulfill his duties in Mississippi.[4] This is inconsistent with ensuring that the best interests of the receivership estate will be served but again highlights the obvious inconveniences and inefficiencies that result from appointing a Miami receiver in a Mississippi case. And to the extent Mr. Murena would be traveling to Mississippi (as he should often do, if appointed) there is no such apparent concession for his travel *time,* which would not be an insignificant cost to the estate. Thus, even with the concession of his travel expenses, there can be no doubt that the hiring of Mr. Murena would cause inefficiencies and costs that would not be presented with the hiring of Derek Henderson.

Based upon past dealings with the SEC, the Secretary is concerned that the SEC and its proffered receiver candidate intend to have work performed by outside professionals (at hundreds of dollars per hour) instead of using the Secretary's resources, which can be used at no

---

[4] Based on a review of his firm's activities in other cases, Mr. Murena's presumed intent is to conduct the majority of his operations from Miami. It is presumed that he will engage his Miami law firm as counsel, consistent with his firm's past practice in which firm members received appointments at the request of the SEC, thus further exporting the oversight of this case to Miami.

9

cost to the estate or the victims.  In fact, the Secretary has already begun an investigation compiling evidence that the receiver could and should use, but the Secretary believes that the SEC and Mr. Murena will not take advantage of, but a local receiver like Derek Henderson would.

### 5. There Should Be No Concern About Derek Henderson's Resources

The SEC suggests that Derek Henderson is unqualified because of the Commission's misperception that "his resources . . . appear limited." SEC Response [Dkt. No. 18] at 3.  More specifically, the SEC suggests that the resources available to Mr. Murena, including his law firm, two recently engaged local lawyers, and a local accounting firm, shift the balance well in Mr. Murena's favor.  The Secretary takes no position on the relative qualifications or resources of these other professionals.  However, the insinuation that Derek Henderson lacks the capacity or ability to adequately handle and manage this case is absurd. There is no reason for concern about Derek Henderson's capabilities or to doubt that he will engage adequate and competent professionals to represent and assist him and to complete whatever tasks are necessary and appropriate in the best interests of the harmed investors.[5]   He has certainly demonstrated that capability in past fiduciary appointments in connection with fraud schemes of similar nature and larger scope.

Further, there is no indication that such extensive resources will be needed, and Derek Henderson has not hired anyone to assist at this point, and only plans to do so once he has the opportunity to assess the situation and the particular needs for this estate.  Mr. Murena's

---

[5] Derek Henderson has informed the Secretary that, in anticipation of his potential appointment, he has made arrangements with law firms and accounting firms to assist as needed.  Though the hourly rates to be charged by these professionals should not be a controlling factor, the Secretary notes that they are all comparable to those rates which Mr. Murena and his associated professionals intend to apply, at either $275 per hour or below.

engagement of multiple lawyers and accountants prior to even being appointed as receiver is concerning considering all these professionals appear to be billing at $275 per hour.

> B. There is a Valid Concern that Mr. Murena May be Biased and No Such Concern Exists with Derek Henderson

As to the parties' responsibilities for recommending receivers, at least one district court has criticized the SEC's practice (being employed in this case) of recommending only one possible receiver in similar circumstances:

> This Court also notes that the SEC recommended only a single candidate – Arthur Steinberg - to Judge Owen for appointment as Receiver. In failing to propose any other candidates to the Court, the SEC effectively preordained Steinberg's appointment. In this Court's view, the practice of nominating a single candidate is unhealthy and the SEC should discontinue it. It empowers SEC staff attorneys and substitutes their judgment for the Court's. The SEC would be well advised to offer judges a choice among at least three vetted candidates. Indeed, the SEC proposed Mr. Steinberg, and only Mr. Steinberg, to be the receiver in a number of enforcement actions in this district. The SEC's benevolence allowed the Receiver and his law firm to collect approximately $29 million in six actions in this district over three years. Perhaps more competition would have redounded to the benefit of the Court and aggrieved investors.

*S.E.C. v. Northshore Asset Mgt.,* 05 CIV. 2192 (WHP), 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009). *See also S.E.C. v. Schooler*, 3:12-CV-2164-GPC-JMA, 2015 WL 1510949, at *3 (S.D. Cal. Mar. 4, 2015) (finding that receiver's obvious allegiance to SEC counseled in favor of removal of receiver, but denying motion to remove due to cost of starting over with new receiver).

As stated above, Mr. Murena and his firm have been hired in many cases where the SEC was a party. In fact, Mr. Murena's firm has received over $4,000,000.00 in fees solely in cases where it served as counsel to the receiver in cases filed by the SEC. A review of Mr. Murena and his firm's billings in cases where they served as receivers or counsel to the receiver reveals

constant communication with the SEC where the SEC was the plaintiff in the litigation. It is especially troubling that the SEC's sole recommendation for a receiver lives in Florida, which has no connection to this case. While the SEC cites its familiarity with Mr. Murena as weighing in favor of appointing him, it actually weighs in favor of disqualifying him due to the potential for bias towards the SEC.

To the contrary, Derek Henderson has no bias towards or against any interested party. Derek Henderson has not been recommended or retained by the Secretary on other cases, nor does Derek Henderson perform work for the Secretary. Further, The SEC's assertion that the Secretary's recommendation shows favoritism toward "Mississippi investors over investors from out of state," is inaccurate. *See* SEC Response to Secretary's Motion to Intervene [Docket No. 18] at 4. The Secretary has a statutory duty to redress harm inflicted by violations of state and federal security laws occurring in the State of Mississippi regardless of where the victims may reside. Inarguably, Mississippi has the most substantial interest in this matter: this is the place where the underlying conduct occurred, where the estate property is located or will be found, where the vast majority of the victims reside, and where the SEC chose to initiate this litigation against the defendants.

### III. CONCLUSION

Considering these circumstances, and his superior qualifications and experience, the Court should appoint Derek Henderson as the receiver in this matter. Although the SEC prefers Mr. Murena, there is no compelling reason for burdening the estate with the inefficiencies and expenses that the selection of an out of state receiver will likely entail. For the foregoing reasons, the Secretary urges the Court to appoint Derek Henderson as the receiver in this matter.

This the 24th day of May, 2018.

                          Respectfully Submitted,

                          C. DELBERT HOSEMANN, JR., in his Official Capacity as MISSISSIPPI SECRETARY OF STATE

                          By His Attorneys,

                          MOCKBEE HALL & DRAKE, P.A.

                BY:   */s/ David W. Mockbee*
                          DAVID W. MOCKBEE, MSB #3396
                          DAVID B. ELLIS, MSB #102926

MOCKBEE HALL & DRAKE, P.A.
Capital Towers, Suite 1820
125 South Congress Street
Jackson, MS 39201
(601) 353-0035 (phone)
(601) 353-0045 (fax)
dmockbee@mhdlaw.com
dellis@mhdlaw.com

OF COUNSEL:

Jessica Leigh Long
Assistant Secretary of State
MSB #103316

Jeffrey L. Lee
Senior Attorney
MSB #103180

Office of the Mississippi Secretary of State
Securities Division
125 S. Congress Street
Jackson, MS  39201
(601) 359-1650 (phone)
(601) 359-9070 (fax)

## **CERTIFICATE OF SERVICE**

    I, David W. Mockbee, do hereby certify that on this date I electronically filed the foregoing document with the Clerk of this Court using the ECF system, which sent notification of this filing to all counsel of record.

    THIS the 24th day of May, 2018.

                                            /s/ *David W. Mockbee*
                                            DAVID W. MOCKBEE