**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **No: 3:18-cv-252** |
| **Plaintiffs,** | **Carlton W. Reeves, District Judge** |
| **v.** | |
| **ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,** | |
| **Defendants.** | |

**RECEIVER'S REPORT**

**August 21, 2018**

_____/s/ Alysson Mills_____

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and*
*Madison Timber Properties, LLC*

**Introduction**

Arthur Lamar Adams, through his company Madison Timber Properties, LLC, operated a $100 million Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, he pleaded guilty to the federal crimes of wire and bank fraud.

On June 22, 2018, this Court appointed me Receiver of the estates of Adams and Madison Timber Properties. The order of appointment sets forth my responsibilities and duties. Among other things, the order instructs me to take any action necessary and appropriate to preserve the assets of Adams and his businesses, to maximize funds available for distributions to victims.

The order also instructs me to file a report of my findings and proposals within 60 days. This is my report. It contains the following parts:

|  | *page* |
|---|---|
| Background | 3 |
| Receiver's duties | 5 |
| Receiver's actions to-date | 6 |
| Receiver's preliminary findings | 13 |
| Receiver's preliminary plan | 16 |
| Receiver's recommendations | 19 |
| Proposed order | 20 |

The report is, first and foremost, for the Court's benefit. I have written it for a broader audience, however, knowing that non-lawyers including victims may read it.

I am sensitive to potential ongoing criminal investigations and do not disclose information that may impair their progress.

## Background

### *Criminal proceedings*

On May 1, 2018, the U.S. Attorney's Office for the Southern District of Mississippi charged Adams with two counts of wire fraud and one count of bank fraud in connection with a broader scheme to defraud. The bill of information described the scheme as follows:

> 6.    Defendant ADAMS falsely and fraudulently represented to investors that Madison Timber Properties was in the business of buying timber rights from landowners and then selling the timber rights to lumber mills at a higher price. The object of the scheme was to cause persons to invest in loans that purportedly were for the purpose of financing such contracts for the purchase of timber rights to be sold to lumber mills. In fact, neither ADAMS nor Madison Timber Properties had such timber rights or contracts with lumber mills, except in only a few instances. …

> 7.    In furtherance of the scheme and artifice to defraud, defendant ADAMS entered into investment contracts with investors, most often in the form of promissory notes on behalf of Madison Timber Properties. The loans typically guaranteed investors an interest rate of 12 to 13 percent, which was to be repaid to investors over the course of twelve to thirteen months. The monthly payments due on these promissory notes were typically due either on the first or the fifteenth of the month.

> 8.    In fact, this was a sophisticated Ponzi scheme. Instead of investing investors' money, ADAMS used the invested funds for his personal benefit and for purposes other than those represented to investors. During the scheme and artifice to defraud, defendant ADAMS fraudulently obtained well in excess of one hundred million dollars ($100,000,000) from more than 250 investors located in at least 14 different states.

> 9.    In furtherance of the Ponzi scheme, ADAMS created false documents to lull investors into believing that their investments were secured by sufficient collateral from which they could recover all or part of their investment in the event that Madison Timber Properties defaulted on the loans. Specifically, ADAMS created false timber deeds purported to be contracts conveying timber rights from landowners to Madison Timber Properties. ADAMS forged the signatures of landowners, whose names were obtained from timber maps. ADAMS also created false timber deeds purported to convey those timber rights from Madison Timber Properties to the investors. In fact, Madison Timber Properties did not hold valid timber rights on the parcels of land described in the false timber deeds which ADAMS created. To further lull investors, ADAMS had many of the documents notarized to make the investments appear legitimate. To further conceal the scheme, ADAMS required the investors to agree not to record their timber deeds unless Madison Timber Properties defaulted on the loan agreement by failing to make a payment. In many instances, ADAMS also provided a "timber cruise summary" purporting to state the value of the timber located on a particular parcel of land. These "timber cruise summary" documents were also false and had been created by ADAMS to induce investors to give money to ADAMS under false and fraudulent purposes.

10.   Instead of using the money for the purpose of cutting timber, ADAMS used the proceeds for other fraudulent purposes and to further the scheme, including but not limited to making payments due and owing to other investors. …

11.   It was further part of the scheme and artifice to defraud that defendant ADAMS paid commissions to recruiters who referred investors to ADAMS. The commissions were paid from investors' money. For example, ADAMS paid one recruiter approximately two million four hundred forty-five thousand four hundred and forty-nine dollars ($2,445,449) in commissions in 2017 alone. ADAMS paid another recruiter approximately one million six hundred twenty-eight thousand one hundred dollars ($1,628,100) in commissions in 2017. …[1]

On May 9, 2018, Adams pleaded guilty to the crimes of wire and bank fraud.[2]   His sentencing originally was set for August 21, 2018, but has been rescheduled for October 21, 2018, at 10:00 a.m.

*Civil proceedings*

Separately, the Securities and Exchange Commission filed a complaint against Adams and Madison Timber Properties. The complaint alleges that "[b]eginning in approximately 2004," Adams, through Madison Timber Properties, "committed securities fraud by operating a Ponzi scheme."[3] Among other things, the complaint asked that the Court immediately freeze the assets of Adams and Madison Timber Properties. An order freezing assets was entered on April 20, 2018.[4]

On June 22, 2018, the Court appointed me Receiver of the estates of Arthur Lamar Adams and Madison Timber Properties ("Receivership Estate") and appointed my law partner Brent Barriere my primary counsel.[5]

The Court's order of appointment stays, or freezes, all civil legal proceedings of any nature involving Adams, Madison Timber Properties, their partners or agents, or any property that is the subject of the Receivership Estate. The purpose of the stay is to preserve assets that otherwise could be picked apart, to maximize funds available for distributions to victims.

---

[1] Doc. 1, United States v. Adams, No. 3:18-cr-00088 (S.D. Miss).

[2] Doc. 11, United States v. Adams, No. 3:18-cr-00088 (S.D. Miss).

[3] Doc. 3, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[4] Doc. 5, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[5] Doc. 33, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

**Receiver's duties**

"[A] receiver's powers and duties are set out by the order that grants [her] appointment and are unique to the facts and circumstances of each case."[6]  Relevant here, this Court's order of appointment empowers and instructs me:

1. to determine the nature, location, and value of all property interests "of whatever kind and description, wherever located" of Adams and Madison Timber Properties

2. to determine the nature and location of records "of whatever kind and description, wherever located" of Adams and Madison Timber Properties

3. to take possession of all property interests, records, and "any assets traceable to assets" now owned by the Receivership Estate

4. to manage the Receivership Estate

5. to open bank accounts for the Receivership Estate

6. to incur expenses and make payments as in the ordinary course of business of the Receivership Estate

7. to take any action that otherwise could have been taken by any agent of Adams or Madison Timber Properties

8. to sell any of Adams's or Madison Timber Properties' personal or real property

9. to access all of Adams's and Madison Timber Properties' bank accounts, security accounts, and IT systems

10. to collect any management or advisory fees due and owing to Adams or Madison Timber Properties

11. to share information with the S.E.C.

12. to employ persons to assist me in carrying out my duties as Receiver

13. to take "such action as necessary and appropriate" to preserve or prevent the dissipation or concealment of assets and records

14. to obtain documents or other information "within the custody or control of any person" sufficient to identify accounts, properties, assets, liabilities, or agents of and relating to the Receivership Estate

15. to issue subpoenas

---

[6] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).

16.   to investigate and bring legal action as I deem necessary

17.   to file a petition in bankruptcy as I deem necessary

18.   "to take such other action as may be approved by the Court"

The Court's order of appointment instructs me to file a report within 60 days that includes:

1.   a description of all known assets

2.   a list of secured creditors with an interest in the Receivership Estate

3.   a list of investors in Madison Timber Properties

4.   any other known liabilities of the Receivership Estate

5.   the Receiver's preliminary plan of administration of the Receivership Estate

6.   the Receiver's preliminary recommendation as to the recovery, liquidation, and distribution of the Receivership Estate

7.   the Receiver's recommendation as to whether the Receivership should be continued

8.   any additional information that the Receiver deems relevant

**Receiver's actions to-date**

Since my appointment on June 22, 2018, I have:

*Filed notices of receivership in federal courts in every state*

Immediately upon my appointment, I filed notices of receivership in every federal district court in the United States. This ensures my complete jurisdiction and control of any real or personal property owned by Adams or Madison Timber Properties in the United States.[7]

*Conferred with federal and state authorities*

Immediately upon my appointment, I conferred with the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, and the Securities and Exchange Commission

---

[7] 28 U.S.C. § 754.

regarding their investigations. I communicate regularly with these federal authorities, and they have shared information with me to the extent they can do so without impairing the integrity of potential ongoing criminal investigations.

I also communicate regularly with the Mississippi Secretary of State's Office whose Securities Division is separately collecting information as part of its own investigation. The Securities Division also is sharing information with me.

### Inspected Madison Timber Properties' office

Madison Timber Properties' office was located at 742 Magnolia Street, Madison, Mississippi, 39110. Neither Adams nor Madison Timber Properties owned the building. They shared it with its owner, William McHenry, who claims title to the furniture there. By the time I inspected the office the FBI had already searched it and seized all relevant records. Apart from the furniture, I found mostly mounted deer heads and personal family photos.

### Issued notices to "recruiters"

Based on information provided to me by federal and state authorities, I have identified persons who received commissions or other payments in exchange for the sales or brokerage of investments (sometimes characterized as "loans") in Madison Timber Properties. The bill of information that charged Adams with his crimes refers to such persons as "recruiters" and alleges they received many millions of dollars in commissions in 2017 alone.[8] I am in the process of accounting for any commissions or other payments paid to recruiters during the Ponzi scheme's existence.

In the meantime, I have issued notices to known recruiters that any commissions or other payments paid to them were paid with stolen money. I have advised them that I intend to take any and all action necessary to return such money or things of value to the Receivership Estate, for the benefit of defrauded investors. I have instructed them to preserve and prevent the dissipation of any money or thing of value paid to them, pending an accounting by me.

---

[8] Doc. 1, United States v. Adams, No. 3:18-cr-00088 (S.D. Miss).

*Issued notices to Adams's family*

I also issued notices to Adams's family that any purchases by Adams, whether for himself or someone else, including his wife and children, were paid with stolen money, and any gifts of money by Adams were gifts of stolen money.  I advised them that I intend to take any and all action necessary to return any such money or things of value to the Receivership Estate, for the benefit of defrauded investors.  I instructed them to preserve and prevent the dissipation of any money or thing of value paid to them, pending an accounting by me.

*Issued notice to the University of Mississippi*

In my review of bank records, I identified substantial gifts to the Ole Miss Athletic Foundation—at least $49,900 in 2016 and $47,100 in 2017, and possibly a lot more. I advised the University of Mississippi that these gifts were made with stolen money and I intend to take any and all action necessary to return any such money to the Receivership Estate, for the benefit of defrauded investors.  I have requested an accounting by the University of Mississippi but have not received one.  In the meantime I continue to review bank records for substantial gifts to any institution, charitable or otherwise.

*Requested records from banks*

The Court's order of appointment instructed me to take possession of any bank accounts by which Adams or Madison Timber Properties transacted business, including, specifically: "First Bank of Clarksdale, Account No. 7315736, Southern Bancorp Account Nos. 6454774, 6454367, and 6454359, and River Hills Bank Account No. 6755060."   The accounts at these three banks were opened in October 2016 and were used to transact Madison Timber Properties business until they were frozen on April 20, 2018.[9]  I have received and reviewed records for each of these accounts.

Prior to October 2016, Adams and Madison Timber Properties transacted business through account(s) at Trustmark Bank.  I have requested, but have not yet received, records from Trustmark Bank.  The bank's counsel advises that the bank is collecting and will produce the

---

[9] Doc. 5, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

records requested.  I need these records to identify, among other things, commissions paid to recruiters prior to October 2016.

In addition to the bank accounts through which Adams and Madison Timber Properties transacted Madison Timber Properties' business, I have requested records for any bank accounts through which Adams transacted personal or other business.  I have received records for five additional accounts at Southern Bancorp Bank, three accounts at Community Bank, and one account at Jefferson Bank.  I have reviewed these records for fraudulent transfers, including but not limited to cash gifts by Adams to individuals and institutions.

I recently discovered that Adams also transacted business at Bank Plus, Cleveland State Bank, and Southern AgCredit.  I have requested records of these banks, and will request records of additional banks and financial institutions as I discover new banking or lending relationships.

*Requested records from accountant*

Adams and Madison Timber Properties relied on a single accounting firm for their bookkeeping and tax filings.  The FBI seized all records of this accounting firm, and I received copies of the records only just last week.  The records, of course, are indispensable to my investigation and necessary to confirm, among other things, commissions paid to recruiters.  The records are voluminous and I have not had time to adequately review them.

I anticipate that I will need the assistance of a forensic accountant to meaningfully analyze the records. With the Court's approval, I have preliminarily retained one, pending a thorough conflicts check. To avoid inefficiencies and unnecessary expense, I want to be in a better position to oversee any such work before it proceeds.

*Requested records from law firms*

Adams and Madison Timber Properties paid a handful of law firms for various services. I have requested copies of any and all documents relating to Adams or Madison Timber Properties in their possession.

*Requested records from investment advisors and trust companies*

I have identified a handful of investment advisors and trust companies that facilitated investments in Madison Timber Properties.  I have requested copies of any and all documents relating to Adams or Madison Timber Properties in their possession.

*Requested records from LLCs of which Adams was a member*

At the time he pleaded guilty, Adams was a member of at least six active limited liability companies ("LLCs") that own real estate.  Adams's share in each LLC and each LLC's respective real estate is as follows:

| | |
|---|---|
| 1/3 | Delta Farm Land Investments, LLC<br>1170+ acres farmland in Oktibbeha County<br>Purchased in 2014 for $2,796,100<br>Encumbered by Trustmark Bank mortgage<br>Owe approximately $2,200,000 |
| 1/4 | KAPA Breeze LLC<br>1.5+/- acres mixed use land on Highway 30A in Florida<br>Purchased in 2017 for approximately $1,900,000<br>Encumbered by Jefferson Bank mortgage<br>Owe approximately $1,365,000 |
| 1/4 | Mallard Park, LLC<br>1,723 acres with hunting lodge in Humphreys County<br>Purchased in 2016 for $2,593,500<br>Encumbered by Southern AgCredit mortgage<br>Owe approximately $2,000,000 |
| 1/4 | Mash Farms, LLC<br>808+ acres with hunting camp in Sunflower County<br>Purchased in 2014 for $1,600,000<br>Encumbered by Trustmark Bank mortgage<br>Owe approximately $900,000 |
| 47.5% | Oxford Springs, LLC<br>2,300+/- acres undeveloped land in Lafayette County<br>Purchased in 2015 and 2016 for total of $6,158,000<br>Encumbered by First Bank of Clarksdale mortgage<br>Owe approximately $4,500,000 |
| 1/6 | 707, LLC<br>263+ acres recreational land in Holmes County<br>Purchased in 2009<br>Encumbered by First Commercial Bank mortgage<br>Owe approximately $368,000 |

I have communicated with members of each LLC and have requested and received records, including organizational documents and bank statements, for each. I have reviewed records for all but Mallard Park, LLC, which records I received only yesterday.

I have advised each LLC that to the extent any member of the LLC was a recruiter for Madison Timber Properties, I claim that member's interest for the Receivership Estate, at least to the extent necessary to repay the member's liability for commissions paid with stolen money.

*Opened a bank account*

I opened an account at Hancock Bank for the purpose of transacting the Receivership Estate's business.  Deposits to-date include:

| | |
|---:|---|
| $883,721.84 | from First Bank of Clarksdale *5736 |
| $356,223.93 | from River Hills Bank *5060 |
| $223,143.82 | from Southern Bancorp Bank *4774 |
| $510,819.79 | from Southern Bancorp Bank *5710 |
| $9,267.59 | from Southern Bancorp Bank *5713 |
| $304.72 | from Southern Bancorp Bank *8455 |
| $167,206.60 | from Hartford Life and Annuity Insurance Co. |
| $3,678.45 | from Lincoln National Life Insurance Co. |
| $2,273.09 | refund for lawn services |
| $2,156,639.83 | |

Going forward, any money that I recover will be deposited into this account, and expenses of the Receivership Estate will be paid from this account with the Court's approval. Because my primary objective is to maximize funds available for distributions to victims, I intend to invest idle funds in government securities.

*Created a website for investors*

On July 23, 2018, I published a website—madisontimberreceiver.com—to serve as a source of information on my progress and on any relevant court proceedings.  The Securities and

Exchange Commission and the Mississippi Secretary of State's Office have assisted me in publicizing the website.[10]

*Contacted investors in Madison Timber Properties*

Simultaneously with the website's publication, I mailed letters to all investors in Madison Timber Properties known to me as of July 23, 2018. The letter encourages investors to complete and return to me a form that asks for basic information.  The letter included a self-addressed, stamped return envelope.

Separately, the Mississippi Secretary of State's Office mailed letters to all investors in Madison Timber Properties known to it as of July 23, 2018. That letter also encouraged investors to complete and return to me the same form, seeking the same basic information.

Since these letters were mailed, my office has had personal contact with more than 120 confirmed investors in Madison Timber Properties, via phone, letter, email, and in-person meetings.  We make new contacts daily.

*Interviewed persons with knowledge*

I have interviewed numerous individuals with first-hand knowledge of matters bearing on the Receivership Estate, including Adams.

*Researched legal claims against third parties*

My colleagues and I have researched legal claims against third parties based on facts known to date.  Our investigation and research continues as new information is received. I do not publish our assessments here because to do so would be to telegraph our legal strategies to future defendants.

---

[10] See press releases at https://www.sec.gov/divisions/enforce/claims/madison-timber-properties.htm and http://www.sos.ms.gov/About/Pages/Press-Release.aspx?pr=879.

*Retained Mississippi counsel*

With the Court's approval, and after a thorough conflicts check, I retained Lilli Evans Bass of the law firm Brown Bass & Jeter, PLLC in Jackson, Mississippi, as additional legal counsel. Among other things, Bass currently is advising on the effects of a divorce between Adams and his wife on assets belonging to the Receivership Estate. She also is monitoring lawsuits filed in Mississippi state and federal courts against Adams, Madison Timber Properties, and its agents.

## Receiver's preliminary findings

*Known assets—Madison Timber Properties*

As of April 20, 2018, the date the Court froze the assets of Adams and Madison Timber Properties,[11] Madison Timber Properties' only known assets were the cash in the following bank accounts:

|  |  |
|---|---|
| $883,721.84 | First Bank of Clarksdale *5736 |
| $356,223.93 | River Hills Bank *5060 |
| $223,143.82 | Southern Bancorp Bank *4774 |

I transferred that cash to the Receivership Estate's account at Hancock Bank.

*Known assets—Adams*

Adams's known assets include the cash in his bank accounts:

|  |  |
|---|---|
| $510,819.79 | Southern Bancorp Bank *5710 |
| $9,267.59 | Southern Bancorp Bank *5713 |
| $304.72 | Southern Bancorp Bank *8455 |
| $2,467.57 | Community Bank *6837 |
| $1,803.87 | Community Bank *0302 |

---

[11] Doc. 5, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

I have transferred the cash in the Southern Bancorp Bank accounts to the Receivership Estate's account at Hancock Bank. I anticipate transferring the cash in the Community Bank accounts pending further review.

Additional known assets of Adams are:

| | | |
|---|---|---|
| House at 134 Saint Andrews Drive, Jackson, Mississippi, 39211<br>Purchased in 2011 for $364,000<br>Unencumbered | | valuation in process |
| Condo in Calton Hill subdivision in Oxford, Mississippi<br>Purchased in 2013 for $135,000<br>Unencumbered | | valuation in process |
| 2015 King Ranch Ford F150 truck | | estimated $33,000 |
| Hartford Life and Annuity Insurance Co. life insurance policy | | surrendered for $167,206.60 |
| Lincoln National Life Insurance Co. life insurance policy | | surrendered for $3,678.45 |
| Hartford Life and Annuity Insurance Co. life insurance policy | | ending account value $13,484.95 |
| Jewelry | | estimated $40,000 |
| Firearms | | estimated $10,000 |
| 1/3 | Delta Farm Land Investments, LLC<br>1170+ acres farmland in Oktibbeha County<br>Purchased in 2014 for $2,796,100<br>Encumbered by Trustmark Bank mortgage<br>Owe approximately $2,200,000 | valuation in process |
| 1/4 | KAPA Breeze LLC<br>1.5+/- acres mixed use land on Highway 30A in Florida<br>Purchased in 2017 for approximately $1,900,000<br>Encumbered by Jefferson Bank mortgage<br>Owe approximately $1,365,000 | valuation in process |
| 1/4 | Mallard Park, LLC<br>1,723 acres with hunting lodge in Humphreys County<br>Purchased in 2016 for $2,593,500<br>Encumbered by Southern AgCredit mortgage<br>Owe approximately $2,000,000 | valuation in process |
| 1/4 | Mash Farms, LLC<br>808+ acres with hunting camp in Sunflower County<br>Purchased in 2014 for $1,600,000<br>Encumbered by Trustmark Bank mortgage<br>Owe approximately $900,000 | valuation in process |
| 47.5% | Oxford Springs, LLC<br>2,300+/- acres undeveloped land in Lafayette County<br>Purchased in 2015 and 2016 for total of $6,158,000<br>Encumbered by First Bank of Clarksdale mortgage | valuation in process |

14

Owe approximately $4,500,000

| 1/6 | 707, LLC | valuation in process |
| | 263+ acres recreational land in Holmes County | |
| | Purchased in 2009 | |
| | Encumbered by First Commercial Bank mortgage | |
| | Owe approximately $368,000 | |

*Secured creditors with an interest in the Receivership Estate*

There are no known secured creditors of Madison Timber Properties.

The known secured creditors of Adams are the banks to which Adams provided a personal guarantee of a loan to purchase real estate:

| Jefferson Bank | Mortgage on 1.5+/- acres mixed use land on Highway 30A in Florida<br>Purchased by KAPA Breeze LLC in 2017 for approximately $1,900,000<br>Owe approximately $1,365,000 |
| Southern AgCredit | Mortgage on 1,723 acres with hunting lodge in Humphreys County<br>Purchased by Mallard Park, LLC in 2016 for $2,593,500<br>Owe approximately $2,000,000 |
| Trustmark Bank | Mortgage on 808+ acres hunting camp in Sunflower County<br>Purchased by Mash Farms, LLC in 2014 for $1,600,000<br>Owe approximately $900,000 |
| First Bank of Clarksdale | Mortgage on 2,300+/- acres undeveloped land in Lafayette County<br>Purchased by Oxford Springs, LLC in 2015 & 2016 for $6,158,000<br>Owe approximately $4,500,000 |
| First Commercial Bank | Mortgage on 263+ acres recreational land in Holmes County<br>Purchased by 707, LLC in 2009<br>Owe approximately $368,000 |

*Investors in Madison Timber Properties*

I have a list of known investors in Madison Timber Properties.  Out of respect for their privacy, I do not share it.

*Other known liabilities of the Receivership Estate*

I know of no other liabilities of the Receivership Estate at this time.

15

**Receiver's preliminary plan**

I do not believe bankruptcy proceedings under any chapter of Title 11 would be necessary or appropriate at this time.  My preliminary plan is as follows:

*Monetize Adams's interests in LLCs*

I would like to resolve Adams's interests in the six known LLCs on terms that maximize value to the Receivership Estate.  To the extent any member of an LLC was a recruiter for Madison Timber Properties, I claim that member's interest for the Receivership Estate, at least to the extent necessary to repay the member's liabilities for commissions paid with stolen money. Preliminary plans for each LLC are as follows:

*Delta Farm Land Investments, LLC*: The other members desire to sell its real estate and dissolve the LLC. I would like to continue to assist them with that, contingent on the Receivership Estate's receipt of a fair value for Adams's interest.

*KAPA Breeze, LLC*: The other members would like to continue to develop its real estate and buy Adams and a recruiter out. As of this report, their offer is to buy Adams and the recruiter out only for the money that they put in. I have not yet determined that this is a fair value for their interests. The LLC was able to purchase the real estate only because Adams and the recruiter provided $850,000 in equity. I also recently discovered that one member of the LLC has been paying himself out of the LLC's account, in direct violation of the Court's order unfreezing the account so that it could be used in the ordinary course of business.[12]  I would like to continue to evaluate the Receivership Estate's options.

*Mallard Park, LLC*: I would like to evaluate the Receivership Estate's options upon my review of requested records.

*Mash Farms, LLC*: The other members would like to maintain its hunting camp and find a member to replace Adams. I would like to assist them with that, contingent on the Receivership Estate's receipt of a fair value for Adams's interest.

---

[12] Doc. 32, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

16

*Oxford Springs, LLC*: I have had preliminary discussions with the other principal member regarding the LLC's future. I would like to continue to evaluate the Receivership Estate's options.

*707, LLC*: The other members desire to sell its real estate and dissolve the LLC. I would like to continue to assist them with that, contingent on the Receivership Estate's receipt of a fair value for Adams's interest and the interests of two members who were recruiters.

### *Liquidate Adams's remaining assets*

Adams's remaining assets are subject to forfeiture to the federal government at his sentencing. If forfeited, the assets likely would be sold at public auction. I have discussed these assets with the U.S. Attorney's Office and we agree that the Receivership Estate likely can obtain a better value by liquidating them itself. The U.S. Attorney's Office has preliminarily agreed to forego forfeiture to allow me to do that. These conversations are ongoing. In the meantime, I am independently valuing the real property that Adams owns, with the expectation that I will oversee its sale.

### *Account for commissions, fraudulent transfers, gifts*

I would like to continue to review records to account for commissions, fraudulent transfers, and gifts. Currently I have a good understanding of all transactions in Adams's accounts since October 2016. For transactions prior to October 2016, I need records requested of Trustmark Bank, which I expect I will receive shortly. I intend to review these records, as well as the accounting records that I received only just last week, for the purpose of rendering accountings on which demands may be made of institutions and persons, including recruiters, who received stolen money.

### *File lawsuits to recover commissions, fraudulent transfers, gifts*

I anticipate that some institutions and persons, including recruiters, who received stolen money will voluntarily pay it back to the Receivership Estate. Voluntary repayment will be welcomed, of course, because it will save the Receivership Estate considerable expense. For those who do not voluntarily repay, I intend to file lawsuits to recover the money.

I have not determined whether such lawsuits should be litigated on an hourly or contingency fee basis. I will be in a better position to make a recommendation after I assess the value and the likelihood of achieving actual recovery.

### Assess legal claims against third parties

I would like to continue to research legal claims against third parties as long as new information is received. In order to maximize the Receivership Estate's position, I am not disclosing publicly third-party targets.

### File lawsuits against third parties

I anticipate that some third parties will want to settle legal claims against them before I file a lawsuit, and I will welcome those discussions to the extent they conserve the resources of the Receivership Estate and the Court. Of course any settlement or lawsuit necessarily will be public.

I have not determined whether such lawsuits should be litigated on an hourly or contingency fee basis. I will be in a better position to make a recommendation after I assess the value and the likelihood of achieving actual recovery.

### Continue communicating with investors

I would like to continue communicating with investors, through my website, which answers frequently asked questions, and through email, phone, and letters.  Investors provide information that is useful to my investigation and, in turn, I hope that I demystify the receivership process for them.

My end goal, of course, is to make an equitable distribution to victims with the money I recover. The money I have recovered in the first 60 days would not go far. It may take a long time and a lot of work to recover enough money to make a meaningful distribution, but I am committed to pursuing recoveries for the benefit of victims as long as the Court allows.

The Receivership Estate will have to independently determine to whom distributions should be made, in what amounts, and in what order.  It is premature to attempt that

determination at this time. When appropriate, the Receivership Estate will institute a claims process and obtain the Court's pre-approval of any methodology.

**Receiver's recommendations**

I recommend that the Court permit me to continue my investigation and to administer the Receivership Estate as described above, reporting to the Court at a minimum every 60 days.

Assuming I continue, I respectfully request that the Court amend its order of appointment to permit the Receiver to commence litigation against third parties without the prior approval of the Court.  Currently the Court's order provides that I may commence such litigation "with prior approval of this Court upon ex parte request." Lawyers for prospective defendants have expressed doubts that the same court that pre-approves a lawsuit against a defendant can fairly decide the defendant's motion to dismiss the lawsuit.  I therefore fear that the order's language, while intended to protect the Receiver and third parties alike, may have the unintended consequence of inviting litigation over its meaning and effect, thereby delaying justice for victims. I have discussed this matter with the Securities and Exchange Commission and it does not object to an amendment of the order to remove the language in question.  If the Court agrees, the Court may amend its order simply by striking from page 7, paragraph (3), the language "with prior approval of this Court upon ex parte request" and by striking from page 9, paragraph (16), the language "following this Court's approval upon ex parte request."

**Proposed order**

(attached)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiffs,

    v.

ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC,

        Defendants.

No: 3:18-cv-252

Carlton W. Reeves, District Judge

**PROPOSED ORDER**

On June 22, 2018, this Court appointed Alysson Mills to serve as Receiver of the estates of Arthur Lamar Adams and Madison Timber Properties ("Receivership Estate") and instructed her to file a report of her preliminary findings and recommendations within 60 days. [Doc. 33]

The Court has received the Receiver's Report. The Court accepts the recommendation that the Court permit Ms. Mills to continue her investigation and to administer the Receivership Estate as recommended, reporting to the Court at a minimum every 60 days.

The Court further accepts the recommendation, to which the Securities & Exchange Commission does not object, that the Court amend its order of appointment to permit the Receiver to commence litigation against third parties without the prior approval of the Court, for the reasons stated in the Receiver's Report. Accordingly, the Court's order of appointment [Doc. 33] shall be amended in the following respects:

- at page 7, paragraph (3), the language "with prior approval of this Court upon ex parte request" shall be stricken

- at page 9, paragraph (16), the language "following this Court's approval upon ex parte request" shall be stricken

The order of appointment [Doc. 33] shall in all other respects remain the same.


DATED: _____          _____

                              Honorable Carlton W. Reeves

                              United States District Judge