# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,**<br><br>Defendants. | No: 3:18-cv-252<br><br>**Carlton W. Reeves, District Judge** |

# RECEIVER'S FIRST FEE APPLICATION

*for the time period beginning June 22, 2018 and ending July 31, 2018*

**August 30, 2018**

　　　　　　　　　　　　　　　　　　　　　　*/s/ Alysson Mills*

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

Arthur Lamar Adams, through his company Madison Timber Properties, LLC, operated a $100 million Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, he pleaded guilty to the federal crime of wire fraud. On June 22, 2018, this Court appointed me Receiver of the estates of Adams and Madison Timber Properties ("Receivership Estate").

The order of appointment sets forth my responsibilities and duties and provides that I shall receive reasonable compensation and reimbursement from the Receivership Estate. The order instructs me to file a fee application "[w]ithin 30 days after the end of each full month while the Receivership is in effect."[1]

This is my first fee application, for the time period beginning June 22, 2018 and ending July 31, 2018. It contains the following parts:

|  | page |
|---|---|
| Receivership fee applications, generally | 3 |
| Pre-established billing parameters | 4 |
| Receivership Estate's fees and expenses | 5 |
| Conclusion | 7 |
| Receiver's declaration | 8 |

The Securities and Exchange Commission has reviewed and approved this fee application.

---

[1] Doc. 33 at p. 14, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

2

**Receivership fee applications, generally**

A receiver's duties "are unique to the facts and circumstances of each case."[2] It follows that a receiver's fees and expenses vary with the facts and circumstances of each case. The appointing court has broad discretion to determine the reasonableness of a receiver's fees and expenses.[3]

In the course of preparing this fee application, I reviewed fee applications submitted by receivers in other Ponzi scheme cases, including *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 09-cv-0298 (N.D. Tex.) ("*Stanford*"); *U.S. Commodity Futures Trading Commission v. Trevor Cook, et al.*, No. 09-cv-3332 (D. Minn.) ("*Cook/Kiley*"); and *Securities and Exchange Commission v. John Scott Clark et al.*, No. 1:11-cv-46 (D. Utah) ("*Clark*").

For context, the *Stanford* receiver's first fee application, filed in 2009, asked for a total of $8,448,673 in fees for 55 days of work—not counting non-legal consulting fees.[4] That fee application was granted with a 20% holdback. Of course, at $7.2 billion, the *Stanford* Ponzi scheme was considerably bigger than the Ponzi scheme in this case.

The *Cook/Kiley* Ponzi scheme, at $190 million, is closer in size. The *Cook/Kiley* receiver's first and second fee applications, both filed in 2009, together asked for $262,989 in fees for 38 days of work—also not counting non-legal consulting fees.[5] Those fee applications were paid in full.

---

[2] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).

[3] "It is well settled that such allowances are largely within the discretion of the district court …." *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939). *See also Stuart v. Boulware*, 133 U.S. 78, 82 (1890):

> Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court; and, in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment. The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management. Like all questions of costs in courts of equity, allowances of this kind are largely discretionary ….

[4] Doc. 384, Securities and Exchange Commission v. Stanford International Bank, Ltd., et al., No. 09-cv-0298 (N.D. Tex.).

[5] Docs. 116 and 147, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

The *Clark* Ponzi scheme, at $47 million, was considerably smaller than the Ponzi scheme in this case. The *Clark* receiver's first fee application, filed in 2011, asked for a total of $361,365 in fees for 98 days of work.[6] That fee application was paid in full.

The fee applications I reviewed vary in format but include the same basic content: a summary of work to-date, a statement of hours expended by professionals, a calculation of professional fees based on applicable hourly rates, a statement of expenses incurred in the ordinary course of business, and a declaration that all fees and expenses are accurate and reasonable.

Although fee applications are filed in the court's public record, the underlying records of each professional's time typically are not. This is because such records necessarily include confidential information (such as victims' names) and information subject to attorney-client or other privileges. To publish such information in the court's public record also would risk disclosing the receiver's legal strategies to defendants. For these reasons, a receiver typically provides underlying records of each professional's time only to the court.

**Pre-established billing parameters**

The Court's order of appointment provides that I shall bill at $275 an hour, and that my counsel shall bill at rates not to exceed $275 an hour, with the exception of Brent Barriere, who shall bill at $325 an hour.[7]

The Court's order of appointment authorizes me to incur expenses and make payments as in the ordinary course of business of the Receivership Estate[8] and, separately, to employ persons to assist me in carrying out my duties as Receiver.[9]

Any compensation or reimbursement "will be interim and will be subject to cost-benefit and final reviews at the close of the receivership."[10]  Any fee application may, in the Court's discretion, be subject to a holdback in the amount of 25%.[11]

---

[6] Doc. 67, Securities and Exchange Commission v. John Scott Clark et al., No. 1:11-cv-46 (D. Utah).

[7] Doc. 33 at p. 4, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[8] Doc. 33 at p. 7-8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[9] Doc. 33 at p. 8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

4

**Receivership Estate's fees and expenses**

*Fees*

The Receivership Estate's fees for the 40-day time period beginning June 22, 2018 and ending July 31, 2018 total $70,359.00, including Receiver's fees and Receiver's counsel's fees as follows:

|  | Rate | Hours | Total |
|---|---|---|---|
| **Receiver's fees** | | | |
| Alysson Mills | $275 | 140.10 | $38,527.50 |
| **Receiver's counsel's fees** | | | |
| Fishman Haygood, LLP | *$325 | 53.30 | $17,322.50 |
| *Brent Barriere* et al.* | $275 | 48.60 | $13,271.50 |
| Brown Bass & Jeter, PLLC | $275 | 4.5 | $1,237.50 |
| *Lilli Bass et al.* | | | |
| | | | $70,359.00 |

These fees are for work described in my first Receiver's Report, filed on August 23, 2018.[12] To summarize, since my appointment on June 22, 2018, my colleagues and I have: filed notices of receivership in federal courts in every state; regularly conferred with federal and state authorities, including the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, the Securities and Exchange Commission, and the Mississippi Secretary of State's Office; inspected Madison Timber Properties' office; issued notices to "recruiters," to Adams's family, and to the University of Mississippi; reviewed or requested records from nine different banks; obtained the records of Adams's and Madison Timber Properties' accountant; reviewed or requested records from Adams's and Madison Timber Properties' law firms; reviewed or requested records from affiliated investment advisors and trust companies; reviewed or requested records from LLCs of which Adams was a member; opened a bank account at Hancock Bank and transferred amounts in Adams's and Madison Timber Properties' accounts there; created a

---

[10] Doc. 33 at p. 14, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[11] Doc. 33 at p. 14-15, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[12] Doc. 36, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

5

website for investors; mailed letters to all possible investors in Madison Timber Properties known to me as of July 23, 2018; received information from more than 115 confirmed investors in Madison Timber Properties, via phone, letter, email, and in-person meetings; interviewed persons with first-hand knowledge of matters bearing on the Receivership Estate, including Adams; researched legal claims against third parties. Time records for this work for the time period beginning June 22, 2018 and ending July 31, 2018 shall be separately provided to the Court for *in camera* review.

My colleagues and I are sensitive to the Receivership Estate's limited resources and we hope our fees reflect that. We have not charged for a lot of the preliminary work we did to bring ourselves up-to-speed on the case. We have not charged for travel. Our agreed-upon rates generally are lower than market rates.

*Expenses*

The Receivership Estate's expenses for the 40-day time period beginning June 22, 2018 and ending July 31, 2018 are as follows:

| | |
|---|---:|
| Copier charges | $1.80 |
| Computer research | $86.46 |
| Express mail services | $4,740.86 |
| Court filing fees | $5,034.00 |
| Long distance calls | $155.68 |
| Postage | $307.08 |
| Printer charges | $228.30 |
| | $10,554.18 |

These expenses include primarily court filing fees and Federal Express services. Immediately upon my appointment, I filed notices of receivership in every federal district court in the United States to ensure my complete jurisdiction and control of any real or personal property owned by Adams or Madison Timber Properties in the United States.[13] The filing of

---

[13] 28 U.S.C. § 754.

such notices is standard practice of any receiver.[14] The filing fees for the notices resulted in a total cost of $5,034.00. Because statutory law requires that such notices be filed within ten days,[15] my office sent the notices via Federal Express, to track and ensure their delivery. The notices thus make up the bulk of the $4,740.86 line item for express mail services.

**Conclusion**

Currently the Receivership Estate has only $2,156,639.83 in the bank—a healthy sum at this point but still far from enough to make a meaningful distribution.

I anticipate that the next few months will require substantial work by counsel, particularly as we prepare for third-party litigation. In addition, I anticipate that I will need the assistance of a forensic accounting firm to meaningfully analyze financial records. I have preliminarily retained one but want to be in a better position to oversee its work before I request it. Such expenses are unavoidable in a case such as this, but I will monitor all work for inefficiencies and unnecessary expense.

In the interest of preserving the Receivership Estate's limited resources, my primary counsel, Brent Barriere, agrees to represent the Receivership Estate in third-party litigation on a contingency fee, or success-based, arrangement. At the appropriate time, I will provide terms of such an arrangement for the Court's review.

In the meantime, I believe our team is providing very good value for cost—particularly when viewed in the context of other receiverships, which at this point cost many multiples more per day.

---

[14] See, e.g., Doc. 116 at p. 10, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

[15] 28 U.S.C. § 754.

**Receiver's declaration**

In support of the foregoing fee application for the time period beginning June 22, 2018 and ending July 31, 2018, under penalty of perjury I declare:

1. This application and all fees and expenses described in it are true and accurate.
2. The fees and expenses were incurred in the best interests of the Receivership Estate.
3. The fees are based on the rates agreed-upon in advance, which rates are reasonable, necessary, and commensurate with the skill and experience required for the work performed.
4. The fees are supported by records for time spent on services rendered, which I have separately provided to the Court for *in camera* review. The records set forth in reasonable detail an appropriate narrative description of the services rendered. The description includes indications of the participants in, as well as the scope, identification, and purpose of the activity that is reasonable under the circumstances.
5. The fees do not include time spent on the preparation of this application or its supporting documentation.
6. The expenses are supported by receipts or equivalent documents, which I have separately provided to the Court for *in camera* review.
7. With the exception of professionals I retained with the Court's prior approval, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate or any sharing thereof.

DATED: 8/30/18

Alysson Mills
Receiver