Case 3:18-cv-00252-CWR-FKB   Document 50   Filed 10/26/18   Page 1 of 10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | No: 3:18-cv-252 |
| Plaintiffs, | **Carlton W. Reeves, District Judge** |
| v. | |
| **ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,** | |
| Defendants. | |

## RECEIVER'S SECOND FEE APPLICATION

*for the time period beginning August 1, 2018 and ending September 30, 2018*

**October 26, 2018**

     */s/ Alysson Mills*

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his company Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, he pleaded guilty to the federal crime of wire fraud. On June 22, 2018, this Court appointed me Receiver of the estates of Adams and Madison Timber Properties ("Receivership Estate").

The order of appointment sets forth my responsibilities and duties and provides that I shall receive reasonable compensation and reimbursement from the Receivership Estate.[1] The Court has instructed me to file a fee application "[w]ithin 30 days after the end of every 60-day period while the Receivership is in effect."[2]

This is my second fee application, for the 60-day time period beginning August 1, 2018 and ending September 30, 2018. It contains the following parts:

|  | page |
|---|---|
| Receivership fee applications, generally | 3 |
| Pre-established billing parameters | 4 |
| Receivership Estate's fees and expenses | 5 |
| Conclusion | 7 |
| Receiver's declaration | 9 |

The Securities and Exchange Commission has reviewed and approved this fee application.

---

[1] Doc. 33, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).
[2] Doc. 43 at p. 2, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

2

**Receivership fee applications, generally**

A receiver's duties "are unique to the facts and circumstances of each case."[3] It follows that a receiver's fees and expenses vary with the facts and circumstances of each case. The appointing court has broad discretion to determine the reasonableness of a receiver's fees and expenses.[4]

In the course of preparing my first fee application, I reviewed fee applications submitted by receivers in other Ponzi scheme cases, including *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 09-cv-0298 (N.D. Tex.) ("*Stanford*"); *U.S. Commodity Futures Trading Commission v. Trevor Cook, et al.*, No. 09-cv-3332 (D. Minn.) ("*Cook/Kiley*"); and *Securities and Exchange Commission v. John Scott Clark et al.*, No. 1:11-cv-46 (D. Utah) ("*Clark*").

The fee applications I reviewed varied in format but provided the same basic content: a summary of work to-date, a statement of hours expended by professionals, a calculation of professional fees based on applicable hourly rates, a statement of expenses incurred in the ordinary course of business, and a declaration that all fees and expenses are accurate and reasonable. I provide the same basic content here.

Although fee applications are filed in the court's public record, the underlying records of each professional's time typically are not. This is because such records necessarily include confidential information (such as victims' names) and information subject to attorney-client or other privileges. To publish such information in the court's public record also would risk disclosing the receiver's legal strategies to defendants. For these reasons, I provide underlying records of each professional's time only to the Court.

This, my second fee application, is for the 60-day time period beginning August 1, 2018 and ending September 30, 2018. As before, I offer the following context:

---

[3] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).

[4] "It is well settled that such allowances are largely within the discretion of the district court …." *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939).

3

The *Stanford* receiver's second fee application, filed in 2009, asked for a total of $3,516,121 in fees for 49 days of work—not counting non-legal consulting fees.[5] That fee application was granted with a 20% holdback. Of course, at $7.2 billion, the *Stanford* Ponzi scheme was considerably bigger than the Ponzi scheme in this case.

The *Cook/Kiley* Ponzi scheme, at $190 million, is closer in size. The *Cook/Kiley* receiver's third and fourth fee applications, for December 2009 and January 2010, together asked for $490,299 in fees for 62 days of work—also not counting non-legal consulting fees.[6] Those fee applications were paid in full.

The *Clark* Ponzi scheme, at $47 million, was considerably smaller than the Ponzi scheme in this case. The *Clark* receiver's second fee application, filed in 2011, asked for a total of $256,665.50 in fees for 92 days of work.[7] That fee application was paid in full.

**Pre-established billing parameters**

The Court's order of appointment provides that I shall bill at $275 an hour, and that my counsel shall bill at rates not to exceed $275 an hour, with the exception of Brent Barriere, who shall bill at $325 an hour.[8]

The Court's order of appointment authorizes me to incur expenses and make payments as in the ordinary course of business of the Receivership Estate[9] and, separately, to employ persons to assist me in carrying out my duties as Receiver.[10]

Any compensation or reimbursement "will be interim and will be subject to cost-benefit and final reviews at the close of the receivership."[11] Any fee application may, in the Court's discretion, be subject to a holdback in the amount of 25%.[12]

---

[5] Doc. 669, Securities and Exchange Commission v. Stanford International Bank, Ltd., et al., No. 09-cv-0298 (N.D. Tex.).

[6] Docs. 166 and 207, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

[7] Doc. 75, Securities and Exchange Commission v. John Scott Clark et al., No. 1:11-cv-46 (D. Utah).

[8] Doc. 33 at p. 4, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[9] Doc. 33 at p. 7-8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[10] Doc. 33 at p. 8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

4

**Receivership Estate's fees and expenses**

*Fees*

The Receivership Estate's fees for the 60-day time period beginning August 1, 2018 and ending September 30, 2018, including Receiver's fees and Receiver's counsel's fees are:

|  | Rate | Hours | Total |
|---|---|---|---|
| **Receiver's fees** | | | |
| Alysson Mills | $275 | 183.50 | $50,462.50 |
| | | | |
| **Receiver's counsel's fees** | | | |
| Fishman Haygood, LLP | *$325 | 110.30 | $35,847.50 |
| *Brent Barriere* et al. | $275 | 104.60 | $28,765.00 |
| | $220 | 129.80 | $28,556.00 |
| | | | |
| Brown Bass & Jeter, PLLC | $275 | 37.30 | $10,257.50 |
| *Lilli Bass et al.* | $135 | 56.50 | $7.627.50 |
| | | | $161,516.00 |

These fees are for work described in my second Receiver's Report, filed on October 19, 2018.[13] To summarize, since August 1, 2018, my colleagues and I have: filed *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679; accounted for "commissions" for a total of 10 recruiters or sub-recruiters; accounted for gifts to Adams's family; accounted for gifts to the University of Mississippi; accounted for gifts to other institutions; reviewed records of approximately 20 bank accounts from eight banks; reviewed accounting records, including bookkeeping and tax filings, of Madison Timber, Kelly Management, LLC, and First South Investments, LLC; worked with LLCs of which Adams was a member, including 707, LLC and Delta Farm Land Investments, LLC, to sell those LLCs' principal assets; continued to confer with the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, the Securities and Exchange Commission, and the Mississippi Secretary of State's Office; continued to communicate with investors in Madison Timber via phone, letter, email, and in-person meetings;

---

[11] Doc. 33 at p. 14, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[12] Doc. 33 at p. 14-15, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[13] Doc. 47, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

continued to interview individuals with first-hand knowledge of matters bearing on the Receivership Estate, including Adams; and continued to research legal claims against third parties as new facts are discovered. Time records for this work for the time period beginning August 1, 2018 and ending September 30, 2018 shall be separately provided to the Court for *in camera* review.

Of the hours recorded, 148.20 hours are for work leading up to the filing of the complaint in *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679, on October 1, 2018. The complaint alleges Michael D. Billings and MDB Group, LLC; Terry Wayne Kelly, Jr. and Kelly Management, LLC; and William B. McHenry, Jr. and First South Investments, LLC received "commissions" worth more than $16 million from Arthur Lamar Adams and Madison Timber Properties, LLC.

My colleagues and I have undertaken that project on an hourly basis because we hope the lawsuit can be either settled or tried quickly. As I have reported, my negotiations with Kelly have been productive and it is likely that the Receivership Estate and Kelly soon will agree to a proposed settlement that I can recommend to the Court. For any party with whom I do not settle, I have asked to try my claims via a summary proceeding, which is a faster, more efficient proceeding. McHenry has consented to a summary proceeding, but Billings has not.

My colleagues and I are sensitive to the Receivership Estate's limited resources and we hope our fees reflect that. We have not charged for work that we believe was duplicative; our time records show hours worked for which we have charged no fee. We have not charged for travel. Our agreed-upon rates generally are lower than market rates.

*Expenses*

The Receivership Estate's expenses for the 60-day time period beginning August 1, 2018 and ending September 30, 2018 are:

| | |
|---|---|
| Copier charges | $21.80 |
| Printer charges | $807.30 |
| Express mail services | $491.69 |
| ~~Long distance calls~~ | ~~$1,323.28~~ |

6

| | |
|---|---:|
| Court filing fees | $94.00 |
| MEC/PACER search fees | $89.30 |
| Westlaw research | $2,018.67 |
| Website set-up fee | $499.00 |
| Appraisal fee | $1,200.00 |
| | $5,221.76 |

Most of these expenses are self-explanatory and are the kinds of expenses typically incurred in any legal matter. I have not charged for long distance calls. The website set-up fee is for the website www.madisontimberreceiver.com that went live in late July; because we maintain the website ourselves, we do not anticipate future fees associated with the website's maintenance. The appraisal fee is for an appraisal I requested of Delta Farm Land Investments, LLC's principal asset, 1170+ acres of farmland in Oktibbeha County, Mississippi.

Note that the above costs do not include costs for a forensic accounting. A receiver would typically undertake a forensic accounting—at considerable but usually necessary expense—before filing a lawsuit. But the nature of the Madison Timber Ponzi scheme has made it a relatively straightforward task to confirm "commissions," for instance, using Quickbooks and bank statements. We have done this preliminary forensic accounting ourselves, to save money. But we did retain a forensic accounting firm, AEA Group, to assist with our analysis, and its principal, Les Alexander, provided an affidavit in support of the motion for preliminary injunction we filed in *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679. Those costs were not incurred until October and so will appear in a future fee application.

**Conclusion**

Currently the Receivership Estate has only $2,124,386.32 in the bank—a healthy sum at this point but still far from enough to make a meaningful distribution.

My most recent report advised that the Receivership Estate's most valuable assets may be the lawsuits it intends to file. I anticipate that the next few months will continue to require substantial work by counsel as we continue to prepare those lawsuits. In addition, I might also need the assistance of consultants or experts, depending on the nature of the claims and defenses.

7

Those costs might be unavoidable, but as always I will monitor all work for inefficiencies and unnecessary expense.

As I have previously advised, in the interest of preserving the Receivership Estate's limited resources, my primary counsel, Brent Barriere and Fishman Haygood, LLP, agrees to represent the Receivership Estate in third-party litigation on a contingency fee, or success-based, arrangement. At the appropriate time, I will provide terms of such an arrangement for the Court's review.

In the meantime, I continue to believe our team is providing very good value for cost—particularly when viewed in the context of other receiverships, which at this point cost many multiples more per day.

We anticipate that we will announce new recoveries soon, and that those recoveries will meaningfully add to the amount currently in the Receivership Estate's bank account. I have conferred with each member of our team and everyone voluntarily agrees to a 10% holdback of any fees awarded for this fee application, pending the Receivership Estate's receipt of new funds.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiffs,

v.

ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,

    Defendants.

No: 3:18-cv-252

Carlton W. Reeves, District Judge

## DECLARATION OF ALYSSON MILLS

In support of the foregoing fee application for the time period beginning August 1, 2018 and ending September 30, 2018, I declare:

1. This application and all fees and expenses described in it are true and accurate.
2. The fees and expenses were incurred in the best interests of the Receivership Estate.
3. The fees are based on the rates agreed-upon in advance, which rates are reasonable, necessary, and commensurate with the skill and experience required for the work performed.
4. The fees are supported by records for time spent on services rendered, which I have separately provided to the Court for *in camera* review. The records set forth in reasonable detail an appropriate narrative description of the services rendered. The description includes indications of the participants in, as well as the scope, identification, and purpose of the activity that is reasonable under the circumstances.
5. The fees do not include time spent on the preparation of this application or its supporting documentation.
6. The expenses are supported by receipts or equivalent documents, which I have separately provided to the Court for *in camera* review.

7. With the exception of professionals I retained with the Court's prior approval, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate or any sharing thereof.

DATED: 10/26/18

Alysson Mills
Receiver