UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, <br><br> Defendants. | No: 3:18-cv-252 <br><br> Carlton W. Reeves, District Judge |

### RECEIVER'S RESPONSE TO MCHENRY'S
### MOTION TO DIRECT RECEIVER TO RETURN DEPOSIT

Alysson Mills, in her capacity as the court-appointed receiver (the "Receiver") for Arthur Lamar Adams and Madison Timber Properties, LLC, through undersigned counsel, respectfully responds[1] to the "Motion to Direct Receiver Alysson Mills to Return to Mr. John Endris a $100,000 Deposit Made on April 20, 2018 into Madison Timber Properties Bank Account at Southern Bancorp Bank" filed by William B. McHenry, Jr. as follows:

### INTRODUCTION

McHenry's motion asks the Court to instruct the Receiver to return to John Endris the $100,000 that Mr. Endris invested in Madison Timber in April 2018. McHenry represents that the $100,000 was deposited into Madison Timber's Southern Bancorp bank account on April 20,

---

[1] The S.E.C. advises that it intends to file its own response. The Mississippi Secretary of State's Office wishes the Receiver to advise the Court that it endorses the Receiver's response.

2018, the same day the Court, on the S.E.C.'s motion, froze Madison Timber's bank accounts. McHenry argues "the Government" "should have" but "fail[ed]" to prevent the deposit.[2]

The pertinent facts are as follows:

1. The check in question was signed by Mr. Endris on April 19, 2018. **[Exhibit A]**

2. On information and belief, Mr. Endris gave the check to McHenry on April 19, 2018, and McHenry immediately deposited the check on the same day. McHenry's motion omits that it was *McHenry himself* who deposited the check into Madison Timber's Southern Bancorp bank account.

3. The deposit slip for the check evidences that the check was deposited on April 19, 2018. **[Exhibit B]** The deposit shows up on the account's bank statement the following day.

4. On the evening of April 19, 2018, Adams turned himself in to the F.B.I. and the U.S. Attorney's Office for the Southern District of Mississippi. The transcript of the resulting interview of Adams, previously admitted at Adams's sentencing, evidences that the time was 6:24 p.m.—after close of business.

5. McHenry's motion represents that "at least by April 19, 2018, Adams would have been subject to the FBI and U.S. Attorney's direction to discontinue and terminate his illegal, fraudulent scheme …." But Adams turned himself in after the close of business—and after McHenry deposited the check into Madison Timber's Southern Bancorp bank account.

6. The next day the S.E.C. filed a complaint against Adams and Madison Timber and, on its motion, the Court entered a Consent Order freezing Madison Timber's bank accounts. The S.E.C. acted swiftly—but not before McHenry deposited the check in question, because at that point Adams had not yet turned himself in.

---

[2] McHenry writes: "When Adams agreed to the Consent Order, the SEC should have instructed Adams to cease and terminate all activity related the sale of the fraudulent promissory notes … This inaction by the Government and Adams in failing to halt the sale and the failure of the Bank to either reject or reverse the deposit unfairly increased the financial hardship to Mr. John Endris. Th[is] unfair injury is a clear violation of the Consent Order prohibiting such a deposit." Doc. 53 at 4.

2

8. McHenry contends that "[i]n spite of [Adams's] confession and full cooperation, however, neither Adams nor the Government took any step to stop this sale from proceeding to consummation by the deposit of Mr. Endris' $100,000 into Madison Timber Properties bank account on April 20, 2018." But as shown, McHenry deposited the check on April 19, 2018 [**Exhibits A and B**] before "[Adams's] confession and full cooperation" and before the Consent Order freezing Madison Timber's bank accounts was entered.

9. On June 22, 2018, this Court appointed Alysson Mills receiver for Adams and Madison Timber and instructed her to take possession of Adams's and Madison Timber's then-frozen bank accounts.[3] Like all of Madison Timber's bank accounts, the Southern Bancorp bank account held investor money, including the $100,000 in question. Any money in any of Adams's or Madison Timber's bank accounts now belongs to the Receivership Estate.

## RECEIVER'S POSITION

The Receiver's job is to preserve Adams's and Madison Timber's assets and recover money for the benefit of all defrauded investors, including Mr. Endris. Because the Receiver's duty is to all, she cannot take any action that might prefer one investor over another. She cannot return or otherwise distribute money to any investor without the Court's express approval.

The Receiver knows Mr. Endris and his family and understands the pain and hardship that they have suffered as a result of the Madison Timber Ponzi scheme, in which McHenry induced them to invest. It is suspicious that McHenry has filed a motion that seeks relief on Mr. Endris's behalf: McHenry does not have legal standing to petition the Court on Mr. Endris's behalf; McHenry does not represent Mr. Endris and McHenry's lawyer surely has a conflict of interest that prevents him from representing Mr. Endris, because Mr. Endris is adverse to his client. McHenry's motion appears to have less to do with Mr. Endris's best interests than with

---
[3] Doc. 33.

McHenry's desire to shift blame for the deposit in question to "the Government" and deflect attention from himself.

In any event, McHenry's motion is premised on its representation that the deposit was made on April 20, 2018 after the freeze went into effect. As shown, the deposit was made (on information and belief, by McHenry himself) on April 19, 2018 before Adams confessed and before the Court froze Madison Timber's bank accounts.

Mr. Endris and his family, and so many other investors, have been devastated by the Madison Timber Ponzi scheme and it is the Receiver's duty and desire to return to them the money they lost through equitable distributions of the Receivership Estate's funds. Many investors (notably, not Mr. Endris) have made special requests of the Receiver to return money that they believe ought to be returned to them given the special circumstances of their investments. The Receiver has had to advise these investors that she cannot take any action that might prefer one investor over another and that she cannot return any money to them without the Court's express approval. While these investors may have been disappointed, they understood, and maybe even appreciated, that all investors shall be on equal footing and that the Receivership Estate's funds, when they are distributed to investors, will be distributed equitably.

November 28, 2018

Respectfully submitted,

| | |
|---|---|
| */s/ Lilli Evans Bass* | */s/ Brent B. Barriere* |
| BROWN BASS & JETER, PLLC | FISHMAN HAYGOOD, LLP |
| Lilli Evans Bass, Miss. Bar No. 102896 | Brent B. Barriere, *Primary Counsel* |
| 1755 Lelia Drive, Suite 400 | 201 St. Charles Avenue, Suite 4600 |
| Jackson, Mississippi 39216 | New Orleans, Louisiana 70170 |
| Tel: 601-487-8448 | Tel: 504-586-5253 |
| Fax: 601-510-9934 | Fax: 504-586-5250 |
| bass@bbjlawyers.com | bbarriere@fishmanhaygood.com |
| *Receiver's counsel* | *Receiver's counsel* |

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of filing to all counsel of record.

Date:   November 28, 2018              */s/ Lilli Evans Bass*