UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SECURITIES AND EXCHANGE**
**COMMISSION**

       Plaintiffs                            NO. 3:18-cv-252

v.                                         Carlton Reeves, District Judge

**ARTHUR LAMAR ADAMS AND**
**MADISON TIMBER PROPERTIES, LLC**

     **Defendants**

## MEMORANDUM IN SUPPORT OF
## OPPOSITION TO RECEIVER'S MOTION FOR CONTEMPT

NOW COME Alexander Seawright Timber Fund I, LLC ("ASTFI"); Jon Seawright and Brent Alexander ("Respondents"), through counsel, and file this Memorandum in Support of their Opposition to Receiver's Motion for Contempt.

### BACKGROUND

Respondent ASTFI was an investor in the Ponzi scheme perpetrated by Lamar Adams and Madison Timber Properties, LLC ("Defendants"). Respondent Seawright and Respondent Alexander are officers of ASTFI. ASTFI's investments consisted of loans made to Madison Timber Properties in exchange for promissory notes from Defendants to be repaid with interest over a twelve-month period. Respondent ASTFI funded the loans to Madison Timber Properties with investments made by its members. When ASTFI received payments from Defendants, it distributed investment returns to its members.

As security for the notes issued by Madison Timber Properties, Defendants assigned to Respondent ASTFI contracts between Defendants and purported landowners ("timber deeds").

These contracts were purported to be deeds to standing timber and for cutting rights for that timber. The timber deeds were signed by Defendants and the purported landowners, and their signatures were notarized. By assigning these notarized timber deeds to ASTFI, Defendants purported to transfer their rights to the timber and the cutting rights to provide security should Defendants default on the notes. Some of the timber deeds were notarized by employees of the UPS Store in Madison, MS. If ASTFI had not obtained this "security," it would not have made the loans to the Defendants. ASTFI relied upon the notarizations as verification that the contracts were valid.

When it became clear the timber deeds were fakes, Respondents asserted claims against the UPS Store and three of its employees (who notarized the contracts), the store's owner and the store's franchisor (collectively the "UPS Store"). Respondents' intent was to recover proceeds for the UPS Store's negligent acts against ASTFI, with the proceeds to be used to partially repay ASTFI investors whose interests in ASTFI were rendered worthless when the Ponzi scheme collapsed. The Receiver, in her Motion for Contempt, states that "It is bold of Jon Seawright and Brent Alexander, themselves facing potential liability for their roles in the Madison Timber Ponzi scheme, to purport to release for the sum of $100,000 valuable claims against a UPS store whose employees notarized the fake deeds and promissory notes that Jon Seawright and Brent Alexander turned around and gave to their own investors." Motion para. 7. Despite the implication by the Receiver that Seawright and Alexander would benefit financially from the settlement with the UPS Store by "boldly" asserting claims against the UPS Store, the proceeds from the settlement are to be distributed to the investors of ASTFI. Neither Seawright nor Alexander will receive any portion of the proceeds.

The UPS Store agreed to settle the claims for $100,000, which was funded by its insurance policy.  In exchange for the $100,000, ASTFI provided the UPS Store with a full release of all claims ASTFI might have against them, a copy of which is attached as Exhibit A (the "Release"). The Release related solely to the claims of ASTFI and did not involve any claims of the Receivership Estate, or any other party.

The Receiver now wants the Court to hold Respondents in contempt for allegedly violating the Order Appointing Receiver issued by the Court on June 22, 2018.  The Receiver asserts in her Motion for Contempt that Respondents "violated the Court's order by purporting to release claims that unquestionably 'involve' Receivership Property and the Receivership Estate." Motion for Contempt, para. 8.   Receiver asserts Respondents violated the Court's Order restraining and enjoining them "from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver" which would "dissipate or otherwise diminish the value of any Receivership Property."  Doc. 33 at p. 11. Receiver also asserts Respondents violated the Court's Order that stays "all civil legal proceedings of any nature ... or other actions involving ... any Receivership Property."   Doc. 33 at 13.  However, the claims pursued by ASTFI, and ultimately released in settlement by ASTFI, were only its claims and were not Receivership Property.  Any claims the Receiver has against the notaries are unaffected by ASTFI's actions.

Respondents deny they in any way violated the Court's Order in that ASTFI's claims against and settlement with the UPS Store did not involve "Receivership Property."

3

## ARGUMENT

*Respondents' claims against the UPS Store were not Receivership Property.*

The Court, in its Order, clearly defines "Receivership Property" as "property interests of the Receivership Defendants ... which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly." It then sets out examples of Receivership Property as bank accounts and Adams's residence. The Receivership Defendants do not "own, possess, have a beneficial interest in, or control directly or indirectly" the damage claims of ASTFI against the UPS Store. Those claims belong to ASTFI only and, pursuant to the authorities described below, the Receiver lacks standing to assert those claims on behalf of ASTFI. Further, the release delivered by ASTFI released only its claims and cannot in any way be construed to be a release of any Receivership claims. The claim asserted against the UPS Store involved a claim that was ASTFI's and only ASTFI's. The release provided to the UPS Store was a release by ASTFI and only ASTFI. And the settlement proceeds were the property of the UPS Store and only the UPS Store. None of those involve or relate to "Receivership Property." There was no claim that could be asserted by Defendants (or the Receiver in their stead) that was in any way dissipated or otherwise diminished by the actions of Respondents.

*ASTFI's claims against the UPS Store were its alone.*

ASTFI asserted claims against the UPS Store, a third party, for damages it incurred by relying on the notarizations of the UPS Store. These were ASTFI's claims for its damages as a result of the UPS Store's negligent acts. When it settled those claims, the settlement agreement and release released only claims asserted by ASTFI. Any claims Defendants may have still exist and the Receiver is free to pursue those claims. Respondents have done nothing to "dissipate" or "diminish" any such claims.

*As a matter of law, the claims of Respondent ASTFI against the UPS Store could not be asserted by the Receiver and therefore those claims cannot be Receivership Property.*

A receiver, like a trustee in bankruptcy, stands in the place of the entities for which she has been appointed receiver and is only permitted to bring any claim in their place. *Scholes v. Lehmann*, 56 F.3d 750, 753-754 (7th Cir. 1995). *See also S.E.C. v. Holt*, CV03-1825-PHX-PGR, 2007 WL 2332584, at *2-3 (D. Ariz. Aug. 13, 2007); *Stenger v. World Harvest Church, Inc.*, 2006 WL 870310, at *5-6 (N.D. Ga. Mar. 31, 2006). *Cf. Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008). The Fifth Circuit has stated the principle that a receiver stands in the shoes of the individuals and entities over whose property he has been appointed receiver. *Hymel v. FDIC,* 925 F.2d 881, 883 (5th Cir. 1991), citing *Morrison-Knudsen Co. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1222 (9th Cir. 1987). Further, in *Janvey v. Democratic Senatorial Campaign Commission*, a case involving a receiver appointed as a result of the failed Stanford Financial Ponzi scheme, the Fifth Circuit held that "a federal equity receiver has standing to assert only the claims of the entities in receivership, <u>and not the claims of the entities' investor-creditors</u>." 712 F.3d 185, 190 (5th Cir. 2013) (emphasis added). A receiver, therefore, cannot bring an action against a defendant by simply alleging damages to the investors. Because the Receiver lacks standing to assert a claim against the UPS Store on behalf of ASTFI, then, as a matter of law, ASTFI's claim for negligence cannot constitute Receivership Property.

Because the claims of ASTFI do not fall within the definition of Receivership Property, as defined in the Court's Order, then Respondents cannot be in contempt of the Court's Order.

## CONCLUSION

It is clear the assertions of the Receiver are in error in that the claims of Respondent ASTFI, as a matter of law, cannot be asserted by the Receiver; and, therefore, the actions of Respondents do not involve Receivership Property and are not violations of the Court's Order. Respondents ASTFI, Jon Seawright and Brent Alexander therefore request the Court to dismiss the Receiver's Motion for Contempt.

Respectfully submitted this 3rd day of December, 2018.

               s/Frank "Kim" Breese, III
               Frank "Kim" Breese, III  (Miss Bar # 101416)
               *Attorney for Alexander Seawright Timber Fund I,*
               *LLC; Jon Seawright and Brent Alexander*

BREESE LAW OFFICE, PLLC
800 Woodlands Pkwy., Suite 103
Ridgeland, MS 39157
601-351-3339
Fax 601-487-6942
kim@breeselaw.com

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on all counsel of record by filing through the Court's ECF system and by email to:

    Lilli Evans Bass
    BROWN BASS & JETER, PLLC
    bass@bbjlawyers.com

    Brent B. Barriere
    FISHMAN HAYGOOD, LLP
    bbarriere@fishmanhaygood.com

This the 3rd day of December, 2018.

               s/Frank "Kim" Breese, III
               Frank "Kim" Breese, III