UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiffs,

v.

ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC,

        Defendants.

No: 3:18-cv-252

Carlton W. Reeves, District Judge

RECEIVER'S REPORT

December 21, 2018

_____ /s/ Alysson Mills _____

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and
Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his companies Madison Timber Company, LLC and Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, Adams pleaded guilty to the federal crime of wire fraud.  On October 30, 2018, he was sentenced to 19.5 years in prison.

On June 22, 2018, the Court appointed me Receiver of the estates of Adams and Madison Timber. The order of appointment sets forth my responsibilities and duties. Among other things, the order instructs me to take any action necessary and appropriate to preserve the assets of Adams and his businesses, to maximize funds available for distributions to victims.  I have undertaken these tasks with substantial assistance from my counsel, including principally Brent Barriere and Lilli Bass.

The Court instructed me to file a report of my progress every 60 days. I filed my last report on October 19, 2018, and this report picks up where that report left off.  It does not repeat the same information, except as necessary for context.  It contains the following parts:

|                                          | page |
|------------------------------------------|------|
| Recent filings or events                 | 3    |
| Receiver's actions in the past 60 days   | 6    |
| Receiver's plan for the next 60 days     | 10   |
| Summary of status of assets              | 12   |

As always, my reports are for the Court's benefit, but I write them for a broader audience, knowing that they may be read by non-lawyers including victims. I remain sensitive to potential ongoing criminal investigations and do not disclose information that might impair their progress.

**Recent filings or events**

*United States v. Adams, No. 3:18-cr-88*

On October 30, 2018, following a two-day hearing, the Court sentenced Adams to 235 months, or 19.5 years, in prison. He is to report to the Bureau of Prisons on January 7, 2019.

Relevant here, the Government's evidence established that of the $164.5 million that Madison Timber received in the last year of its operation, it paid back approximately $79.5 million, leaving an $85 million difference. The outstanding principal and interest owed to investors is necessarily higher.

*Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-252*

On November 19, 2018, I filed a motion for contempt against Alexander Seawright Timber Fund I, LLC, Brent Alexander, and Jon Seawright ("Alexander Seawright") following their pursuit and settlement of claims against UPS arising from UPS employees' notarization of fake timber deeds.

I argued Alexander Seawright's pursuit of the claims violated the Court's stay of litigation. They argued the claims against UPS belong only to them, and their settlement has not negatively affected the Receivership Estate.

The stay is intended to prevent the proverbial "race to the courthouse"—to preserve assets that otherwise could be picked apart and to maximize funds available for equitable distribution to all.  The Receivership Estate may pursue claims against UPS—but the money and insurance coverage available to satisfy the Receivership Estate's claims has been reduced by Alexander Seawright's settlement.

The Court held a hearing on the motion for contempt on December 19, 2018.  The Court took the matter under advisement; as of this filing the Court had not issued a ruling.

The motion for contempt and related filings are available at madisontimberreceiver.com.

3

*Alysson Mills vs. Michael D. Billings, et al., No. 3:18-cv-679*

As I previously reported, on October 17, 2018, I filed an amended complaint against Wayne Kelly, Michael Billings, and Bill McHenry to recover "commissions" they received from Madison Timber. At around the same time, I announced a tentative settlement with Kelly.

I requested that I be permitted to proceed against Billings and McHenry on a summary, or expedited, basis. Following a hearing on November 1, 2018, the Court granted my request. I filed a motion for summary judgment against Billings and McHenry on November 6, 2018.

On November 12, 2018, I submitted to the Court a proposed settlement agreement with Kelly. I asked the Court to set a hearing at which investors would be given the opportunity to comment on the settlement before it is approved. I separately wrote investors to advise them of the settlement and invite their comment on it.

The Court held the requested hearing on the proposed settlement agreement with Kelly on December 19, 2018. Receiving no objections, the settlement agreement was approved. The settlement agreement requires that Kelly transfer the following assets currently in his possession to the Receivership Estate within 20 days of the entry of the order of approval:

- $836,000 in cash currently sitting in bank accounts, subject to a tax escrow;
- $500,000 in proceeds from retirement accounts in Kelly's name;
- all proceeds from the liquidation of life insurance policies in Kelly's name or to which he is entitled to the cash value;
- all proceeds from the liquidation of Kelly's interest in 707, LLC;
- any proceeds Kelly receives for his interest in 315 Iona, LLC; and
- Kelly's interest in KAPA Breeze, LLC.

In addition to transferring the foregoing assets to the Receivership Estate, Kelly must, among other things:

- execute a promissory note in the original principal amount of $400,000 due and payable in two and a half years that may be prepaid in the amount of $100,000 if paid within 365 days, $200,000 if paid in 547 days, or $300,000 if paid in 730 days;

- restate his federal and state income tax returns for the years in question, as permitted by law, and transfer 90% of any refunds received to the Receivership Estate; and

- cooperate with the Receiver's ongoing efforts to recover money for the Receivership Estate.

I believe the settlement represents a value of approximately $2,000,000 to the Receivership Estate, which likely exceeds any amount I would have obtained if I had litigated the Receivership Estate's claims against Kelly to final judgment.

The final settlement agreement and the order of approval are available at madisontimberreceiver.com.

Separately, I have met with Billings and he has made requested financial disclosures. We have had productive settlement negotiations, and I believe settlement with Billings is likely. Litigation against McHenry is ongoing.

*Alysson Mills vs. Butler Snow, et al., No. 3:18-cv-866*

On December 19, 2018, I filed a lawsuit against Butler Snow LLP; Butler Snow Advisory Services, LLC; Matt Thornton; Baker, Donelson, Bearman, Caldwell & Berkowitz, PC; Alexander Seawright, LLC; Brent Alexander; and Jon Seawright—law firms and their agents who lent their influence, their professional expertise, and even their clients to Adams and Madison Timber.

The complaint alleges that Madison Timber had to continuously grow to repay existing and new investors, and that it would not have grown without the defendants' encouragement and assistance. Madison Timber grew from an approximately $10 million-a-year Ponzi scheme in 2011 to an approximately $164 million-a-year Ponzi scheme as of April 19, 2018.

The complaint alleges that because the defendants contributed to the success of the Madison Timber Ponzi scheme, they contributed to the debts of the Receivership Estate, and therefore are liable for them.

Relevant to Butler Snow, the complaint alleges Adams and Madison Timber's relationship with Butler Snow began in 2009 and continued until Adams turned himself in.

5

Butler Snow drafted private placement memoranda for Madison Timber; pitched Madison Timber to potential investors, including its clients; consummated sales of Madison Timber to investors; and received commissions from Adams for its assistance in growing Madison Timber's business. Butler Snow was in an advantageous position to discover Adams's fraud, but it ignored numerous red flags.

Relevant to Baker Donelson, the complaint alleges Adams and Madison Timber's relationship with Baker Donelson began in 2011 when Adams was introduced to Brent Alexander and John Seawright, a lobbyist and lawyer who formed a fund to invest other people's money in Madison Timber. The relationship continued until Adams turned himself in. Over the course of the relationship, Alexander and Seawright pitched Madison Timber to potential investors, including Baker Donelson's clients; consummated sales of Madison Timber to investors; and received commissions from Adams for their assistance in growing Madison Timber's business. Alexander and Seawright relied heavily on their affiliation with Baker Donelson in securing investments, and Baker Donelson lent Alexander and Seawright its resources for that purpose. Baker Donelson, Alexander, and Seawright were in advantageous positions to discover Adams's fraud, but they ignored numerous red flags.

The complaint includes counts for civil conspiracy; aiding and abetting; recklessness, gross negligence, and at a minimum negligence; violations of Mississippi's Fraudulent Transfer Act; violations of Mississippi's Racketeer Influenced and Corrupt Organization Act; joint venture liability; attorney malpractice; and negligent retention and supervision.

The complaint is available at madisontimberreceiver.com.

**Receiver's actions in the past 60 days**

Since I filed my second report on October 19, 2018, I have:

*Filed Alysson Mills vs. Butler Snow, et al., No. 3:18-cv-866*

As summarized above, I filed a lawsuit against Butler Snow LLP; Butler Snow Advisory Services, LLC; Matt Thornton; Baker, Donelson, Bearman, Caldwell & Berkowitz, PC;

Alexander Seawright, LLC; Brent Alexander; and Jon Seawright—law firms and their agents who lent their influence, their professional expertise, and even their clients to Adams. The complaint is available at madisontimberreceiver.com.

> *Continued to litigate Alysson Mills vs. Michael D. Billings, et al., No. 3:18-cv-679*

As summarized above, I negotiated a settlement with Wayne Kelly that I believe to be in the best interests of the Receivership Estate. I advised the Court of the proposed terms and gave investors an opportunity to comment.  On December 19, 2018, the Court approved the settlement, as detailed above. The final settlement agreement and the order of approval are available at madisontimberreceiver.com.

I filed a motion for summary judgment against Mike Billings and Bill McHenry on November 6, 2018.  The motion and related filings are available at madisontimberreceiver.com.

I have met with Billings and he has made requested financial disclosures.  We have had productive settlement negotiations, and I believe settlement with Billings is likely.  Litigation against McHenry is ongoing.

> *Obtained settlements with other parties*

*The University of Mississippi*: The University of Mississippi has agreed to return an additional $310,169 to the Receivership Estate. With the $39,667 it previously returned for unused 2018 football and 2019 baseball tickets, it will have returned $349,836 of the $402,100 that Adams gave to the Ole Miss Athletic Foundation in the past ten years. For the remaining $52,264, Adams received "tangible benefits," including events tickets that he used. A proposed settlement agreement is forthcoming.

*Frank Zito*: On November 20, 2018, I advised the Court that Frank Zito, who received $222,750 in "commissions" from Madison Timber, had agreed to return $200,000 to the Receivership Estate.  The settlement reflects a 10% discount that I believe is fair and reasonable consideration for the avoidance of the time and expense that would have accompanied any litigation against Mr. Zito.  Mr. Zito was also an investor in Madison Timber, and he shall be treated equally as any other investor in any equitable distribution by the Receivership Estate. The

7

Court approved the settlement on December 4, 2018; the final settlement agreement and the order of approval are available at madisontimberreceiver.com. *Special thank you to the Mississippi Secretary of State's Office, which was instrumental in facilitating settlement.*

### *Negotiated with Adams's family*

I previously reported that I had undertaken an accounting of gifts of money to Adams's children using bank statements from Adams's accounts at various banks; that I had determined that in the past five years Adams made cash gifts worth at least $213,000 to his children; and that I had shared my accounting with Adams's children, who expressed their desire to cooperate with my recovery.  Our negotiations thus far have been productive, and I expect we will reach a settlement soon.

I have also had productive negotiations with Adams's wife. Mrs. Adams has interests in certain marital assets of which I have claimed title for the Receivership Estate. These interests must be resolved before I undertake any liquidation. We are working amicably to reach a settlement, and I expect we will reach one soon.

### *Continued to account for "commissions" and gifts*

I previously reported that I had reviewed bank records to identify "commissions" to recruiters and gifts to institutions. My last report identified institutions to whom Adams made gifts of more than $10,000. These accountings are ongoing, and I continue to assess the Receivership Estate's rights against third parties in possession of stolen money.

### *Continued to review records*

I previously reported that I had received and reviewed records from First Bank of Clarksdale, Southern Bancorp, River Hills Bank, Community Bank, Jefferson Bank, Trustmark Bank, Bank Plus, and Southern AgCredit; records from Adams's and Madison Timber's accounting firm; records from Butler Snow, LLP, and Rawlings & MacInnis, P.A.; and records from Madison Trust Company (no relation to Madison Timber).  Since then I have received and reviewed records from Alexander Seawright, LLC and from Pinnacle Trust.  My review of

8

records is ongoing, and I continue to assess the Receivership Estate's rights against third parties that had professional relationships with Adams or Madison Timber.

*Worked with LLCs of which Adams was a member*

I previously reported that Adams was a member of at least six active limited liability companies ("LLCs") that own real estate, and one of those LLCs—707, LLC—had sold its principal asset and dissolved. Since then, of the remaining LLCs, the following LLCs have taken the following action:

*Delta Farm Land Investments, LLC*: The LLC sold its principal asset, 1170+ acres of farmland in Oktibbeha County, Mississippi, on November 13, 2018, for $3,238,000. After paying down the mortgage and paying transaction costs, the LLC received $1,051,203. The LLC dissolved after the sale and tendered to the Receivership Estate the $323,440 representing Adams's interest.

*KAPA Breeze, LLC*: The LLC wants to find a buyer to purchase the interests of Adams and Kelly and thereafter continue to develop the LLC's principal asset, 1.5+/- acres of mixed use land on Highway 30A in Florida. I would like to facilitate such a sale. I have obtained an appraisal of the property and have had preliminary discussions with the LLC's other members regarding possible offers to purchase the Receivership Estate's interests.

*MASH Farms, LLC*: The LLC wants to find a buyer to purchase Adams's interest in a hunting club and recreational property. I am willing to consider such a sale if it represents a fair value for the interests. I have obtained an appraisal of the LLC's property, and I am currently evaluating the Receivership Estate's options.

*Conferred with federal and state authorities*

I have continued to confer with the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, the Securities and Exchange Commission, and the Mississippi Secretary of State's Office regarding their investigations. *As noted above, special thank you to the Mississippi Secretary of State's office for facilitating the settlement with Frank Zito.*

*Communicated with investors in Madison Timber*

I have continued to communicate with investors in Madison Timber via phone, letter, email, and in-person meetings.  I speak to investors almost daily.

*Interviewed persons with knowledge*

I have continued to interview individuals with first-hand knowledge of matters bearing on the Receivership Estate, including Adams.

*Researched legal claims against third parties*

I previously reported that my colleagues and I had researched legal claims against third parties based on facts known to date.  Our investigation and research necessarily continues as new information is received. I do not publish our assessments here because to do so would be to telegraph our legal strategies to future defendants.

**Receiver's plan for the next 60 days**

*Litigate Alysson Mills vs. Butler Snow, et al., No. 3:18-cv-866*

As noted above, I filed a complaint against Butler Snow LLP; Butler Snow Advisory Services, LLC; Matt Thornton; Baker, Donelson, Bearman, Caldwell & Berkowitz, PC; Alexander Seawright, LLC; Brent Alexander; and Jon Seawright on December 19, 2018.  I expect the defendants to file responses in the next 30 to 60 days.

*Continue to litigate Alysson Mills vs. Michael D. Billings, et al., No. 3:18-cv-679*

As noted above, the Court approved the Receivership Estate's settlement with Wayne Kelly.  I expect to receive the proceeds from Kelly in the next 20 days.

I expect to continue to negotiate with Mike Billings.  Bill McHenry's response to my pending motion for summary judgment is due January 22, 2019.

*Continue to negotiate with Adams's family*

As noted above, my negotiations with Adams's children and wife have been productive and amicable, and I expect we will reach a settlement soon. I will submit any proposed settlement to the Court for its approval.

*Monetize Adams's interests in LLCs*

Adams's interests in 707, LLC and Delta Farm Land Investments, LLC have been resolved, as noted above. For the remaining four LLCs, I intend to liquidate the Receivership Estate's interest to maximize value to the Receivership Estate. For those LLCs for which the other members intend to liquidate the LLC's assets and dissolve, I am overseeing these corporate actions to ensure the liquidation is for a fair value. For those LLCs for which the other members intend to continue the LLC's operations, I am considering offers to purchase the Receivership Estate's interest and I will request the Court's approval prior to any sale. Currently:

*KAPA Breeze, LLC*: The LLC wants to find a buyer to purchase the interests of Adams and Kelly and thereafter continue to develop the LLC's principal asset, 1.5+/- acres of mixed use land on Highway 30A in Florida. I would like to facilitate such a sale, so long as the purchase price represents a fair value for those interests. If I receive an offer that I believe is fair, I will recommend it to the Court.

*Mallard Park, LLC*: I have received and reviewed records from the LLC and ordered an appraisal of the LLC's property. I intend to continue to evaluate the Receivership Estate's options.

*Mash Farms, LLC*: The LLC's members have expressed an interest in purchasing Adams's interests. I have obtained an appraisal of the LLC's principal asset, 808+ acres with a hunting camp in Sunflower County, Mississippi. I intend to continue to evaluate the Receivership Estate's options.

*Oxford Springs, LLC*: I continue to have discussions with the LLC's other principal member regarding the LLC's future. I intend to continue to evaluate the Receivership Estate's options.

*Liquidate Adams's remaining assets*

Adams's remaining assets include the house at 134 Saint Andrews Drive, Jackson, Mississippi; the 2015 King Ranch Ford F150 truck; and any other assets in Adams's name, including any outstanding life insurance policies and any interests in any companies. Adams voluntarily surrendered title of the assets to me immediately prior to his sentencing, and the U.S. Attorney's Office agreed to forego forfeiture proceedings to allow me to liquidate the assets myself.

As noted above, Adams's wife has interests in certain of these assets that must be resolved before I undertake any liquidation. We are working amicably to resolve those interests, and I expect they will be resolved soon.

*File additional lawsuits*

I intend to file additional lawsuits to recover commissions, fraudulent transfers, and gifts as necessary to recover money that belongs to the Receivership Estate.

I intend to file additional lawsuits against third parties that contributed to the debts of Madison Timber, and therefore to the debts of the Receivership Estate, so long as new information justifies it.  To protect the Receivership Estate's position, I am not disclosing publicly third-party targets.

*Continue communicating with investors*

I intend to continue communicating with investors, through my website, email, phone, and letters.  Investors provide information that is useful to my investigation and, in turn, I hope that I demystify the receivership process for them.

**Summary of status of assets**

My end goal is to make an equitable distribution to victims with the money I recover. The money I have recovered to date would not go far. As I have advised, it may take a long time and

12

a lot of work to recover enough money to make a meaningful distribution, but I am committed to

pursuing recoveries for the benefit of victims so long as the Court allows.   The Receivership

Estate's most valuable assets may be the lawsuits it has filed or intends to file.

The current status of the Receivership Estate's assets is as follows:

**Receivership Estate's account at Hancock Bank**                               current balance $2,401,236.20

| | |
|---|---|
| Previous balance as of October 19, 2018 | $2,124,386.32 |
| Delta Farm Lands Investments, LLC proceeds | +$323,440.88 |
| Frank Zito settlement—first installment | +$100,000.00 |
| Political contribution refund | +$500.00 |
| C Spire Wireless refund | +$4.63 |
| Interest | +$3,191.35 |
| Bank fees | -$23.00 |
| Receiver/Receiver's counsel's fees/expenses | -$150,063.98 |
| U.S. Treasury** | -$200.00 |

**Alysson Mills vs. Michael D. Billings, et al.**, No. 3:18-cv-679                 *settlement with Kelly approved;*
Lawsuit to recover $16,000,000 in commissions                          *expect to receive in the next 20 days:*

*$836,000.00 cash payment*

*$500,000 retirement account proceeds*

*life insurance proceeds*

*707, LLC proceeds*

*315 Iona, LLC proceeds*

*interest in KAPA Breeze, LLC*

*promissory note in the original principal*
*amount of $400,000*

*settlement with Billings likely*
*litigation against McHenry ongoing*

**Alysson Mills vs. Butler Snow, et al.**, No. 3:18-cv-866
Lawsuit to hold law firms liable for debts of the Receivership Estate

**House at 134 Saint Andrews Drive, Jackson, Mississippi**        *Adams voluntarily surrendered title*
Purchased in 2011 for $364,000                                          *to Receivership Estate;*
Appraised in 2016 for $777,000                                      *now resolving Adams's wife's*
Unencumbered                                                          *interests in property*

**Condo in Calton Hill subdivision in Oxford, Mississippi**          *title is in Adams's wife's name;*
Purchased in 2013 for $135,000                                    *now resolving Receivership Estate's*
Unencumbered                                                          *interests in property*

**2015 King Ranch Ford F150 truck**                               *Adams voluntarily surrendered title*
Estimated $33,000                                                       *to Receivership Estate;*
                                                                      *now preparing for sale*

13

| | |
|---|---|
| ~~Hartford Life and Annuity Insurance Co. life insurance policy~~ | *~~surrendered for $167,206.60~~** |
| ~~Lincoln National Life Insurance Co. life insurance policy~~ | *~~surrendered for $3,678.45~~** |
| Hartford Life and Annuity Insurance Co. life insurance policy | *ending account value $13,484.95* |
| Jewelry | *estimated $40,000;*<br>*now resolving Receivership Estate's*<br>*interests in property* |
| Firearms | *Adams voluntarily surrendered title*<br>*to Receivership Estate;*<br>*now resolving Receivership Estate's*<br>*interests in property* |
| ~~1/3~~ | ~~Delta Farm Land Investments, LLC~~<br>~~1170+ acres farmland in Oktibbeha County~~<br>~~Purchased in 2014 for $2,796,100~~<br>~~Encumbered by Trustmark Bank mortgage~~<br>~~Owe approximately $2,200,000~~ | *~~LLC sold principal asset and dissolved;~~*<br>*~~tendered $323,440.88 representing~~*<br>*~~Adams's interest to the Receivership Estate~~* |
| 1/4 | KAPA Breeze LLC<br>1.5+/- acres mixed use land on Highway 30A in Florida<br>Purchased in 2017 for approximately $1,900,000<br>Encumbered by Jefferson Bank mortgage<br>Owe approximately $1,365,000 | *assessing options* |
| 1/4 | Mallard Park, LLC<br>1,723 acres with hunting lodge in Humphreys County<br>Purchased in 2016 for $2,593,500<br>Encumbered by Southern AgCredit mortgage<br>Owe approximately $2,000,000 | *assessing options* |
| 1/4 | Mash Farms, LLC<br>808+ acres with hunting camp in Sunflower County<br>Purchased in 2014 for $1,600,000<br>Encumbered by Trustmark Bank mortgage<br>Owe approximately $900,000 | *assessing options* |
| 47.5% | Oxford Springs, LLC<br>2,300+/- acres undeveloped land in Lafayette County<br>Purchased in 2015 and 2016 for total of $6,158,000<br>Encumbered by First Bank of Clarksdale mortgage<br>Owe approximately $4,500,000 | *assessing options* |
| ~~1/6~~ | ~~707, LLC~~<br>~~263+ acres recreational land in Holmes County~~<br>~~Purchased in 2009~~<br>~~Encumbered by First Commercial Bank mortgage~~<br>~~Owe approximately $368,000~~ | *~~LLC sold principal asset and dissolved;~~*<br>*~~tendered $6,994.09 representing Adams's,~~*<br>*~~Kelly's, and McHenry's interests to the~~*<br>*~~Receivership Estate~~** |

\* ~~Strikethrough~~ indicates asset has been liquidated and the proceeds are accounted for in the Hancock Bank account balance.

\*\* Penalty for late tax filings by Madison Timber Company, LLC.