| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiffs,<br><br>v.<br><br>ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,<br><br>     Defendants. | No: 3:18-cv-252<br><br>Carlton W. Reeves, District Judge |

## RECEIVER'S THIRD FEE APPLICATION

*for the time period beginning October 1, 2018 and ending November 30, 2018*

**December 30, 2018**

           /s/ Alysson Mills

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his companies Madison Timber Company, LLC and Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, Adams pleaded guilty to the federal crime of wire fraud. On October 30, 2018, he was sentenced to 19.5 years in prison.

On June 22, 2018, the Court appointed me Receiver of the estates of Adams and Madison Timber. The order of appointment sets forth my responsibilities and duties and provides that I shall receive reasonable compensation and reimbursement from the Receivership Estate.[1] The Court has instructed me to file a fee application "[w]ithin 30 days after the end of every 60-day period while the Receivership is in effect."[2]

This is my second fee application, for the 60-day period beginning October 1, 2018 and ending November 30, 2018. It contains the following parts:

|                                             | page |
|---------------------------------------------|------|
| Receivership fee applications, generally    | 3    |
| Pre-established billing parameters          | 4    |
| Receivership Estate's fees and expenses     | 5    |
| Conclusion                                  | 8    |
| Receiver's declaration                      | 9    |

I provided a copy of this fee application to counsel for the Securities and Exchange Commission. Due to the government shutdown, they were unable to review it before filing.

---

[1] Doc. 33, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[2] Doc. 43 at p. 2, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

**Receivership fee applications, generally**

A receiver's duties "are unique to the facts and circumstances of each case."[3] It follows that a receiver's fees and expenses vary with the facts and circumstances of each case. The appointing court has broad discretion to determine the reasonableness of a receiver's fees and expenses.[4]

As before, in the course of preparing this fee application, I reviewed fee applications submitted by receivers in other Ponzi scheme cases, including *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 09-cv-0298 (N.D. Tex.) ("*Stanford*"); *U.S. Commodity Futures Trading Commission v. Trevor Cook, et al.*, No. 09-cv-3332 (D. Minn.) ("*Cook/Kiley*"); and *Securities and Exchange Commission v. John Scott Clark et al.*, No. 1:11-cv-46 (D. Utah) ("*Clark*").

Fee applications vary in format but provide the same basic content: a summary of work to-date, a statement of hours expended by professionals, a calculation of professional fees based on applicable hourly rates, a statement of expenses incurred in the ordinary course of business, and a declaration that all fees and expenses are accurate and reasonable. I provide the same basic content here.

Although fee applications are filed in the court's public record, the underlying records of each professional's time typically are not. This is because such records necessarily include confidential information (such as victims' names) and information subject to attorney-client or other privileges. To publish such information in the court's public record also would risk disclosing the receiver's legal strategies to defendants. For these reasons, I provide underlying records of each professional's time only to the Court.

This, my third fee application, is for the 60-day period beginning October 1, 2018 and ending November 30, 2018. As before, I offer the following context:

---

[3] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).

[4] "It is well settled that such allowances are largely within the discretion of the district court …." *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939).

The *Stanford* receiver's third fee application, filed in 2009, asked for a total of $4,363,322 in fees for 92 days of work—not counting non-legal consulting fees.[5] That fee application was granted with a 35% holdback. Of course, at $7.2 billion, the *Stanford* Ponzi scheme was considerably bigger than the Ponzi scheme in this case.

The *Cook/Kiley* Ponzi scheme, at $190 million, is closer in size. The *Cook/Kiley* receiver's fifth and sixth fee applications, for February 2010 and March 2010, together asked for $277,392 in fees for 59 days of work—also not counting non-legal consulting fees.[6] Those fee applications were paid in full.

The *Clark* Ponzi scheme, at $47 million, was considerably smaller than the Ponzi scheme in this case. The *Clark* receiver's third fee application, filed in 2012, asked for a total of $190,019.55 in fees for 92 days of work.[7] That fee application was paid in full.

**Pre-established billing parameters**

The Court's order of appointment provides that I shall bill at $275 an hour, and that my counsel shall bill at rates not to exceed $275 an hour, with the exception of Brent Barriere, who shall bill at $325 an hour.[8]

The Court's order of appointment authorizes me to incur expenses and make payments as in the ordinary course of business of the Receivership Estate[9] and, separately, to employ persons to assist me in carrying out my duties as Receiver.[10]

Any compensation or reimbursement "will be interim and will be subject to cost-benefit and final reviews at the close of the receivership."[11] Any fee application may, in the Court's discretion, be subject to a holdback in the amount of 25%.[12]

---

[5] Doc. 820, Securities and Exchange Commission v. Stanford International Bank, Ltd., et al., No. 09-cv-0298 (N.D. Tex.).

[6] Docs. 234 and 251, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

[7] Doc. 103, Securities and Exchange Commission v. John Scott Clark et al., No. 1:11-cv-46 (D. Utah).

[8] Doc. 33 at p. 4, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[9] Doc. 33 at p. 7-8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[10] Doc. 33 at p. 8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

**Receivership Estate's fees and expenses**

*Fees*

The Receivership Estate's fees, including Receiver's fees and Receiver's counsel's fees, for the 60-day period beginning October 1, 2018 and ending November 30, 2018 are:

| | Rate | Hours | Total |
|---|---|---|---|
| **Receiver's fees** | | | |
| Alysson Mills | $275 | 175.30 | $48,207.50 |
| | | | |
| **Receiver's counsel's fees** | | | |
| Fishman Haygood, LLP | *$325 | 136.00 | $44,200.00 |
| *Brent Barriere* et al.* | $275 | 83.90 | $23,072.50 |
| | $220 | 143.40 | $31,548.00 |
| | $150 | 0.40 | $60.00 |
| Brown Bass & Jeter, PLLC | $275 | 103.00 | $28,325.00 |
| *Lilli Bass et al.* | $135 | 8.90 | $1,201.50 |
| | | | $176,614.50 |

These fees are for work described in my third Receiver's Report, filed on December 21, 2018.[13] To summarize, during the 60-day period beginning October 1, 2018 and ending November 30, 2018, my colleagues and I: filed an amended complaint against Wayne Kelly, Michael Billings, and Bill McHenry to recover "commissions" they received from Madison Timber, *see Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679; announced a settlement with Kelly representing a value of approximately $2,000,000 to the Receivership Estate; filed a motion for summary judgment against Billings and McHenry; filed a motion for contempt against Alexander Seawright Timber Fund I, LLC, Brent Alexander, and Jon Seawright following their pursuit and settlement of claims against UPS in violation of this Court's stay of litigation; announced a settlement with Frank Zito by which he will return $200,000 of the $222,750 in "commissions" he received from Madison Timber; negotiated the return of cash gifts from Adams's family and the University of Mississippi's Ole Miss Athletic

---

[11] Doc. 33 at p. 14, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[12] Doc. 33 at p. 14-15, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[13] Doc. 70, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

Foundation; continued to account for "commissions"; continued to review records of banks, law firms, and other third parties that had professional relationships with Adams or Madison Timber; continued to work with LLCs of which Adams was a member, including KAPA Breeze, LLC and Oxford Springs, LLC; facilitated the sale of Delta Farm Land Investments, LLC's principal asset; obtained title to Adams's remaining assets pre-sentencing; negotiated the disposition of certain assets of which Adams's wife has an interest; attended Adams's sentencing; continued to confer with the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, the Securities and Exchange Commission, and the Mississippi Secretary of State's Office; continued to communicate with investors in Madison Timber via phone, letter, email, and in-person meetings; continued to interview individuals with first-hand knowledge of matters bearing on the Receivership Estate, including Adams; and continued to research legal claims against third parties as new facts are discovered. Time records for the 60-day period beginning October 1, 2018 and ending November 30, 2018 shall be separately provided to the Court for *in camera* review.

Of the hours recorded for the 60-day time period beginning October 1, 2018 and ending November 30, 2018, 330.5 hours, or $89,103.50, were spent on the lawsuit *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679. Including hours previously recorded, my colleagues and I have spent a total of 478.70 hours on the lawsuit since it was filed, at a total expense of $121,178. I believe this time and expense is worthwhile, particularly given we have already obtained a settlement with Kelly representing a value of approximately $2,000,000 to the Receivership Estate.

My colleagues and I are sensitive to the Receivership Estate's limited resources and we hope our fees reflect that. We have not charged for work that we believe was duplicative; our time records show hours worked for which we have charged no fee. We have not charged for travel. Our agreed-upon rates generally are lower than market rates.

*Expenses*

The Receivership Estate's expenses for the 60-day period beginning October 1, 2018 and ending November 30, 2018 are:

| | |
|---|---:|
| Copier charges | $00.50 |
| Printer charges | $1,140.80 |
| Express mail services | $171.51 |
| ~~Long distance calls~~ | ~~$973.54~~ |
| ~~Court filing fees~~ | ~~$200.00~~ |
| Westlaw research | $2,516.65 |
| Postage | $653.93 |
| Appraisal fee | $3,000.00 |
| AEA Group | $3,207.50 |
| ~~Travel~~ | ~~$830.29~~ |
| | $10,690.89 |

Most of these expenses are self-explanatory and are the kinds of expenses typically incurred in any legal matter. I have not charged for long distance calls, court filing fees for *pro hac vice* admissions, or travel. The appraisal fee is for an appraisal I requested of property owned by one of Adams's LLCs.

Note that the above costs include costs for a forensic accounting of "commissions." As I noted in my last fee application, a receiver typically undertakes a forensic accounting—at considerable but usually necessary expense—before filing a lawsuit. But the nature of the Madison Timber Ponzi scheme has made it a relatively straightforward task to confirm "commissions" using Quickbooks and bank statements. We did a preliminary forensic accounting ourselves, to save money. But we did retain a forensic accounting firm, AEA Group, to assist with our analysis, and its principal, Les Alexander, provided an affidavit in support of the motion for preliminary injunction we filed in *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679.

**Conclusion**

Currently the Receivership Estate has $2,401,236.20 in the bank—still a healthy sum at this point but far from enough to make a meaningful distribution. As I advised in my third Receiver's Report, filed December 21, 2018,[14] I expect to receive proceeds from the Kelly settlement in the next 20 days. Settlements with the University of Mississippi's Ole Miss Athletic Foundation and Adams's family are forthcoming.

As I have stated, the Receivership Estate's most valuable assets may be the lawsuits it has filed and intends to file. I anticipate that the next few months will require substantial work by counsel, and possibly experts, as we litigate against third parties. As always I will monitor all work for inefficiencies and unnecessary expense.

In the interest of preserving the Receivership Estate's limited resources, my primary counsel, Brent Barriere and Fishman Haygood, LLP, has agreed to represent the Receivership Estate in certain third-party litigation on a contingency fee, or success-based, arrangement. The terms shall be separately provided to the Court. Of course any fee arrangement is subject to the continuing oversight of the Court—and any fees paid by the Receivership Estate, whether on an hourly basis or as a contingency fee, are subject to the Court's review and approval at an appropriate time.

In the meantime, I continue to believe our team is providing very good value for cost—particularly when viewed in the context of other receiverships, which at this point cost many multiples more per day.

---

[14] Doc. 70, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiffs,

v.

ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC,

Defendants.

No: 3:18-cv-252

Carlton W. Reeves, District Judge

## DECLARATION OF ALYSSON MILLS

In support of the foregoing fee application for the time period beginning October 1, 2018 and ending November 30, 2018, I declare:

1. This application and all fees and expenses described in it are true and accurate.

2. The fees and expenses were incurred in the best interests of the Receivership Estate.

3. The fees are based on the rates agreed-upon in advance, which rates are reasonable, necessary, and commensurate with the skill and experience required for the work performed.

4. The fees are supported by records for time spent on services rendered, which I have separately provided to the Court for *in camera* review. The records set forth in reasonable detail an appropriate narrative description of the services rendered. The description includes indications of the participants in, as well as the scope, identification, and purpose of the activity that is reasonable under the circumstances.

5. The fees do not include time spent on the preparation of this application or its supporting documentation.

6. The expenses are supported by receipts or equivalent documents, which I have separately provided to the Court for *in camera* review.

7. With the exception of professionals I retained with the Court's prior approval, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate or any sharing thereof.


DATED: 12/30/18                    _Alysson Mills_____

                                   Alysson Mills
                                   Receiver