**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**SECURITIES AND EXCHANGE
COMMISSION**                                                                                                **PLAINTIFF**

**V.**                                                                                       **CAUSE NO: 3:18-cv-252-CWR-FKB**

**ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC**                                                       **DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR DECLARATION OF RIGHTS REGARDING
<u>AUTHORITY OF RECEIVER TO PURSUE CERTAIN CLAIMS</u>**

Jeanne Lehan ("Jeanne"), on behalf of the beneficiaries of the Jeanne M. Lehan Trust (the "Jeanne Trust"), and Pamela Lehan-Siegel ("Pamela"), on behalf of the beneficiaries of the Pamela Lehan-Siegel Trust (the "Pamela Trust") (sometimes collectively referred to as the "Lehan Parties"), file this their Memorandum in Support of the Motion for Declaration of Rights Regarding Authority of Receiver to Pursue Certain Claims ("Motion for Declaration"). In support of the same, the Lehan Parties would show the Court as follows:

## I. INTRODUCTION

Constitutional standing is a question that must be answered at the commencement of a lawsuit, not at the end of one. The question presented here is does the Receiver appointed in this case have constitutional standing to intervene and assert claims in a Mississippi state court case or institute her own case and assert claims therein that are neither claims of the Receivership Defendants nor implicate the Receivership Estate? Simply put, the answer is no. The Receiver does not have standing to pursue those claims.

The claims asserted by the Lehan Parties against Pinnacle Trust Company LLC ("Pinnacle Trust") in the case styled *Jeanne Lehan, on behalf of the beneficiaries of the*

*Jeanne M. Lehan Trust, and Pamela Lehan-Siegel, on behalf of the beneficiaries of the Pamela Lehan-Siegel Trust v. Pinnacle Trust Company LLC and John Does 1-10*, Cause No. 2018-603B, in the Chancery Court of Madison County, Mississippi (the "Lehan Case") are, with the possibility of one exception, such claims that the Receiver lacks standing to pursue.

In the Lehan Case, the Lehan Parties, as beneficiaries of the Jeanne Trust and the Pamela Trust, asserted that Pinnacle Trust committed breaches of trust, fiduciary duties, and loyalty, and acted with negligence/gross negligence. The claims stem from Pinnacle Trust's actions and/or inactions as Trustee of the Jeanne Trust and the Pamela Trust including impermissible loans made to Madison Timber Properties LLC ("Madison Timber") by Foxglove LLC ("Foxglove"). Foxglove is a Mississippi limited liability company that is solely owned by the Jeanne Trust and the Pamela Trust and managed by Pinnacle Trust as the Trustee of such trusts. Pinnacle Trust directed, controlled, managed, and oversaw the formation of Foxglove and the preparation of its LLC Agreement. The LLC Agreement for Foxglove provides that its managers shall not make loans or advances to anyone. Pinnacle Trust also directed, controlled, managed, and oversaw the impermissible loans made by Foxglove to Madison Timber, which were part of a ponzi scheme perpetrated by Lamar Adams ("Adams") and others. The funds loaned by Foxglove to Madison Timber were a majority of the assets owned by the Jeanne Trust and the Pamela Trust, and the loss of such funds has resulted in damages to the Lehan Parties due to Pinnacle Trust's actions and/or inactions as Trustee of such trusts.

In the Lehan Case, the Lehan Parties did not assert any claims against Adams, Madison Timber, or any of their officers, directors, managers, agents, or partners. As such,

their claims are not on behalf of or against any of the Receivership Defendants and do not involve any Receivership Property. Rather, the Lehan Parties' claims are predicated solely on the actions and/or inactions taken by Pinnacle Trust as Trustee of the Jeanne Trust and the Pamela Trust. Despite the nature of the Lehan Parties' claims (i.e. Trust related claims) and the parties involved (i.e. the beneficiaries and Trustee of such Trust), the Receiver issued a letter to counsel in the Lehan Case stating that, in her opinion, she believed the Lehan Case should be stayed. The Lehan Case, however, should not be stayed.

The Receiver should not be allowed to stay or pursue any claims in the Lehan Case, other than possible claims concerning Pinnacle Trust's receipt of recruitment fees and/or kickbacks, if any, because the Receiver lacks the constitutional standing to do so. Neither the Receivership Defendants nor the Receivership Estate have suffered any injury caused by Pinnacle Trust's actions and/or inactions as Trustee of the Jeanne Trust and the Pamela Trust that could be redressed by a Court of competent jurisdiction. The Lehan Parties' claims against Pinnacle Trust are causes of action unique to them as beneficiaries of the Jeanne Trust and the Pamela Trust, and such claims do not involve the Receivership Defendants or any Receivership Property, which might confer standing on the Receiver to stay or pursue those claims. In addition, neither the Order Appointing Receiver nor applicable state or federal law gives standing to the Receiver so that she can stay or pursue the claims asserted by the Lehan Parties in the Lehan Case.

For these reasons, which are discussed in more detail below, this Court should find that the Receiver lacks standing to stay or pursue any of the Lehan Parties' claims against Pinnacle Trust asserted in the Lehan Case, and the Lehan Case should not be stayed.

## II. RELEVANT FACTS

On June 22, 2018, this Court entered the Order Appointing Receiver [ECF #33],[1] and appointed Alysson Mills as the Receiver. In the Order Appointing Receiver, this Court set out the powers and duties of the Receiver. Such powers and duties included the Receiver's power to "assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims." See Order Appointing Receiver, pg. 5. The Order Appointing Receiver also stayed litigation in Ancillary Proceedings, which included claims involving the Receiver in her capacity as Receiver, any Receivership Property, any of the Receivership Defendants, and any of the Receivership Defendants' or Receivership Estate's past or present officers, directors, managers, agents, or partners. *Id.* at pg. 13. The stay of litigation did not extend to any claims that are not considered Ancillary Proceedings as defined in the Order Appointing Receiver.

On June 28, 2018, the Lehan Parties filed their Complaint [MEC #3] against Pinnacle Trust in the Lehan Case. See Ex. A.[2] Their claims stem from Pinnacle Trust's actions and/or inactions as Trustee of the Jeanne Trust and the Pamela Trust including impermissible loans made to Madison Timber by Foxglove, a company owned by the Jeanne Trust and the Pamela Trust. Pinnacle Trust directed, controlled, managed, and oversaw the formation of Foxglove and the preparation of its LLC Agreement, which prohibits its managers from making loans to anyone, and the impermissible loans made by

---

[1] Throughout this Memorandum, the citations to the docket entries from this case will be cited as [ECF #X] and the citations to docket entries in the Lehan Case will be designated as [MEC #Y] in order to distinguish the filings in the separate cases.

[2] Unless otherwise noted, the Exhibits referred to herein are attached to the Lehan Parties' Motion for Declaration.

4

Foxglove to Madison Timber, which were part of a ponzi scheme perpetrated by Lamar Adams ("Adams") and others. The funds loaned by Foxglove to Madison Timber were a majority of the assets owned by the Jeanne Trust and the Pamela Trust, and the loss of such funds has resulted in damages to the Lehan Parties due to Pinnacle Trust's actions and/or inactions as Trustee of such trusts.

On August 12, 2018, Pinnacle Trust filed its Motion to Dismiss or Stay Proceedings and Compel Arbitration ("Motion to Compel Arbitration") [MEC #10] and its Memorandum in Support [MEC #11]. Pinnacle Trust requested that the Chancery Court compel all of the Lehan Parties' claims to arbitration and dismiss or stay the proceedings based on an inapplicable disclosure agreement signed by Jeanne and Pamela on behalf of an unrelated limited liability company. On August 31, 2018, the Lehan Parties filed their Response in Opposition to the Motion to Compel Arbitration (the "Response to the Motion to Compel Arbitration") [MEC #16] and Memorandum in Support [MEC #17] and asserted that the disclosure agreement was inapplicable to the Lehan Parties' claims. The Motion to Compel Arbitration is currently pending before the Chancery Court and was previously set for a hearing on December 4, 2018. The hearing, however, was postponed for the reasons set forth below and it has not been reset as of the filing of the Motion for Declaration.

On November 30, 2018, the Receiver issued a letter to all counsel in the Lehan Case and stated that she was in the process of evaluating the claims of the Receivership Estate, that she had not ruled out any claims against Pinnacle Trust, and that the Lehan Case, in her opinion, should be stayed. See Ex. B. On December 3, 2018, Pinnacle Trust filed a Motion to Stay [MEC #27] arguing that the Lehan Case should be stayed based on the November 30, 2018 letter from the Receiver. See Ex. C.

5

On December 13, 2018, the Lehan Parties filed their Request for Additional Time to Respond and Partial Response to the Motion to Stay All Proceedings [MEC #28] asking the Chancery Court to delay any ruling on the Motion to Stay until discussions between counsel for the Lehan Parties and the Receiver, which were ongoing at the time, had concluded. See Ex. D. The Lehan Parties, however, did not concede that the Lehan Case should be stayed due to the proceedings in this case. *Id.*

In order to fully respond to the Motion to Stay and to pursue their claims in the Lehan Case, the Lehan Parties file this Motion for Declaration and request that this Court determine whether the Receiver has standing to stay or pursue any of the claims asserted by the Lehan Parties in the Lehan Case, and, if the Lehan Case must be stayed by the litigation stay included in the Order Appointing Receiver [ECF #33], the Lehan Parties request permission from this Court to proceed with the Lehan Case.

### III. ARGUMENT AND AUTHORITIES

As a threshold question, the Court must determine whether the Constitution confers standing on a party to pursue certain claims. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant[.]" *Florida Dept. of Ins. v. Chase Bank of Texas Nat. Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.*

> As articulated by the [United States] Supreme Court in *Lujan v. Defenders of Wildlife*, the elements of constitutional standing are: (1) that the plaintiff have suffered an "injury in fact-an invasion of a legally protected interest

6

> which is (a) concrete and particularized, and (b) actual or imminent"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that the injury is likely to be redressed by a favorable decision.

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"If the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, and is not the assignee or designated representative of the injured party, then it does not have standing." *Id.* In the context of receivers, "[a]n equity receiver, like a bankruptcy trustee, has standing for all claims that would belong to the entity in receivership, and which would thus benefit its creditors and investors, but no standing to represent the creditors and investors in their individual claims." *Miller v. Harding*, 248 F.3d 1127, *2 (1st Cir. 2000) (unpublished disposition) (citing *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)).

The United States Supreme Court, as well as the Fifth Circuit, has made clear that if a party does not suffer an injury, it does not have standing to pursue causes of action based on an injury. While Courts and statutory law have imbued receivers, like the Receiver in this case, with expanded powers over claims involving receivership defendants and receivership property, no Court or statute has permitted a receiver to pursue a claim in which the receiver lacks constitutional standing. This precedent is expansive and is applicable to this case. In applying this precedent, the outcome is clear: the Receiver simply lacks standing to stay or pursue the Lehan Parties' claims in the Lehan Case. The Receiver has suffered no injury due to the actions and/or inactions of Pinnacle Trust as Trustee of the Jeanne Trust and the Pamela Trust as alleged by the Lehan Parties in the Lehan Case. This lack of standing precludes the application of the stay of litigation to the Lehan Case as it is not an Ancillary Proceeding within the meaning of the Order Appointing Receiver and

precludes the Receiver from asserting such claims. Therefore, this Court should determine that the Receiver cannot pursue the trust related claims belonging to the Lehan Parties and permit the Lehan Parties to pursue those claims.

As an initial point, the Lehan Parties concede that the Receiver may have standing to pursue claims that arise from or relate to one of the factual allegations asserted by the Lehan Parties in their Complaint. The Lehan Parties, however, do not concede that the Receiver has standing to pursue any of the causes of action asserted by the Lehan Parties in the Lehan Case. The Lehan Parties made allegations in their Complaint concerning recruitment fees and/or kickbacks received by Pinnacle Trust or its owners, directors, officers, managers, employees, and/or agents tied to the loans it made to Madison Timber as Trustee of the Jeanne Trust and the Pamela Trust. See Ex. A generally. The Lehan Parties asserted that Pinnacle Trust failed to inform them of such recruitment fees and/or kickbacks in violation of the Trust Agreement. *Id.* at pg. 7. This assertion is made in the Lehan Parties' cause of action for breach of trust, but is not the only factual allegation relied on by the Lehan Parties to support that claim. *Id.* at pg. 10. In the request for damages, the Lehan Parties requested that the Court order Pinnacle Trust to reimburse or be disgorged of any recruitment fees and/or kickbacks it received in connection with the loans mentioned above. *Id.* at pg. 13.

While claims and/or damages concerning recruitment fees and/or kickbacks received by Pinnacle Trust may be construed to be claims by the Receivership Defendants and/or involve Receivership Property, those are the only potential claims involved in the Lehan Case that the Receiver may have standing to pursue. The remaining causes of action and damages stem from Pinnacle Trust's actions and/or inactions as Trustee of the Jeanne

Trust and the Pamela Trust, which, for the reasons detailed below, do not implicate the Receivership Defendants and/or the Receivership Estate such that the Receiver lacks standing to pursue those claims. Though, as stated above, the Lehan Parties made factual allegations and requests for damages in their Complaint based on recruitment fees and/or kickbacks, none of the Lehan Parties' causes of action or claims for damages are solely based on injuries stemming from recruitment fees and/or kickbacks. Therefore, if this Court does find that the Receiver has standing to pursue any claims and/or damages based on recruitment fees and/or kickbacks received by Pinnacle Trust, if any, from the Receivership Defendants, this Court should also find that the Lehan Parties should be allowed to continue to pursue their other claims and attempt to recover their other damages at issue in the Lehan Case as the Receiver lacks standing to pursue those separate and distinct claims.

As stated above, the first consideration in determining if a party has constitutional standing is whether that party has suffered an injury, or, more particularly, whether a party has suffered an injury in fact that is "(a) concrete and particularized, and (b) actual or imminent[.]" *Florida Dept. of Ins.*, 274 F.3d at 929 (quoting *Lujan*, 504 U.S. at 560-61). To have standing, therefore, the Receiver must prove that Pinnacle Trust caused an injury to the Receivership Defendants and/or the Receivership Estate similar to that of the Lehan Parties. The Receiver cannot show such an injury occurred.

In their Complaint, the Lehan Parties alleged that Pinnacle Trust, as Trustee, caused the Lehan Parties to suffer damages by taking actions and/or inactions concerning the loaning of funds from the Jeanne Trust and the Pamela Trust, through Foxglove, to Madison Timber. Pinnacle Trust, in violation of the terms of the Trust Agreement creating

9

the Jeanne Trust and the Pamela Trust and in violation of the LLC Agreement for Foxglove, which was agreed to and executed by Pinnacle Trust as Trustee of the Jeanne Trust and the Pamela Trust, made impermissible loans to Madison Timber that were unsecured and for consideration that was less than the amount loaned. See Ex. A generally. Further, Pinnacle Trust, in its role as Trustee, did not do sufficient, if any, due diligence concerning the loans made to Madison Timber that it directed, controlled, managed, and oversaw as Trustee. *Id.* On May 1, 2018, Pinnacle Trust sent an email to all Pinnacle Trust clients, which stated that Pinnacle Trust deemed Madison Timber to be unsuitable for investment in 2011, and since that time, Pinnacle Trust had not managed or directed any loans or investments in Madison Timber or its affiliates. See Ex. D attached to the Complaint in Ex. A. This statement contradicts the fact that subsequent to 2011, Pinnacle Trust directed and/or controlled the lending of trust funds from the Jeanne Trust and the Pamela Trust to Madison Timber. See Ex. A at pg. 8. As a result of these actions and/or inactions by Pinnacle Trust, the Lehan Parties suffered the damages described in their Complaint.

The actions and/or inactions by Pinnacle Trust described above caused a concrete and actual injury to the Lehan Parties. Further, there is "a causal connection between the injury and the conduct complained of" as Pinnacle Trust's actions and/or inactions caused funds in the Jeanne Trust and the Pamela Trust to be lost. *Florida Dept. of Ins.*, 274 F.3d at 929 (quoting *Lujan*, 504 U.S. at 560-61). Also, the injury is "likely to be redressed by a favorable decision" against Pinnacle Trust in that Pinnacle Trust, as Trustee, clearly violated the terms of the Trust Agreement and the LLC Agreement, and clearly failed to meet the standard of care of a Trustee in compliance with applicable Mississippi law. *Id.* Therefore, the Lehan Parties have standing to pursue the claims in the Lehan Case.

10

In comparison, under the framework set forth in *Lujan*, the Receiver lacks standing to pursue the above mentioned claims as none of the actions/inactions and injuries/damages complained of by the Lehan Parties, other than those involving recruitment fees and/or kickbacks, concern the Receivership Defendants and/or the Receivership Estate. As previously stated, "[a]n equity receiver, like a bankruptcy trustee, has standing for all claims that would belong to the entity in receivership, and which would thus benefit its creditors and investors, but no standing to represent the creditors and investors in their individual claims." *Miller*, 248 F.3d at *2 (citing *Scholes*, 56 F.3d at 753). None of the Lehan Parties' claims, however, belong to the Receivership Defendants or would benefit all of the creditors and investors through the Receivership Estate. Therefore, the Receiver lacks standing.

First, none of the claims by the Lehan Parties belong to the Receivership Defendants. Pinnacle Trust was not acting as Trustee for the Receivership Defendants or the Receivership Estate, Pinnacle Trust does not owe any fiduciary duty or duty of loyalty to Receivership Defendants or the Receivership Estate, and Pinnacle Trust did not breach any duty or standard of care owed to the Receivership Defendants of the Receivership Estate by loaning funds from the Jeanne Trust or the Pamela Trust to Madison Timber. Also, none of the Lehan Parties have assigned their claims to the Receiver or the Receivership Defendants or designated them as a representative of the Lehan Parties. *Florida Dept. of Ins.*, 274 F.3d at 929 (quoting *Lujan*, 504 U.S. at 560-61). As such, the Receiver lacks standing because the Receivership Defendants do not have causes of action that are the same as the ones being pursued by the Lehan Parties.

11

Further, none of the Lehan Parties' claims involve the Receivership Estate. As stated above, the Lehan Parties admit that the Receiver may have certain limited claims against Pinnacle Trust, however, none of those claims, other than the previously conceded allegations concerning recruitment fees and/or kickbacks, are present in the Lehan Case. All of the damages sought by the Lehan Parties are from Pinnacle Trust and/or its liability insurance carrier, and are not from any of the Receivership Defendants or the Receivership Estate. Based on the above, the Receiver lacks constitutional standing as dictated under *Lujan* to maintain the claims by the Lehan Parties against Pinnacle Trust in its capacity as Trustee of the Jeanne Trust and the Pamela Trust.

Since the Receiver lacks standing to pursue the Lehan Parties' claims and damages, the Lehan Case should not be stayed and the Lehan Parties should be able to pursue their claims against Pinnacle Trust. In her November 30, 2018 letter, the Receiver stated that in her opinion the Lehan Case, in its entirety, should be stayed. See Ex. B. The Lehan Case, however, should not be stayed as the Order Appointing Receiver does not require the same. The Order Appointing Receiver dictates the categories of cases that qualify as Ancillary Proceedings, in which the Receiver could pursue claims and the stay of litigation would apply. None of those categories would include the Lehan Parties' claims in the Lehan Case. The Order Appointing Receiver states that the stay of litigation applies to cases involving:

(1)   the Receiver in her capacity as Receiver;

(2)   any Receivership Property, wherever located;

(3)   any of the Receivership Defendants, including subsidiaries and partnerships; or

(4)   any of the Receivership Defendants' or Receivership Estate's past or present officers, directors, managers, agents, or general or limited

12

> partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

See Order Appointing Receiver, pgs. 12-13. As none of the claims or parties in the Lehan Case, other than what has been previously conceded, fall into the categories listed above, the Lehan Case should not be stayed and the Lehan Parties should be able to continue their suit against Pinnacle Trust.

It is anticipated that the Receiver may argue that whether litigation should be stayed is not a question of the Receiver's standing, but rather a question of the administration and equity of this Court and its litigation stay in the Order Appointing Receiver.[3] The Receiver has previously argued that the Court's authority to stay litigation extends to all claims concerning claims by or against the Receiver and claims that could "diminish the value of the Receivership Estate's claims[,]" and does not involve the question of the Receiver's standing. See Reply Memorandum, pg. 2. This argument by the Receiver, however, is without merit.

The Receiver's standing is directly related to the stay of litigation. If standing were not an issue, then the Court's stay of litigation could in theory apply to any claim in any court concerning any issue and any party regardless of its connection to the Receivership Defendants and the Receivership Estate. That simply cannot be the case. The purpose of

---

[3] The issue of the Receiver's standing and this Courts authority to stay certain claims has previously been argued before this Court in the Motion for Contempt [ECF #56] filed by the Receiver against Brent Alexander ("Alexander") and Jon Seawright ("Seawright"), Alexander and Seawright's Response to the Motion for Contempt [ECF #62] ("Response to Motion for Contempt"), and the Receiver's Reply Memorandum in Further Support of Motion for Contempt [ECF #66] ("Reply Memorandum"). A hearing on the above Motion for Contempt proceedings was held on December 19, 2018. At the time of the filing of the Motion for Declaration, this Court has not ruled on the Motion for Contempt.

the stay is to either preserve and/or pursue claims belonging to or made against the Receivership Defendants, and/or to preserve the Receivership Estate for the benefit of all victims. If the Receiver lacks standing, the underlying purpose of the stay cannot be fulfilled as standing is an absolute requirement for a party, in this case the Receiver, to pursue or defend against claims. This standing requirement would apply whether the claims involved the Receivership Defendants or the Receivership Estate. If the Receiver cannot prove standing, the stay has no effect as the Receiver could not assert or defend any claims or recover or preserve any property in the Receivership Estate. As such, the stay cannot extend to claims in which the Receiver lacks standing, and would not extend to the claims in the Lehan Case.

The Receiver may argue that any payment to the Lehan Parties in connection with the Lehan Case could affect the overall amount available to victims of wrongdoing by Pinnacle Trust in connection with the actions of the Receivership Defendants. In her Reply Memorandum in the Alexander Seawright matter, the Receiver argued that the collection of money from UPS would deplete the funds available for other victims who may also have claims against UPS. Alexander and Seawright sued the UPS Store in Madison, Mississippi, the store owners, and three notaries employed there based on their involvement in notarized fake timber deeds used as part of Adams' ponzi scheme. Alexander and Seawright negotiated a settlement with UPS's insurance carrier for $100,000 to be paid to Alexander and Seawright's clients, all of whom were victims of Adams' ponzi scheme. Under the Receiver's argument, if Alexander and Seawright's clients received the $100,000 settlement, which would result in fewer, if any, funds available for other victims from UPS's insurance carrier after the payout. The Lehan Case, however, is clearly distinguishable.

First, unlike the UPS scenario in which there could be additional victims who have claims against UPS stemming from the notarized fake timber deeds, which Alexander and Seawright admitted could have been used to defraud others in addition to their clients, the Lehan Parties are the only parties who have claims against Pinnacle Trust stemming from Pinnacle Trust's action and/or inactions as Trustee of the Jeanne Trust and the Pamela Trust regarding impermissible loans made by such trusts to Madison Timber. Second, even if the Receiver had claims against Pinnacle Trust, those claims would be based on the recruitment fees and/or kickbacks received by Pinnacle Trust, if any, and not based on acts by Pinnacle Trust as Trustee of the Jeanne Trust and the Pamela Trust. Based upon information available to the Lehan Parties to date, it does not appear that Pinnacle Trust received any recruitment fees and/or kickbacks, which, if correct, would mean that the Receiver would not have any claims to assert against Pinnacle Trust. Regardless, the Lehan Parties would be the only parties who could collect from Pinnacle Trust based on the Lehan Parties' separate and distinct claims as the Lehan Parties know of no other person who has a breach of trust, breach of fiduciary duty, breach of loyalty, or negligence/gross negligence claim relating to Pinnacle Trust in its position as a Trustee of a trust. Therefore, even under the Receiver's anticipated argument, the litigation stay would not apply to the Lehan Parties' claims, other than those specifically conceded above.

In addition, the Lehan Parties claims against Pinnacle Trust are covered, or at least potentially covered, by a liability insurance policy insuring Pinnacle Trust against malfeasance in its duties as a Trustee. The Lehan Parties do not know of any liability insurance polices insuring Pinnacle Trust that would provide coverage for any claim that could be asserted by the Receiver against Pinnacle Trust. Certainly, any claim by the

Receiver against Pinnacle Trust for receipt of recruitment fees and/or kickbacks would not be the types of claims covered by a liability insurance policy.

## IV.  CONCLUSION

Based on the above, the Receiver lacks constitutional standing to pursue the claims asserted by the Lehan Parties in the Lehan Case.  Though the Lehan Parties concede that the Receiver may have claims that arise from or relate to the allegations in their Complaint concerning recruitment fees and/or kickbacks received by Pinnacle Trust, if any, or its officers, directors, managers, employees, representatives, and/or agents, none of the Lehan Parties' causes of action or requests for damages solely rely on those allegations and can be severed or removed from their Complaint and not pursued by the Lehan Parties.  Aside from the potential claims concerning recruitment fees and/or kickbacks, the Receiver lacks standing to pursue any of the Lehan Parties other claims as none of those claims belong to the Receivership Defendants or involve Receivership Property.  As such, the Receiver cannot pursue any of those claims.  Further, the stay of litigation in the Order Appointing Receiver does not apply to the Lehan Parties' claims as standing is a threshold requirement and the Court's powers of administration and equity cannot supercede this requirement.  Therefore, the Lehan Parties request that this Court enter an Order declaring that the Receiver does not have standing to pursue the claims asserted by the Lehan Parties in the Lehan Case, and that the stay of litigation does not apply to the Lehan Case and the Lehan Parties be allowed to continue to pursue their claims against Pinnacle Trust.

RESPECTFULLY SUBMITTED, this the 14th day of January, 2019.

        JEANNE LEHAN, ON BEHALF OF
        THE BENEFICIARIES OF THE
        JEANNE M. LEHAN TRUST AND
        PAMELA LEHAN-SIEGEL, ON
        BEHALF OF THE BENEFICIARIES
        OF THE PAMELA LEHAN-SIEGEL TRUST

        By: */s/ G. Todd Burwell*

OF COUNSEL:

John Davidson (MSB #9073)
jdavidson@dbslawfirm.net
DAVIDSON BOWIE, PLC
2506 Lakeland Drive, Suite 501
Flowood, MS 39232
Tel:    601-932-0028

G. Todd Burwell (MSB #8832)
tburwell@gtbpa.com
Emily K. Lindsay (MSB #104963)
elindsay@gtbpa.com
G. TODD BURWELL, P.A.
618 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Tel:    601-427-4470

## **CERTIFICATE OF SERVICE**

I, G. Todd Burwell, one of the attorneys for the Lehan Parties, do hereby certify that on this the14th day of January, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that I have this day forwarded via the ECF system, a true and correct copy of the foregoing to all counsel of record who have registered with that system in this case. In addition, a true and correct copy of the foregoing has been sent via email and/or U.S. Mail, First Class, to:

Luke Dove
Dove and Chill
1020 Highland Col Pkwy Ste 412
Ridgeland, MS 39157-8719
lukedove@dovechill.com
*Attorney for Pinnacle Trust Company, LLC*

                                                                */s/ G. Todd Burwell*