

No. 3:18-cv-252-CWR-FKB

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff,*

*v.*

ARTHUR LAMAR ADAMS AND
MADISON TIMBER PROPERTIES, LLC,

*Defendants.*

ORDER DENYING MOTION FOR DECLARATION OF RIGHTS

Before CARLTON W. REEVES, *District Judge.*

Jeanne Lehan, on behalf of the beneficiaries of the Jeanne M. Lehan Trust, and Pamela Lehan-Siegel, on behalf of the beneficiaries of the Pamela Lehan-Siegel Trust (collectively, the "Lehan parties"), have moved for a declaration that the Court's previous Order, which stays all ancillary litigation related to this case, does not apply to their case in Madison

County Chancery Court. Docket No. 79. The Receiver and the SEC oppose the motion.

# I

## Procedural History

On June 22, 2018, this Court appointed the Receiver to oversee the estate of Lamar Adams and Madison Timber Properties ("MTP"). Docket No. 33. That Order stayed "all civil legal proceedings of any nature . . . or other actions involving . . . any Receivership Property . . . [or any] past or present officers, directors, managers, agents, or general or limited partners" of MTP. *Id*. at 12–13.

After the Court issued its Order, the Lehan parties filed a complaint against Pinnacle Trust in Madison County Chancery Court. Their complaint alleges that "Pinnacle Trust committed breaches of trust, fiduciary duties, and loyalty, and acted with negligence/gross negligence" because Pinnacle Trust used the Lehan parties' two trusts as a vehicle to loan MTP money. Docket No. 80 at 2.

In November 2018, the Receiver notified the Lehan parties and Pinnacle Trust that she believed the case should be stayed because "[c]ourt proceedings in cases arising from the Madison Timber Ponzi scheme against the Receivership Estate's own targets risk inconsistent rulings. Judgements in those cases also risk inequitable distribution of money to victims." Docket No. 79-2. The Receiver went on to tell the parties that she was still assessing the claims of the Receivership Estate and had "not ruled out claims against Pinnacle Trust Company." *Id*. Pinnacle Trust then moved to stay the case in Chancery Court, using the Receiver's letter as support.

In response, the Lehan parties came here asking "this Court [to] determine whether the Receiver has standing to stay or pursue any of the claims asserted" in Chancery Court. Docket No. 80 at 6. If the stay does apply to their case, the Lehan parties request the stay be lifted so they may proceed with their action.

The Receiver and the SEC argue that the stay applies to the Chancery Court action because the Receiver has potential claims against Pinnacle Trust, which may have been acting as an agent of MTP and may have contributed to the liability of the Receivership Estate. The Receiver adds that keeping the stay in place is prudent to preserve Receivership Property and avoid prioritizing the recovery of certain victims over others.

## II

### The Receiver's Standing

The Court will start with the Lehan parties' main argument: "[t]he Receiver should not be allowed to stay or pursue any claims in the Lehan Case, other than possible claims concerning Pinnacle Trust's receipt of recruitment fees and/or kickbacks, if any, because the Receiver lacks constitutional standing to do so." *Id*. at 3. The Lehan parties reason that if the Receiver does not have standing to pursue the unique claims against Pinnacle Trust they have asserted, the stay cannot apply to them.

As the Receiver and the SEC point out, however, the Receiver does have standing to pursue a variety of actions against Pinnacle Trust. Courts have "held that the Receiver may assert tort claims against third parties based on allegations that the third parties' torts contributed to the liabilities of the Receivership Estate." *Official Stanford Inv'rs Comm. v. Greenberg*

*Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *4 (N.D. Tex. Dec. 17, 2014); *see also Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) ("[a] receiver no doubt has standing to bring a suit on behalf of the [receivership entity] against third parties who allegedly helped that [receivership entity's] management harm the [receivership entity]."); *SEC v. Stanford Int'l Bank Ltd.*, No. 3:09-CV-298-N, 2017 WL 9989250, at *4 (N.D. Tex. Aug. 23, 2017); *Janvey v. Adams & Reese, LLP*, No. 3:12-CV-495-N, 2013 WL 12320921, at *8 (N.D. Tex. Sept. 11, 2013); *SEC v. Cook*, No. 3:00-CV-272-R, 2001 WL 256172, at *2 (N.D. Tex. Mar. 8, 2001).

### III

### The Court's Order

Not only is the Lehan parties' interpretation of the Receiver's standing far too limited, it also conflates standing with this Court's distinct equity power for staying ancillary litigation for the overall management and preservation of the Receivership Estate. Courts "have upheld orders enjoining broad classes of individuals from taking any action regarding receivership property. Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales, as well as preventing 'piecemeal resolution of issues that call for a uniform result.'" *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) (citations omitted); *see also SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340–41 (5th Cir. 2011); *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *SEC v. Byers*, 609 F.3d 87, 93 (2d Cir. 2010); *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980); *SEC v. Faulkner*, No. 3:16-cv-1723, 2018 WL 5279321 at *2 (N.D. Tex. Oct. 24, 2018).

"This power is not limited to enjoining suits against entities that have been placed in receivership—at least where the stay order is nonetheless necessary to protect receivership assets." *Faulkner*, 2018 WL 5279321 at *2 (citing *SEC v. Kaleta*, 530 F. App'x 360, 361–63 (5th Cir. 2013)).

The *Faulkner* case is instructive. *Id*. In it, former officers and directors of a corporation sued an audit firm in state court. They alleged that the firm conducted a negligent audit. If not for the firm's negligence, the plaintiffs would have known they were about to merge their corporation with one that had fraudulent practices. Merging the companies ultimately led to the plaintiffs' corporation being named as a defendant in an SEC action. The federal district court overseeing the SEC action issued a broad stay, and the audit firm moved for the court to stay the state court action. It was granted.

The Lehan parties argue that *Faulkner* is distinguishable because it involved former directors and officers of a receivership defendant, and because part of the recovery in the state court case was based upon payments receivership defendants made to the audit firm. Thus, the Lehan parties argue that the same nexus between receivership defendants, receivership property, and the state court action does not exist here.

Those distinctions are without a difference because the bottom line is that receivership property was at stake. "[A]t the very least, a district court can stay other lawsuits to the extent necessary to *protect receivership assets*." *Id.* at *3 (citations omitted) (emphasis added). The *Faulkner* court went on to hold that the state court litigation fell "within the scope of [the court's] authority because it involve[d] *potential* receivership assets." *Id*. at *4 (emphasis added). The court came to this

conclusion based upon the Receiver's assertions in his status report. *Id*. ("The Receiver states in his most recent status report that he 'is continuing his investigation and is conducting discovery regarding services provided to the Receivership Entities by legal and accounting professionals and others'").

Similar to *Faulkner*, the Receiver in this case has asserted, through her status reports and her correspondence with the movants, that she believes the Receivership Estate has claims against Pinnacle Trust, thus any action against them would expose and potentially deplete Receivership Property. The Lehan parties argue that the "Receiver has provided no facts or documents to support her argument that she 'may' have claims against Pinnacle Trust." Docket No. 92 at 12. They provide no support for their position that the Receiver must show her hand at their request. [1]

While the Lehan parties point out the factual distinctions between *Faulkner* and the present case, they do not point to other equity receiverships where stays have been lifted. The case law supports this Court's authority to issue a broad stay for

---

[1] Counsel argues that "[i]f the Receiver was able to identify, investigate and settle claims against the Ole Miss Alumni Foundation, Frank Zito, and the Kelly Parties and pursue two additional suits, then surely she has had sufficient time to identify and investigate any claim she 'may' have against Pinnacle Trust." *See* Docket No. 92 at 13–14. Chronicling the Receiver's activities proves that she has been busy. Prioritizing the order in which she will proceed with her claims is her choice. Presumably, she will turn to Pinnacle Trust in due course, but she is not required to pursue these claims now or turn them over to the Lehan parties for prosecution. It does not work that way. She will be afforded sufficient time to explore those claims.

the preservation of Receivership Property. *See SEC v. Kaleta*, No. CIV.A. 4:09-3674, 2012 WL 401069, at *3 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013). As such, the Chancery Court action is subject to this Court's stay.

## IV

## Lifting the Stay

The next question becomes whether the stay should be lifted for the Lehan parties.

Before lifting a stay, courts should consider: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341 (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)).

"The first factor essentially balances the interests in preserving the receivership estate with the interests of the Appellants." *Id*. The Lehan parties argue that they will be unduly prejudiced because of the threat of the spoliation of evidence. As they themselves admit, however, parties have the obligation to preserve relevant documents in litigation. *See* Docket No. 92 at 20; *see also TLS Mgmt. & Mkt. Serv., LLC v. Mardis Fin. Serv., Inc.*, No. 3:14-CV-881-CWR-LRA, 2018 WL 3673090, at *2 (S.D. Miss. Jan. 29, 2018). On the other hand, as the Court has ruled in other motions in this matter, letting one claim proceed at this stage risks opening the doors for many such motions. This forces the Receivership Estate to incur increased litigation costs, all to the detriment of the value of the Receivership Estate's claims. "Very early in a receivership

even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties." *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-298-N, 2010 WL 11454481, at *3 (N.D. Tex. Mar. 8, 2010).

Second, it is worth reminding the parties that the Receiver was appointed fewer than 12 months ago. In the *Stanford* case, the court determined that this fact supported not lifting a stay. *Stanford Int'l Bank Ltd.*, 424 F. App'x at 341–42.

Finally, on the third factor, the Court cannot adequately evaluate the merits of the Lehan parties' underlying claim against Pinnacle Trust on this record.[2] Assuming for present purposes that they have valid claims against Pinnacle Trust, the third factor would weigh in favor of lifting the stay.

Like other victims, the Lehan parties desire to adjudicate this matter. This Court does not wish to prevent those who have been wronged from seeking justice, especially against parties with whom they placed their trust. Considering all three factors, the Court finds that at this stage, only months after the appointment of the Receiver, equity mandates not lifting the stay.

---

[2] The Court understands that the Lehan parties, in part, premise their claim on the fact that they should be covered by a trustee liability insurance policy, to which they argue the Receiver has no claim. Though, it does not follow that there will be no depletion of Pinnacle Trust's assets or no impact on the Receiver's ability to recover. *See Stanford Int'l Bank Ltd.*, 424 F. App'x at 341 ("Recovery against one of them could deplete possible assets coming into the estate.").

## IV

## Conclusion

The motion is denied. As it is has done in all three orders issued today, the Court reiterates its broad authority to protect Receivership Property. *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982) ("wide discretionary powers [are accorded] to a court of equity charged with overseeing a receivership.").

SO ORDERED, this the 13th day of March, 2019.

s/ CARLTON W. REEVES
*United States District Judge*