UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,**<br><br>**Defendants.** | No: 3:18-cv-252<br><br>Carlton W. Reeves, District Judge |

# RECEIVER'S REPORT

**April 18, 2019**

*/s/ Alysson Mills*

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his companies Madison Timber Company, Inc. and Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, Adams pleaded guilty to the federal crime of wire fraud. On October 30, 2018, he was sentenced to 19.5 years in prison.

On June 22, 2018, the Court appointed me Receiver of the estates of Adams and Madison Timber. The order of appointment sets forth my responsibilities and duties. Among other things, the order instructs me to take any action necessary and appropriate to preserve the assets of Adams and his businesses, to maximize funds available for distributions to victims. I have undertaken these tasks with substantial assistance from my counsel, including principally Brent Barriere and Lilli Bass.

The Court instructed me to file a report of my progress every 60 days. I filed my last report on February 19, 2019, and this report picks up where that report left off. It does not repeat the same information, except as necessary for context. It contains the following parts:

|  | *page* |
|---|---|
| Recent filings or events—criminal | 3 |
| Recent filings or events—civil | 5 |
| Receiver's actions in the past 60 days | 10 |
| Receiver's plan for the next 60 days | 14 |
| Summary of status of assets | 17 |

As always, my reports are for the Court's benefit, but I write them for a broader audience, knowing that they may be read by non-lawyers including victims. I remain sensitive to potential ongoing criminal investigations and do not disclose information that might impair their progress.

**Recent filings or events—criminal**

*United States v. Adams, No. 3:18-cr-88*

None.

*United States v. McHenry, No. 3:19-cr-20*

On March 1, 2019, the U.S. Attorney's Office for the Southern District of Mississippi unsealed an indictment against Bill McHenry dated January 25, 2019 that charges McHenry with securities and commodities fraud and wire fraud. The indictment alleges:

6. Beginning at least as early as 2008 and continuing through April 2018 . . . WILLIAM B. MCHENRY, JR., aided and abetted by others, did knowingly and intentionally participate in a scheme and artifice to defraud investors . . . .

7. Defendant MCHENRY falsely and fraudulently represented to investors that Madison Timber Properties was in the business of buying timber rights from landowners and then selling the timber rights to lumber mills at a higher price. … In fact, neither MCHENRY nor Madison Timber Properties had such timber rights or contracts with lumber mills, except in only a few instances. . . .

8. In furtherance of the scheme and artifice to defraud, defendant MCHENRY concluded investment contracts with investors, most often in the form of promissory notes on behalf of Madison Timber Properties. The loans typically guaranteed investors an interest rate of 12 to 13 percent, which was to be repaid to investors over the course of twelve to thirteen months. The monthly payments due on these promissory notes were typically due either the first or the fifteenth of the month.

9. In fact, this was a sophisticated Ponzi scheme. Instead of investing the investors' money, ADAMS used the invested funds for his own personal benefit and the benefit of others, and for purposes other than those represented to investors. Participating in the scheme and artifice to defraud, MCHENRY on behalf of Madison Timber Properties fraudulently obtained well over eighteen million dollars ($18,000,000) from more than 20 investors.

10. In furtherance of the Ponzi scheme, MCHENRY and others created false documents to lull investors into believing that their investments were secured by sufficient collateral from which they could recover all or part of their investment in the event that Madison Timber Properties defaulted on the loans. Specifically, MCHENRY and others created false timber deeds purporting to be contracts conveying timber rights from landowners to Madison Timber Properties. The timber deeds contained forged signatures of landowners, those landowners' names often having been obtained from timber maps. MCHENRY and others also created false timber deeds purporting to convey those timber

3

rights from Madison Timber Properties to the investors. In fact, Madison Timber Properties did not hold valid timber rights on the parcels of land described in the false timber deeds which MCHENRY uttered. To further lull the investors, many of the documents were notarized to make the investments appear to be legitimate. To further conceal the scheme, MCHENRY and others required the investors to agree not to record their timber deeds unless Madison Timber Properties defaulted on the loan agreement by failing to make a payment.

11. In furtherance of the Ponzi scheme, MCHENRY represented to investors that he had confidence in the timber deeds, as well as the associated contracts with Madison Timber Properties for the timber. In fact, MCHENRY had made no inquiry.

12. Instead of using the money as promised for the purpose of cutting timber, ADAMS and Madison Timber Properties used the proceeds for other fraudulent purposes and to further the scheme, including but not limited to making payments due and owing to other investors. It was further part of the scheme and artifice to defraud that defendant MCHENRY received undisclosed commissions for recruiting investors to Madison Timber Properties. MCHENRY falsely held himself out as a principal officer, partner, owner or director of Madison Timber Properties, and as an investor of his own money in Madison Timber Properties. In fact, MCHENRY had no such office and authority, and McHenry had no personal investment in Madison Timber Properties, but MCHENRY received ten percent of all monies raised and invested by the investors whom MCHENRY recruited, as a commission paid to MCHENRY from those very same investment funds. MCHENRY did not disclose the fact of his commission, or the percentage of his commission, to the investors he recruited.

13. It was further part of the scheme and artifice to defraud that ADAMS lulled and persuaded investors to maintain their investments and to invest additional funds by making payments to some investors by way of post-dated checks. MCHENRY contributed to this lulling tactic by forwarding the checks to the investors MCHENRY recruited. It was MCHENRY's routine practice to interact directly with investors whom MCHENRY had recruited, and to distance them from ADAMS, which practice further lulled investors.

14. It was further part of the scheme and artifice to defraud that defendant MCHENRY lulled and persuaded investors to maintain their investments and to invest additional funds by offering his own personal guarantee of their investments.[1]

---

[1] Doc. 3, *United States v. McHenry*, No. 3:19-cr-20 (S.D. Miss.).

On March 1, 2019, McHenry pleaded not guilty, and the Court set a trial date of April 15, 2019.[2] That trial date was continued, however, while McHenry tried to obtain counsel.[3] On April 8, 2019, the Court appointed the Federal Public Defender to represent him.[4] As of this filing, a new trial date has not been set.

**Recent filings or events—civil**

*Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-252*

*Marital property settlement—Vickie Lynn Adams:* On February 20, 2019, the Court approved a marital property settlement agreement with Adams's wife, Vickie Lynn Adams.[5] The Adamses married in 1978 and Mrs. Adams had an interest in certain receivership property that constitutes marital assets under the laws of the State of Mississippi. We allocated those marital assets, including real property in Jackson and Oxford, Mississippi, as set forth in the final marital property settlement agreement, available at madisontimberreceiver.com.

*Subpoenas—notaries:* On February 21, 2019, I issued 15 subpoenas to individuals and entities including The UPS Store, PAK Mail, and Rawlings & MacInnis, requesting the "journals of notarial acts," which Mississippi law requires that they maintain.

*Motion for contempt—Alexander Seawright:* On March 13, 2019, the Court granted the motion for contempt I filed against Alexander Seawright Timber Fund I, LLC, Brent Alexander, and Jon Seawright ("Alexander Seawright") following their pursuit and settlement of claims against UPS arising from UPS employees' notarization of fake timber deeds. The Court's order stated:

> In the simplest terms, [the Court's stay of litigation] positions the Receiver as if she were the first person in line to board a Southwest Airlines flight, where there is limited capacity and there are no reserved seats. If someone cuts in front of the Receiver, her choices become more limited. The Order also prevents victims from jostling for a position closer to the front of the line.

---

[2] Doc. 9, *United States v. McHenry*, No. 3:19-cr-20 (S.D. Miss.).

[3] Doc. 17, *United States v. McHenry*, No. 3:19-cr-20 (S.D. Miss.).

[4] Doc. 20, *United States v. McHenry*, No. 3:19-cr-20 (S.D. Miss.).

[5] Doc. 94, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

> Ultimately, the goal is to preserve the value of Receivership Property and ensure that all victims are treated fairly.
>
> * * *
>
> By settling claims against UPS, [Alexander Seawright has] diminished the value of the Receivership Estate's claims and put [itself] ahead of other victims.[6]

The Court held Alexander Seawright in civil contempt and urged that the parties "be put back in the same position as they were" without further input from the Court. Following the Court's ruling, Alexander Seawright gave to the Receivership Estate the $100,000 UPS paid to it in exchange for its purported settlement of claims against UPS. Separately I advised UPS that the Receivership Estate will treat the $100,000 as an offset to UPS's monetary liability for future claims the Receivership Estate might have against UPS. Following these efforts, on March 25, 2019, the Court purged Alexander Seawright's contempt.[7]

*Motion regarding stay—the Lehans:* On March 13, 2019, the Court denied the motion filed by Jeanne Lehan and Pamela Lehan that requested that the Court declare that the Court's stay of litigation did not apply to the Lehans' lawsuit against Pinnacle Trust, who they say facilitated their investments in Madison Timber. The Court's order stated:

> Like other victims, the Lehan parties desire to adjudicate this matter. This Court does not wish to prevent those who have been wronged from seeking justice, especially against parties with whom they placed their trust. Considering all three factors, [however,] the Court finds that at this stage, only months after the appointment of the Receiver, equity mandates not lifting the stay.
>
> The motion is denied. As it has done in all three orders issued today, the Court reiterates its broad authority to protect Receivership Property.[8]

*Motion regarding investor's check—McHenry:* On March 13, 2019, the Court denied the motion filed by Bill McHenry that requested that the Court order me to return $100,000 to an investor whose check to Madison Timber was deposited in Madison Timber's Southern Bancorp Bank account on the same day the Securities and Exchange Commission froze the account. In response to McHenry's motion, the Securities and Exchange Commission showed that the check

---

[6] Doc. 133 at 3-6, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[7] Doc. 140, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[8] Doc. 134 at 8, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

6

cleared hours before the Court's order freezing the account was entered. In denying McHenry's motion, the Court observed "the Receiver may not prioritize the recovery of certain victims over others."[9]

*Sale—interest in KAPA Breeze, LLC:* On March 14, 2019, the Court approved a purchase agreement[10] whereby the Receivership Estate sold its 50% interest in KAPA Breeze, LLC for $700,000. The purchase agreement is available at madisontimberreceiver.com.

*Settlement—Adams children:* On March 14, 2019, the Court approved settlement agreements with Adams's children,[11] whereby they agreed to return a total of $170,000 to the Receivership Estate. The final settlement agreements are available at madisontimberreceiver.com.

*Sale—personal assets:* On April 1, 2019, the Court entered an order permitting me to sell certain assets that now belong to the Receivership Estate.[12] The Court's order permitted me to sell the 2018 King Ranch Ford F150 truck for no less than $40,000, and to sell any other assets, including but not limited to vehicles, jewelry, and furniture, valued at less than $20,000 for a fair market price as determined by me using my best judgment and objective appraisals, to the extent appraisals exist. The order is available at madisontimberreceiver.com.

*Settlement—Philippi Freedom Ministries:* On April 2, 2019, I filed a notice advising that Philippi Freedom Ministries returned to the Receivership Estate $16,125 that it received from Lamar Adams and Wayne Kelly.[13]

*Settlement—Rick Hughes Evangelistic Ministries:* On April 2, 2019, I filed a notice advising that Rick Hughes Evangelistic Ministries returned to the Receivership Estate $43,657.95 that it received from Lamar Adams and Wayne Kelly.[14]

*Proposed sale—134 Saint Andrews:* On April 10, 2019, the Court entered an order adopting procedures that will permit me to sell the real property at 134 Saint Andrews Drive, Jackson,

---

[9] Doc. 132 at 3, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[10] Doc. 135, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[11] Docs. 136, 137, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[12] Docs. 143, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[13] Doc. 144, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

[14] Doc. 145, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

Mississippi, in compliance with 28 U.S.C. § 2001(b).[15] The property was listed on April 1, 2019, and after receiving several offers I accepted the highest and best offer, for an all cash sale in the amount of $540,000, subject to compliance with 28 U.S.C. § 2001(b) and confirmation by the Court. The Court's order provides that I may consider any bona fide offers of more than the current proposed sale price received through the close of business, or 5:00 p.m., on May 1, 2019. Please see the Court's order, available at madisontimberreceiver.com, for details and instructions.

*Alysson Mills v. Michael D. Billings, et al., No. 3:18-cv-679*

The complaint against Mike Billings, Wayne Kelly, and Bill McHenry, filed October 1, 2018, alleges they received millions of dollars in "commissions" in exchange for their recruitment of new investors to Madison Timber. Wayne Kelly settled with the Receivership Estate.

*Mike Billings:* Billings and I have had productive settlement negotiations but have not finalized a proposed settlement agreement. He has made requested financial disclosures and submitted to examination under oath.

*Bill McHenry:* Litigation against McHenry is ongoing. I have argued that there are no factual disputes and the Court may enter judgment against McHenry in the amount requested, $3,473,320, as a matter of law, without hearing or trial. A motion for summary judgment and related filings are available at madisontimberreceiver.com. As of this filing the Court had not issued a ruling.

*Alysson Mills v. Butler Snow, et al., No. 3:18-cv-866*

The complaint against Butler Snow LLP; Butler Snow Advisory Services, LLC; Matt Thornton; Baker, Donelson, Bearman, Caldwell & Berkowitz, PC; Alexander Seawright, LLC; Brent Alexander; and Jon Seawright, filed December 19, 2018, alleges the law firms and their agents lent their influence, their professional expertise, and even their clients to Adams and Madison Timber. None of the defendants has settled with the Receivership Estate. The Court held a status conference on March 22, 2019.

---

[15] Doc. 148, *Securities & Exchange Commission vs. Adams, et al.*, No. 3:18-cv-252 (S.D. Miss.).

8

*Butler Snow:* The Butler Snow defendants have argued that the case against them should be submitted to private arbitration. I have argued, among other things, that private arbitration is in no one's interest, except Butler Snow's. The Butler Snow defendants' motion and related filings are available at madisontimberreceiver.com. As of this filing the Court had not issued a ruling.

*Baker Donelson:* Baker Donelson filed a motion to dismiss all claims against it on February 21, 2019. I filed a brief opposing that motion on March 7, 2019, and Baker Donelson filed a brief in reply on March 14, 2019. Baker Donelson's motion and related filings are available at madisontimberreceiver.com. As of this filing the Court had not issued a ruling.

*Alexander Seawright:* The Alexander Seawright defendants filed a motion to dismiss all claims against them on February 21, 2019. I filed a brief opposing that motion on March 7, 2019, and they filed a brief in reply on March 14, 2019. The Alexander Seawright defendants' motion and related filings are available at madisontimberreceiver.com. As of this filing the Court had not issued a ruling.

*Alysson Mills v. BankPlus, et al., No. 3:19-cv-196*

On March 20, 2019, I filed a lawsuit against BankPlus; BankPlus Wealth Management, LLC; Gee Gee Patridge, Vice President and Chief Operating Officer of BankPlus; Stewart Patridge; Jason Cowgill; Martin Murphree; Mutual of Omaha Insurance Company; and Mutual of Omaha Investor Services, Inc.—financial institutions and their agents who lent their influence, their professional services, and even their customers to Madison Timber, establishing for it a de facto DeSoto County headquarters within BankPlus's Southaven, Mississippi branch office.

The complaint alleges that Madison Timber had to continuously grow to repay existing and new investors, and that it would not have grown without the defendants' encouragement and assistance. Madison Timber grew from an approximately $10 million-a-year Ponzi scheme in 2011 to an approximately $164 million-a-year Ponzi scheme as of April 19, 2018.

The complaint alleges that because the defendants contributed to the success of the Madison Timber Ponzi scheme, they contributed to the debts of the Receivership Estate, and therefore are liable for them.

9

The complaint includes counts for civil conspiracy; aiding and abetting; recklessness, gross negligence, and at a minimum negligence; violations of Mississippi's Fraudulent Transfer Act; violations of Mississippi's Racketeer Influenced and Corrupt Organization Act; and negligent retention and supervision.

The complaint is available at madisontimberreceiver.com

**Receiver's actions in the past 60 days**

Since I filed my third report on February 19, 2019, I have:

*Continued to litigate Alysson Mills v. Michael D. Billings, et al., No. 3:18-cv-679*

As summarized above, I continue to negotiate settlement with Mike Billings. As of this filing the Court had not issued a ruling on the motion for summary judgment that I filed against Bill McHenry.

*Continued to litigate Alysson Mills v. Butler Snow, et al., No. 3:18-cv-866*

As summarized above, on March 7, 2019 and March 15, 2019, respectively, I filed oppositions to Baker Donelson's and the Alexander Seawright defendants' motions to dismiss. As of this filing the Court had not issued a ruling on those motions nor the motion to compel arbitration that the Butler Snow defendants filed in January, which I also opposed.

*Filed Alysson Mills v. BankPlus, et al., No. 3:19-cv-196*

As summarized above, on March 20, 2019, I filed a lawsuit against BankPlus; BankPlus Wealth Management, LLC; Gee Gee Patridge, Vice President and Chief Operating Officer of BankPlus; Stewart Patridge; Jason Cowgill; Martin Murphree; Mutual of Omaha Insurance Company; and Mutual of Omaha Investor Services, Inc.—financial institutions and their agents who lent their influence, their professional services, and even their customers to Madison Timber,

10

establishing for it a de facto DeSoto County headquarters within BankPlus's Southaven, Mississippi branch office.

*Finalized settlements with various parties*

*Vickie Lynn Adams:* As summarized above, Mrs. Adams and I allocated marital assets, including real property in Jackson and Oxford, Mississippi, via a marital property settlement agreement that was approved by the Court on February 20, 2019. As part of that agreement, Mrs. Adams paid the Receivership Estate $58,247 representing proceeds from the sale of a Lexus LX 570 and the liquidation of a Hartford Life and Annuity Insurance Co. life insurance policy and gave the Receivership Estate jewelry including a 3-carat diamond solitaire ring, a gold necklace and pendant set with diamonds weighing one carat, and a gold band set with diamonds weighing .77 carats. The real property in Jackson and Oxford, Mississippi, is for sale.

*Adams children:* As summarized above, the Adams children and I entered settlements whereby they have returned a total of $170,000 to the Receivership Estate.

*Listed sales of real property*

*134 Saint Andrews Drive, Jackson, Mississippi:* As summarized above, I listed 134 Saint Andrews Drive, Jackson, Mississippi, on April 1, 2019, and after receiving several offers I accepted the highest and best offer, for an all cash sale in the amount of $540,000, subject to compliance with 28 U.S.C. § 2001(b) and confirmation by the Court. The Court adopted procedures for the sale which provide that I may consider any bona fide offers of more than the current proposed sale price received through the close of business, or 5:00 p.m., on May 1, 2019. Please see the Court's order, available at madisontimberreceiver.com, for details and instructions.

*2150 Anderson Road, Unit 504, Oxford, Mississippi:* The Adamses' condo in Oxford, Mississippi, in the Calton Hills subdivision, 2150 Anderson Road, Unit 504, is being sold furnished and was listed on April 11, 2019, with an asking price of $192,500. Please see the listing for details.

11

*Continued to account for "commissions" and gifts*

I continue to account for "commissions" paid by Adams, Madison Timber, or Wayne Kelly to individuals in exchange for their assistance in recruiting new investors to the Madison Timber Ponzi scheme. I continue to account for gifts that Adams or Wayne Kelly made with proceeds from Madison Timber.

*Philippi Freedom Ministries:* As summarized above, Philippi Freedom Ministries returned to the Receivership Estate $16,125 that it received from Lamar Adams and Wayne Kelly.

*Rick Hughes Evangelistic Ministries:* As summarized above, Rick Hughes Evangelistic Ministries returned to the Receivership Estate $43,657.95 that it received from Lamar Adams and Wayne Kelly.

*Continued to review records*

To date I have received and reviewed records from Wayne Kelly, Mike Billings, Alexander Seawright, Brent Alexander, Jon Seawright, First Bank of Clarksdale, Southern Bancorp, River Hills Bank, Community Bank, Jefferson Bank, Trustmark Bank, BankPlus, Southern AgCredit, Adams's and Madison Timber's accounting firm, Butler Snow, Rawlings & MacInnis, Madison Trust Company (no relation to Madison Timber), and Pinnacle Trust. I continue to request and review additional records as necessary to assess the Receivership Estate's rights against third parties that had professional relationships with Adams or Madison Timber. As summarized above, on February 21, 2019, I issued 15 subpoenas to individuals and entities including The UPS Store, PAK Mail, and Rawlings & MacInnis, requesting the "journals of notarial acts" which Mississippi law requires that they maintain.

*Worked with LLCs of which Adams was a member*

Adams was a member of at least six active limited liability companies ("LLCs") that own real estate. Two of those LLCs—707, LLC and Delta Farm Land Investments, LLC—sold their principal assets, dissolved, and tendered to the Receivership Estate proceeds representing the Receivership Estate's interests before the filing of my last report. Since the filing of my last report, of the remaining LLCs, the following LLCs have taken the following action:

*KAPA Breeze, LLC:* As summarized above, I entered a purchase agreement whereby the Receivership Estate sold its 50% interest in KAPA Breeze, LLC for $700,000. The Court approved the purchase agreement on March 14, 2019.

*Mallard Park, LLC:* The LLC's principal asset is 1,723 acres with a hunting lodge in Humphreys County, Mississippi. I have obtained an appraisal of that property and have had preliminary negotiations with the LLC's other members regarding the purchase of the Receivership Estate's 25% interest. I will consider any offer by any party to purchase the Receivership Estate's interest for a price that I believe is fair, and I encourage interested parties to contact me directly (504-586-5253). If I am unable to sell the Receivership Estate's interest, I will evaluate other options available to the Receivership Estate. In the meantime, I have released funds held in an LLC bank account to its members, including the Receivership Estate, in proportion to the members' interests. The Receivership Estate's share is $20,962.30.

*MASH Farms, LLC:* The LLC's principal asset is 808+ acres with a hunting camp in Sunflower County, Mississippi. I have obtained an appraisal of that property and have had preliminary negotiations with the LLC's other members regarding the purchase of the Receivership Estate's 25% interest. I will consider any offer by any party to purchase the Receivership Estate's interest for a price that I believe is fair, and I encourage interested parties to contact me directly (504-586-5253). If I am unable to sell the Receivership Estate's interest, I will evaluate other options available to the Receivership Estate.

*Oxford Springs, LLC:* The LLC executed a purchase agreement to sell its principal asset, 2,300+/- acres of undeveloped land in Lafayette County, Mississippi, on February 11, 2019. The purchaser is currently engaged in due diligence. The LLC anticipates that the sale will close on or before May 12, 2019. The LLC intends to dissolve after the sale and tender the proceeds representing the Receivership Estate's interest to the Receivership Estate.

### *Conferred with federal and state authorities*

I have continued to confer with the U.S. Attorney's Office for the Southern District of Mississippi, the FBI, the Securities and Exchange Commission, the Mississippi Secretary of State's Office, and the Mississippi Department of Banking and Consumer Finance.

*Communicated with investors in Madison Timber*

I have continued to communicate with investors in Madison Timber via phone, letter, email, and in-person meetings. I speak to investors almost daily.

*Issued 1099s for 2018*

I was required to issue Form 1099-INTs from Madison Timber Properties, LLC for interest payments it made. Investors should have received a 1099 for any investment in their name in the year 2018. For any investment for which the investor invested through Madison Trust (no relation to Madison Timber), Madison Trust should have received a 1099. I take no position on what an individual investor decides to do with his or her 1099.

*Interviewed persons with knowledge*

I have continued to interview individuals with first-hand knowledge of matters bearing on the Receivership Estate.

*Researched legal claims against third parties*

Readers know that my colleagues and I research legal claims against third parties as new facts are discovered. I do not publish our assessments here because to do so would be to telegraph our legal strategies to future defendants.

**Receiver's plan for the next 60 days**

*Continue to litigate Alysson Mills v. Michael D. Billings, et al., No. 3:18-cv-679*

As noted above, I await the Court's ruling on my motion for summary judgment against Bill McHenry. No hearing or trial has been set, and it is my position that the Court may enter judgment against McHenry in the amount requested, $3,473,320, as a matter of law, without hearing or trial. I continue to negotiate with Mike Billings.

14

*Continue to litigate Alysson Mills v. Butler Snow, et al., No. 3:18-cv-866*

As noted above, I await the Court's rulings on Baker Donelson's and the Alexander Seawright defendants' motions to dismiss and the Butler Snow defendants' motion to compel arbitration.

*Continue to litigate Alysson Mills v. BankPlus, et al., No. 3:19-cv-196*

I expect the BankPlus defendants' responses to my complaint on May 21, 2019; the Mutual of Omaha defendants' responses to my complaint on May 24, 2019; and Martin Murphree's and Jason Cowgill's responses to my complaint on May 28, 2019.

*Continue to account for "commissions" and gifts*

As noted above, I continue to account for "commissions" paid by Adams, Madison Timber, or Wayne Kelly to individuals in exchange for their assistance in recruiting new investors to the Madison Timber Ponzi scheme. I continue to account for gifts that Adams or Wayne Kelly made with proceeds from Madison Timber.

*Monetize Adams's interests in the remaining three LLCs*

For the remaining three LLCs, I intend to liquidate the Receivership Estate's interests to maximize value to the Receivership Estate:

*Mallard Park, LLC:* I want to sell the Receivership Estate's 25% interest on terms that are in the best interests of the Receivership Estate. I will continue to consider a sale to the LLC's other members but, as noted above, I will consider any offer by any party that I believe is fair, and I encourage interested parties to contact me directly (504-586-5253). If I am unable to sell the Receivership Estate's interest, I will evaluate other options available to the Receivership Estate.

*Mash Farms, LLC:* I want to sell the Receivership Estate's 25% interest on terms that are in the best interests of the Receivership Estate. I will continue to consider a sale to the LLC's other members but, as noted above, I will consider any offer by any party that I believe is fair, and I encourage interested parties to contact me directly (504-586-5253). If I am unable to sell the Receivership Estate's interest, I will evaluate other options available to the Receivership Estate.

*Oxford Springs, LLC:* I intend to continue to assist the LLC with the proposed sale of its principal asset, as noted above.

*Finalize sales of real property*

As noted above, I will consider any bona fide offers for the purchase of 134 Saint Andrews Drive, Jackson, Mississippi, of more than $540,000, the current proposed sale price, through the close of business, or 5:00 p.m., on May 1, 2019. Please see the Court's order, available at madisontimberreceiver.com, for details and instructions.

As noted above, the Adamses' condo in Oxford, Mississippi, in the Calton Hills subdivision, 2150 Anderson Road, Unit 504, is being sold furnished and was listed on April 11, 2019, with an asking price of $192,500. I intend to continue to work with Mrs. Adams to facilitate and finalize a sale. Please see the listing for details.

*File additional lawsuits*

I intend to file additional lawsuits against third parties that contributed to the debts of Madison Timber, and therefore to the debts of the Receivership Estate, so long as new information justifies it. To protect the Receivership Estate's position, I am not disclosing publicly third-party targets.

I intend to file additional lawsuits to recover commissions, fraudulent transfers, and gifts as necessary to recover money that belongs to the Receivership Estate.

Readers can expect one or more new lawsuits in the next 60 days.

*Continue communicating with investors*

I intend to continue communicating with investors, through my website, email, phone, and letters. Investors provide information that is useful to my investigation and, in turn, I hope that I demystify the receivership process for them.

**Summary of status of assets**

My end goal is to make an equitable distribution to victims with the money I recover. Although I continue to recover money from various third parties, including an additional $1.2 million since my last report, the money that I have recovered to date would not go far. As I have advised, it may take a long time and a lot of work to recover enough money to make a meaningful distribution, but I am committed to pursuing recoveries for the benefit of victims so long as the Court allows. The Receivership Estate's most valuable assets are the lawsuits it has filed or intends to file.

The current status of the Receivership Estate's assets is as follows:

| **Receivership Estate's account at Hancock Bank** | | current balance $4,999,117.99 |
|---|---|---|
| Previous balance as of February 19, 2019 | $3,787,412.50 | |
| Marital Property Settlement—Vickie Lynn Adams | +$58,247.00 | |
| Settlement—Adams children | +$170,000.00 | |
| Settlement—Philippi Freedom Ministries | +$16,125.00 | |
| Settlement—Rick Hughes Evangelistic Ministries | +$43,657.95 | |
| Settlement—Ole Miss—final installment | +$155,084.50 | |
| Sale—interest in KAPA Breeze, LLC | +$700,000.00 | |
| Sale—2018 King Ranch Ford F150 truck | +$42,750.00 | |
| FBI—cash seized from safe | +$28,860.00 | |
| Mallard Park, LLC—distribution | +$20,962.30 | |
| Alexander Seawright—UPS's funds* | +$100,000.00 | |
| Interest | +$9,496.94 | |
| Bank fees | -$69.00 | |
| Receiver/Receiver's counsel's fees/expenses | -$117,713.55 | |
| Accountants' fees | -$15,420.65 | |
| Mississippi Department of Revenue | -$25.00 | |
| Yard services at 134 Saint Andrews | -$250.00 | |

*Alysson Mills vs. Michael D. Billings, et al.*, **No. 3:18-cv-679**  *settlement with Billings likely*
Lawsuit to recover $16,000,000 in commissions  *litigation against McHenry ongoing*

*Alysson Mills vs. Butler Snow, et al.*, **No. 3:18-cv-866**
Lawsuit to hold law firms liable for debts of the Receivership Estate  *litigation ongoing*

17

*Alysson Mills vs. BankPlus, et al.*, No. 3:19-cv-196  
Lawsuit to hold law firms liable for debts of the Receivership Estate     *litigation ongoing*

**Settlement—Wayne Kelly**     ~~*received $1,384,435.17 plus interests in 707, 315 Iona, and KAPA Breeze, LLCs*~~

*promissory note in the original principal amount of $400,000 outstanding*

**Settlement—Frank Zito**     ~~*received $100,000, first installment*~~

*$100,000, second installment, due June 12, 2019*

**House at 134 Saint Andrews Drive, Jackson, Mississippi**     *for sale*  
Unencumbered

**Condo in Calton Hill subdivision in Oxford, Mississippi**     *for sale*  
Unencumbered

**Jewelry**     *for sale*

**1/4**    **Mallard Park, LLC**     *assessing options*  
1,723 acres with hunting lodge in Humphreys County  
Purchased in 2016 for $2,593,500  
Encumbered by Southern AgCredit mortgage  
Owe approximately $2,000,000

**1/4**    **Mash Farms, LLC**     *assessing options*  
808+ acres with hunting camp in Sunflower County  
Purchased in 2014 for $1,600,000  
Encumbered by Trustmark Bank mortgage  
Owe approximately $900,000

**47.5%**    **Oxford Springs, LLC**     *sale of principal asset pending*  
2,300+/- acres undeveloped land in Lafayette County  
Purchased in 2015 and 2016 for total of $6,158,000  
Encumbered by First Bank of Clarksdale mortgage  
Owe approximately $4,500,000

~~**Hartford Life and Annuity Insurance Co. life insurance policy**~~     ~~*surrendered for $167,206.60*~~

~~**Lincoln National Life Insurance Co. life insurance policy**~~     ~~*surrendered for $3,678.45*~~

~~**1/6**~~    ~~**707, LLC**~~     ~~*LLC sold principal asset and dissolved; tendered $6,994.09 representing Adams's, Kelly's, and McHenry's interests to the Receivership Estate*~~  
~~263+ acres recreational land in Holmes County~~  
~~Purchased in 2009~~  
~~Encumbered by First Commercial Bank mortgage~~  
~~Owe approximately $368,000~~

~~**1/3**~~    ~~**Delta Farm Land Investments, LLC**~~     ~~*LLC sold principal asset and dissolved; tendered $323,440.88 representing Adams's interest to the Receivership Estate*~~  
~~1170+ acres farmland in Oktibbeha County~~  
~~Purchased in 2014 for $2,796,100~~

18

Case 3:18-cv-00252-CWR-FKB   Document 149   Filed 04/18/19   Page 19 of 19

~~Encumbered by Trustmark Bank mortgage~~
~~Owe approximately $2,200,000~~

| | |
|---|---|
| **~~Settlement – Ole Miss Athletics Foundation~~** | *~~received $155,084.50, first installment~~* |
| | *~~received $155,084.50, second and final installment, April 17, 2019~~* |
| **~~Marital Property Settlement – Vickie Lynn Adams~~** | *~~received $58,247~~* |
| ~~Lump sum payment includes proceeds from sale of Lexus LX 570 and liquidation of Hartford Life and Annuity Insurance Co. life insurance policy~~ | |
| **~~Settlement – Adams children~~** | *~~received $170,000~~* |
| **~~1/2    KAPA Breeze LLC~~** | *~~sold the Receivership Estate's~~* |
| ~~1.5+/- acres mixed-use land on Highway 30A in Florida~~ | *~~interest for $700,000~~* |
| ~~Purchased in 2017 for approximately $1,900,000~~ | |
| ~~Encumbered by Jefferson Bank mortgage~~ | |
| ~~Owe approximately $1,365,000~~ | |
| **~~Alexander Seawright – UPS's funds*~~** | *~~holding $100,000~~* |
| **~~Settlement – Philippi Freedom Ministries~~** | *~~received $16,125~~* |
| **~~Settlement – Rick Hughes Evangelistic Ministries~~** | *~~received $43,657.95~~* |
| **~~2018 King Ranch Ford F150 truck~~** | *~~sold for $42,750~~* |

~~Strikethrough~~ indicates asset has been liquidated or proceeds are already accounted for in the Hancock Bank account balance.

*Holding funds solely as an offset to UPS's monetary liability for future claims the Receivership Estate might have against UPS.

19