**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **No: 3:18-cv-252** |
| **Plaintiffs,** | **Carlton W. Reeves, District Judge** |
| **v.** | |
| **ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,** | |
| **Defendants.** | |

**RECEIVER'S FEE APPLICATION**

*for the time period beginning April 1, 2019 and ending May 31, 2019*

**June 30, 2019**

_____*/s/ Alysson Mills*_____

Alysson Mills, Miss. Bar No. 102861
Fishman Haygood, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5253
Fax: 504-586-5250
amills@fishmanhaygood.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his companies Madison Timber Company, LLC and Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, Adams pleaded guilty to the federal crime of wire fraud. On October 31, 2018, he was sentenced to 19.5 years in prison.

On June 22, 2018, the Court appointed me Receiver of the estates of Adams and Madison Timber. The order of appointment sets forth my responsibilities and duties and provides that I shall receive reasonable compensation and reimbursement from the Receivership Estate.[1] The Court has instructed me to file a fee application "[w]ithin 30 days after the end of every 60-day period while the Receivership is in effect."[2]

This is my fee application for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019. It contains the following parts:

|                                              | page |
|----------------------------------------------|------|
| Receivership fee applications, generally     | 3    |
| Pre-established billing parameters           | 4    |
| Receivership Estate's fees and expenses      | 5    |
| Conclusion                                   | 8    |
| Receiver's declaration                       | 9    |

The Securities and Exchange Commission has reviewed and approved this fee application.

---

[1] Doc. 33, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[2] Doc. 43 at p. 2, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

**Receivership fee applications, generally**

A receiver's duties "are unique to the facts and circumstances of each case."[3]  It follows that a receiver's fees and expenses vary with the facts and circumstances of each case. The appointing court has broad discretion to determine the reasonableness of a receiver's fees and expenses.[4]

As before, in the course of preparing this fee application, I reviewed fee applications submitted by receivers in other Ponzi scheme cases, including *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 09-cv-0298 (N.D. Tex.) ("*Stanford*"); *U.S. Commodity Futures Trading Commission v. Trevor Cook, et al.*, No. 09-cv-3332 (D. Minn.) ("*Cook/Kiley*"); and *Securities and Exchange Commission v. John Scott Clark et al.*, No. 1:11-cv-46 (D. Utah) ("*Clark*").

Fee applications vary in format but provide the same basic content: a summary of work to-date, a statement of hours expended by professionals, a calculation of professional fees based on applicable hourly rates, a statement of expenses incurred in the ordinary course of business, and a declaration that all fees and expenses are accurate and reasonable. I provide the same basic content here.

Although fee applications are filed in the court's public record, the underlying records of each professional's time typically are not. This is because such records necessarily include confidential information (such as victims' names) and information subject to attorney-client or other privileges. To publish such information in the court's public record also would risk disclosing the receiver's legal strategies to defendants. For these reasons, I provide underlying records of each professional's time only to the Court.

This fee application is for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019. As before, I offer the following context:

---

[3] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).

[4] "It is well settled that such allowances are largely within the discretion of the district court . . . ." *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939).

The *Stanford* receiver's sixth fee application, filed in 2010, asked for a total of $1,892,424 in fees for three months' work—not counting non-legal consulting fees.[5]   That fee application was granted with a 20% holdback. Of course, at $7.2 billion, the *Stanford* Ponzi scheme was considerably bigger than the Ponzi scheme in this case.

The *Cook/Kiley* Ponzi scheme, at $190 million, is closer in size. The *Cook/Kiley* receiver's eleventh and twelfth monthly fee applications, for August 2010 and September 2010, together asked for $324,631 in fees for two months of work—also not counting non-legal consulting fees.[6]   Those fee applications were paid in full.

The *Clark* Ponzi scheme, at $47 million, was considerably smaller than the Ponzi scheme in this case. The *Clark* receiver's sixth fee application, filed in 2012, asked for a total of $156,207.30 in fees for three months of work—again, not counting non-legal consulting fees.[7] That fee application was paid in full.

**Pre-established billing parameters**

The Court's order of appointment provides that I shall bill at $275 an hour, and that my counsel shall bill at rates not to exceed $275 an hour, with the exception of Brent Barriere, who shall bill at $325 an hour.[8]

The Court's order of appointment authorizes me to incur expenses and make payments as in the ordinary course of business of the Receivership Estate[9] and, separately, to employ persons to assist me in carrying out my duties as Receiver.[10]

Any compensation or reimbursement "will be interim and will be subject to cost-benefit and final reviews at the close of the receivership."[11]   Any fee application may, in the Court's discretion, be subject to a holdback in the amount of 25%.[12]

---

[5] Doc. 1084, Securities and Exchange Commission v. Stanford International Bank, Ltd., et al., No. 09-cv-0298 (N.D. Tex.).

[6] Docs. 467 and 502, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

[7] Doc. 304, Securities and Exchange Commission v. John Scott Clark et al., No. 1:11-cv-46 (D. Utah).

[8] Doc. 33 at p. 4, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[9] Doc. 33 at p. 7-8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[10] Doc. 33 at p. 8, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

**Receivership Estate's fees and expenses**

*Fees*

The Receivership Estate's fees, including Receiver's fees and Receiver's counsel's fees, for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019 are:

|  | Rate | Hours | Total |
|---|---|---|---|
| **Receiver's fees** | | | |
| Alysson Mills | $275 | 131.60 | $36,190.00 |
| | | | |
| **Receiver's counsel's fees** | | | |
| Fishman Haygood, LLP | *$325 | 69.50 | $22,587.50 |
| *Brent Barriere* et al. | $275 | 26.80 | $7,370.00 |
| | $220 | 56.10 | $12,342.00 |
| | $150 | 6.60 | $990.00 |
| Brown Bass & Jeter, PLLC | $275 | 54.50 | $14,987.50 |
| *Lilli Bass et al.* | $135 | 2.30 | $310.50 |
| | | | $94,777.50 |

These fees are for work described in my Receiver's Report filed on June 17, 2019.[13] In addition to filing a new lawsuit styled *Alysson Mills v. The UPS Store, Inc., et al.,* No. 3:19-cv-364, against the notaries and their employers on whom Adams principally relied to notarize fake timber deeds, and in addition to continuing to litigate the lawsuits styled *Alysson Mills v. Butler Snow, et al.,* No. 3:18-cv-866, and *Alysson Mills v. BankPlus, et al.,* No. 3:19-cv-196 (see "*Contingency fee cases—hours not billed,*" below), my colleagues and I continued to administer business of the Receivership Estate.  During the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019, my colleagues and I: sold the real properties at 134 Saint Andrews Drive, Jackson, Mississippi and 2150 Anderson Road, Unit 504, Oxford, Mississippi; continued to account for "commissions" and gifts by Adams or Wayne Kelly and to negotiate their return; continued to request and review records of banks, law firms, and other third parties that had professional relationships with Adams or Madison Timber; continued to work with

---

[11] Doc. 33 at p. 14, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[12] Doc. 33 at p. 14-15, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

[13] Doc. 155, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

LLCs of which Adams was a member, including Oxford Springs, LLC, Mallard Park, LLC, and MASH Farms, LLC, for which I want to obtain maximum value for the Receivership Estate's interests; continued to confer with the FBI, the Securities and Exchange Commission, the Mississippi Secretary of State's Office, and the Mississippi Banking Commission; continued to communicate with investors in Madison Timber via phone, letter, email, and in-person meetings; continued to interview individuals with first-hand knowledge of matters bearing on the Receivership Estate; continued to meet with counsel for third parties that had professional relationships with Adams or Madison Timber; and continued to research legal claims against third parties as new facts are discovered. Time records for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019 shall be separately provided to the Court for *in camera* review.

Of the hours recorded above, 29.3 hours, or $7,161.50, were spent on the lawsuit *Alysson Mills vs. Michael D. Billings, et al.,* No. 3:18-cv-679. Including hours previously recorded, my colleagues and I have spent a total of 589.5 hours on the lawsuit since it was filed, at a total expense of $150,529.50. This time and expense have proved a good investment, given that we have already obtained a settlement from one defendant worth approximately $2,000,000 to the Receivership Estate and anticipate finalizing a second settlement in the coming days.

My colleagues and I are sensitive to the Receivership Estate's limited resources and we hope our fees reflect that. We have not charged for work that we believe was duplicative. We have not charged for travel. Our agreed-upon rates generally are lower than market rates.

*Expenses*

The Receivership Estate's expenses for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019 are:

| | |
|---|---|
| Copier charges | $201.48 |
| Printer charges | $610.90 |
| Express mail and postage | $276.91 |
| ~~Long distance calls~~ | ~~$597.32~~ |
| Westlaw research | $1,263.00 |

| | |
|---|---|
| Service of process | $325.50 |
| Appraisals | $2,300.00 |
| Homeowners insurance | $314.16 |
| Court filing fee | $400.00 |
| | $5,691.95 |

Most of these expenses are self-explanatory and are the kinds of expenses typically incurred in any legal matter. The homeowners insurance expense reflects monthly premiums for the homeowners insurance policy for the Adams's home at 134 St. Andrews before it was sold. As always, I have not charged for long distance calls or travel.

*Contingency fee cases—hours not billed*

In addition to the hours reported above, my counsel and I have recorded a total of 693.60 hours on the lawsuits *Alysson Mills v. Butler Snow, et al.*, No. 3:18-cv-866; *Alysson Mills vs. BankPlus, et al.*, No. 3:19-cv-196 (S.D. Miss); and *Alysson Mills vs. The UPS Store, Inc., et al.*, No. 3:19-cv-364 (S.D. Miss). I have not billed the Receivership Estate for this time. I believe billing the Receivership Estate for the time spent on these and possibly other lawsuits will deplete the Receivership Estate's limited resources. Vigorous litigation against well-resourced defendants makes lawsuits such as these costly.

In the interest of conserving the Receivership Estate's limited resources, my primary counsel, Brent Barriere and Fishman Haygood, LLP, have agreed to represent the Receivership Estate in these lawsuits on a contingency fee, or success-based, arrangement. Fishman Haygood, LLP shall advance all costs and out-of-pocket expenses and bear the entire risk of any losses. This arrangement is consistent with the Court's order of appointment[14] and more recent order regarding fee arrangement.[15]

Of course any fee arrangement is subject to the continuing oversight of the Court—and any fees paid by the Receivership Estate, whether on an hourly basis or as a contingency fee, are

---

[14] Doc. 43 at p. 10, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss) (the Receiver shall make "a recommendation as to whether litigation against third parties should be commenced on a contingent fee basis to").

[15] Doc. 154, Securities & Exchange Commission vs. Adams, et al., No. 3:18-cv-00252 (S.D. Miss).

subject to the Court's review and approval at an appropriate time.  No contingency fee will be paid without proper notice and application.

**Conclusion**

Currently the Receivership Estate has $5,478,380.62 in the bank—still a healthy sum at this point but far from enough to make a meaningful distribution.

As I have stated, the Receivership Estate's most valuable assets are the lawsuits it has filed and intends to file. I anticipate that the next few months will require substantial work by counsel, and possibly experts, as we litigate against third parties. As always I will monitor all work for inefficiencies and unnecessary expense.

In the meantime, I continue to believe our team is providing very good value for cost— particularly when viewed in the context of other receiverships, which at this point cost many multiples more per day.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiffs,<br><br>v.<br><br>ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,<br><br>          Defendants. | No: 3:18-cv-252<br><br>Carlton W. Reeves, District Judge |

## DECLARATION OF ALYSSON MILLS

In support of the foregoing fee application for the approximately 60-day period beginning April 1, 2019 and ending May 31, 2019, I declare:

1. This application and all fees and expenses described in it are true and accurate.

2. The fees and expenses were incurred in the best interests of the Receivership Estate.

3. The fees are based on the rates agreed-upon in advance, which rates are reasonable, necessary, and commensurate with the skill and experience required for the work performed.

4. The fees are supported by records for time spent on services rendered, which I have separately provided to the Court for *in camera* review. The records set forth in reasonable detail an appropriate narrative description of the services rendered. The description includes indications of the participants in, as well as the scope, identification, and purpose of the activity that is reasonable under the circumstances.

5. The fees do not include time spent on the preparation of this application or its supporting documentation.

6. The expenses are supported by receipts or equivalent documents, which I have separately provided to the Court for *in camera* review.

7. With the exception of professionals I retained with the Court's prior approval, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate or any sharing thereof.

DATED: 6/28/19

_Alysson Mills_

Alysson Mills
Receiver