UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,**<br><br>Defendants. | No: 3:18-cv-252<br><br>Carlton W. Reeves, District Judge<br>F. Keith Ball, Magistrate Judge |

# RECEIVER'S FEE APPLICATION

*for the time period beginning December 1, 2021 and ending February 28, 2022*

**March 31, 2022**

　　　　　　　*/s/ Alysson Mills*　　　　　

Alysson Mills, Miss. Bar No. 102861
650 Poydras Street Suite 1525
New Orleans, Louisiana 70130
Telephone: 504-586-5253
Fax: 504-586-5253
amills@millsamond.com

*Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*

**Introduction**

For many years Arthur Lamar Adams, through his companies Madison Timber Company, LLC and Madison Timber Properties, LLC, operated a Ponzi scheme that defrauded hundreds of investors. On May 9, 2018, Adams pleaded guilty to the federal crime of wire fraud. On October 31, 2018, he was sentenced to 19.5 years in prison.

On June 22, 2018, the Court appointed me receiver of the estates of Adams and Madison Timber. The order of appointment sets forth my responsibilities and duties and provides that I shall receive reasonable compensation and reimbursement from the Receivership Estate.[1] The Court instructed me to file a fee application "[w]ithin 30 days after the end of every 60-day period while the Receivership is in effect."[2]  On August 17, 2021, the Court authorized me "to report to the Court, and file any fee applications, on a quarterly basis."[3]

This is my fee application for the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022. It contains the following parts:

|  | page |
|---|---|
| Receivership fee applications, generally | 3 |
| Pre-established billing parameters | 4 |
| Receivership Estate's fees and expenses | 5 |
| Conclusion | 8 |
| Receiver's declaration | 9 |

The Securities and Exchange Commission has reviewed and approved this fee application.

---

[1] Doc. 33, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).
[2] Doc. 43 at p. 2, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).
[3] Text-only order, August 17, 2021, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

**Receivership fee applications, generally**

A receiver's duties "are unique to the facts and circumstances of each case."[4] It follows that a receiver's fees and expenses vary with the facts and circumstances of each case. The appointing court has broad discretion to determine the reasonableness of a receiver's fees and expenses.[5]

As before, in the course of preparing this fee application, I reviewed fee applications submitted by receivers in other Ponzi scheme cases, including *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, No. 09-cv-0298 (N.D. Tex.) ("*Stanford*"); *U.S. Commodity Futures Trading Commission v. Trevor Cook, et al.*, No. 09-cv-3332 (D. Minn.) ("*Cook/Kiley*"); and *Securities and Exchange Commission v. John Scott Clark et al.*, No. 1:11-cv-46 (D. Utah) ("*Clark*").

Fee applications vary in format but provide the same basic content: a summary of work to-date, a statement of hours expended by professionals, a calculation of professional fees based on applicable hourly rates, a statement of expenses incurred in the ordinary course of business, and a declaration that all fees and expenses are accurate and reasonable. I provide the same basic content here.

Although fee applications are filed in the court's public record, the underlying records of each professional's time typically are not. This is because such records necessarily include confidential information (such as victims' names) and information subject to attorney-client or other privileges. To publish such information in the court's public record also would risk disclosing the receiver's legal strategies to defendants. For these reasons, I provide underlying records of each professional's time only to the Court.

This fee application is for the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022. As before, I offer the following context:

---

[4] 7 Bus. & Com. Litig. Fed. Cts. § 79:48 (4th ed.).
[5] "It is well settled that such allowances are largely within the discretion of the district court . . . ." *Commodity Credit Corp. v. Bell*, 107 F.2d 1001, 1001 (5th Cir. 1939).

3

The *Stanford* receiver's twenty-first fee application, filed in November 2012, asked for a total of $1,009,510.02 in fees and expenses in connection with general estate matters for two months. Separately, the fee application asked for $1,428,560.63 in fees and expenses in connection with the receivership's claims process for a period of two months. The Court granted the *Stanford* receiver's request for $2,438,070.65, applying a 10% holdback for certain expenses.[6] Of course, at $7.2 billion, the *Stanford* Ponzi scheme was considerably bigger than the Ponzi scheme in this case.

The *Cook/Kiley* Ponzi scheme, at $190 million, is closer in size. The *Cook/Kiley* receiver's fee application, for March, April, and May 2013, asked for $90,281.26 in fees for three months' work. That fee application was paid in full.[7]

The *Clark* Ponzi scheme, at $47 million, was considerably smaller than the Ponzi scheme in this case. Its receivership lasted about five years. The *Clark* receiver's twentieth fee application (also its last), filed in 2016, asked for a total of $20,606.50 in fees for three months' work. That fee application was paid in full,[8] making the total fees and expenses paid $3,745,593.20.

**Pre-established billing parameters**

The Court's order of appointment provides that I shall bill at $275 an hour, and that my counsel shall bill at rates not to exceed $275 an hour, with the exception of Brent Barriere, who shall bill at $325 an hour.[9]

The Court's order of appointment authorizes me to incur expenses and make payments as in the ordinary course of business of the Receivership Estate[10] and, separately, to employ persons to assist me in carrying out my duties as Receiver.[11]

---

[6] Doc. 1763, Securities & Exchange Commission v. Stanford International Bank, Ltd., et al., No. 3:09-cv-0298 (N.D. Tex.).

[7] Doc. 1033, U.S. Commodity Futures Trading Commission v. Trevor Cook, et al., No. 09-cv-3332 (D. Minn.).

[8] Doc. 750, Securities and Exchange Commission v. John Scott Clark et al., No. 1:11-cv-46 (D. Utah).

[9] Doc. 33 at p. 4, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

[10] Doc. 33 at p. 7–8, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

[11] Doc. 33 at p. 8, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

Any compensation or reimbursement "will be interim and will be subject to cost-benefit and final reviews at the close of the receivership."[12]  Any fee application may, in the Court's discretion, be subject to a holdback in the amount of 25%.[13]

**Receivership Estate's fees and expenses**

*Fees*

The Receivership Estate's fees, including Receiver's fees and Receiver's counsel's fees, for the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022 are:

|  | Rate | Hours | Total |
|---|---|---|---|
| **Receiver's fees** | | | |
| Alysson Mills | $275 | 58.93 | $16,205.75 |
| **Receiver's counsel's fees** | | | |
| Brent Barriere | $325 | 29.1 | $9,457.50 |
| Lilli Bass | $275 | 7 | $ 1,925.00 |
| Kristen Amond | $220 | 44.4 | $9,768.00 |
| Kaja Elmer | $220 | 3.3 | $726.00 |
| Paralegal | $150 | 0.3 | $ 45.00 |
| | | | **$38,127.25** |

These fees are for work described in my Receiver's Reports filed on December 31, 2021 and March 31, 2022.[14]

Of the hours recorded above, 58.74 hours, or $16,911.50, were spent on the presentation, negotiation, and settlement of claims against Pinnacle Trust, whereby it paid the Receivership Estate a lump sum of $500,000.  Because the matter was not time- or cost-intensive, we believe a contingency fee would be unfair to the Receivership Estate.

---

[12] Doc. 33 at p. 14, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

[13] Doc. 33 at p. 14–15, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

[14] Docs. 320 and 337, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

Separately, in addition to litigating the lawsuits styled *Alysson Mills v. Butler Snow, et al.*, No. 3:18-cv-866; *Alysson Mills v. BankPlus, et al.*, No. 3:19-cv-196; *Alysson Mills v. The UPS Store, Inc., et al.*, No. 3:19-cv-364; and *Alysson Mills v. Trustmark, et al.*, No. 3:19-cv-941 (see "*Contingency fee cases—hours not billed*," below), my colleagues and I continued to administer business of the Receivership Estate.  During the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022, my colleagues and I: continued to attempt to collect on the Receivership Estate's $3,473,320 judgment against Bill McHenry, including most recently by filing a motion to hold him in contempt for, among other things, perjuring himself during his judgment debtor exam; finalized the accounting of the Alexander Seawright Timber Fund contemplated by the order approving the Receivership Estate's first distribution; moved for and obtained permission to make and made first distribution to victims who invested in Madison Timber through the Alexander Seawright Timber Fund; continued to monitor recruiter defendants' compliance with settlement agreements; and continued to communicate with investors in Madison Timber via phone, letter, and email. Time records for the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022 shall be separately provided to the Court for *in camera* review.

Of the hours recorded, 35.3 hours, or $8,333.50, were spent on the lawsuit *Alysson Mills v. Michael D. Billings, et al.*, No. 3:18-cv-679.  In the *Billings* case we already obtained settlements from Wayne Kelly and Mike Billings worth approximately $2,000,000 and $800,000, respectively, and obtained a judgment against Bill McHenry for $3,473,320.  Again, we litigate cases such as this on an hourly fee basis because they are not time- or cost-intensive, therefore we believe a contingency fee would be unfair to the Receivership Estate.  The hours recently recorded reflect time attempting to collect on the Receivership Estate's judgment. Those efforts have been documented elsewhere; most recently we filed a motion to hold McHenry in contempt for, among other things, perjuring himself during his judgment debtor exam.

My colleagues and I are sensitive to the Receivership Estate's limited resources and we hope our fees reflect that. We have not charged for work that we believe was duplicative. We have not charged for travel. Our agreed-upon rates generally are lower than market rates.

*Expenses*

The Receivership Estate's expenses for the approximately **90**-day period beginning September 1, 2021 and ending November 30, 2021 are:

| | |
|---|---:|
| Printer and copier charges | $105.30 |
| Express mail and postage | $0 |
| Westlaw research and PACER fees | $0 |
| Lexbe data storage (for Pinnacle Trust matter) | $282.51 |
| Court reporter (for Bill McHenry's judgment debtor exam) | $964.00 |
| | **$1,356.81** |

Most of these expenses are self-explanatory and are the kinds of expenses typically incurred in any legal matter.

*Contingency fee cases—hours not billed*

In addition to the hours reported above, my counsel and I have recorded a total of 4,223.51 hours on the lawsuits *Alysson Mills v. Butler Snow, et al.*, No. 3:18-cv-866; *Alysson Mills v. BankPlus, et al.*, No. 3:19-cv-196 (S.D. Miss.); *Alysson Mills v. The UPS Store, Inc., et al.*, No. 3:19-cv-364 (S.D. Miss.); and *Alysson Mills v. Trustmark, et al.*, No. 3:19-cv-941 (S.D. Miss.). I have not billed the Receivership Estate for this time. I believe billing the Receivership Estate for the time spent on these and possibly other lawsuits will deplete the Receivership Estate's limited resources. Vigorous litigation against well-resourced defendants makes lawsuits such as these costly.

In the interest of conserving the Receivership Estate's limited resources, my counsel has agreed to represent the Receivership Estate in these lawsuits on a contingency fee, or success-based, arrangement. Fishman Haygood, LLP shall advance all costs and out-of-pocket expenses

and bear the entire risk of any losses. This arrangement is consistent with the Court's order of appointment[15] and separate order regarding fee arrangement.[16]

Of course any fee arrangement is subject to the continuing oversight of the Court—and any fees paid by the Receivership Estate, whether on an hourly basis or as a contingency fee, are subject to the Court's review and approval at an appropriate time. No contingency fee will be paid without proper notice and application.

**Conclusion**

I believe our team is providing excellent value for cost—particularly when viewed in the context of other receiverships, which at this point cost many multiples more per day.

Today, after a $17,500,000 first distribution to Madison Timber's victims, the Receivership Estate has $1,772,792.83 in the bank.

The Receivership Estate's four biggest lawsuits (see "*Contingency fee cases—hours not billed*," above) today are its most valuable assets. I anticipate that the next few months will require substantial work by counsel, and possibly experts, as we prosecute those lawsuits. Fishman Haygood, LLP of course advances all costs and out-of-pocket expenses in those lawsuits, but I nevertheless closely monitor all work for inefficiencies and unnecessary expense.

---

[15] Doc. 43 at p. 10, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.) (the Receiver shall make "a recommendation as to whether litigation against third parties should be commenced on a contingent fee basis to").

[16] Doc. 154, Securities & Exchange Commission v. Adams, et al., No. 3:18-cv-00252 (S.D. Miss.).

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,**<br><br>**Defendants.** | No: 3:18-cv-252<br><br>Carlton W. Reeves, District Judge |

## DECLARATION OF ALYSSON MILLS

In support of the foregoing fee application for the approximately **90**-day period beginning December 1, 2021 and ending February 28, 2022, I declare:

1. This application and all fees and expenses described in it are true and accurate.

2. The fees and expenses were incurred in the best interests of the Receivership Estate.

3. The fees are based on the rates agreed-upon in advance, which rates are reasonable, necessary, and commensurate with the skill and experience required for the work performed.

4. The fees are supported by records for time spent on services rendered, which I have separately provided to the Court for *in camera* review. The records set forth in reasonable detail an appropriate narrative description of the services rendered. The description includes indications of the participants in, as well as the scope, identification, and purpose of the activity that is reasonable under the circumstances.

5. The fees do not include time spent on the preparation of this application or its supporting documentation.

6. The expenses are supported by receipts or equivalent documents, which I have separately provided to the Court for *in camera* review.

7. With the exception of professionals I retained with the Court's prior approval, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate or any sharing thereof.

DATED: March 31, 2022

Alysson Mills
Receiver